# 24-2422-cv

# United States Court of Appeals
## for the
## Second Circuit

---

MARIA JOSE PIZARRO,

*Plaintiff-Counter-Defendant-Third-Party-Defendant-Cross-Defendant-Counter-Defendant-Appellee,*

– v. –

SANTIAGO QUEZADA, EUROS EL TINA RESTAURANT LOUNGE AND BILLIARDS CORP.

*Defendant-Counter-Claimant-Third-Party-Plaintiff-Cross-Claimant-Counter-Claimant-Appellants,*

*(For Continuation of Caption See Inside Cover)*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR DEFENDANT-COUNTER-CLAIMANT-THIRD-PARTY-PLAINTIFF-CROSS-CLAIMANT-COUNTER-CLAIMANT-APPELLANTS

SCOTT T. BAKEN
POONAM SETHI
JACKSON LEWIS P.C.
*Attorneys for Defendant-Counter-Claimant-Third-Party-Plaintiff-Cross-Claimant-Counter-Claimant-Appellants*
44 South Broadway, 14th Floor
White Plains, New York 10601
(914) 872-8060

COUNSEL PRESS    (800) 4-APPEAL • (335797)

SANTIAGO QUEZADA, JR.,

*Defendant-Counter-Claimant-Third-Party-Plaintiff-Cross-Claimant-Counter-Claimant-Defendant,*

EMITON FERNANDEZ, NARCISCO GOMEZ, JOSE R. CASTRO, TOMAS ANDRES PIZARRO ZEPEDA, ELADIO CASTRO PRODUCTIONS, INC., ZOILIMAR MEJIA,

*Defendant-Third-Party-Defendant-Cross-Defendant-Counter-Defendants.*

## DEFENDANT'S-APPELLANT'S RULE 26.1
## CORPORATE DISCLOSURE STATEMENT

Defendant-Appellant Euros El Tina Restaurant Lounge and Billiards Corp.

is not publicly traded and does not have a publicly traded parent corporation.

Respectfully submitted,

JACKSON LEWIS P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601
914-872-8060

By: _____

Scott T. Baken
Poonam Sethi
*ATTORNEYS FOR*
*DEFENDANTS-APPELLANTS*

Dated:      January 22, 2025
            White Plains, New York

i

TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ..........................................................1

ISSUES FOR REVIEW .....................................................................1

STATEMENT OF THE CASE............................................................3

STATEMENT OF FACTS .................................................................6

I.   MS. PIZARRO'S EMPLOYMENT AND ALLEGED HARASSMENT AT
     EUROS.................................................................................7

II.  MS.   PIZARRO'S   TESTIMONY   REGARDING   EMOTIONAL
     DISTRESS……………………………………………………12

III. POST-TRIAL MOTIONS..............................................................16

STANDARD OF REVIEW ...............................................................166

SUMMARY OF ARGUMENT ............................................................19

ARGUMENT ...............................................................................23

I.   THE JURY'S EXCESSIVE COMPENSATORY DAMAGE AWARD MUST
     BE REMITTED OR REMANDED FOR A NEW TRIAL. ...........................23

     A. Applicable Standards For Evaluating The Breadth Of Compensatory
        Damage Awards Under Federal And State Law. ....................................25

     B. The Jury's Compensatory Damage Award Grossly Exceeded Awards
        Issued In Cases Addressing Claims Similar To Those Asserted By Ms.
        Pizarro.......................................................................................25

        1. The District Court abused its discretion in allowing Ms. Pizarro to
           substitute her uncorroborated lay testimony for competent medical
           evidence. ................................................................................26

2. By relying solely on her uncorroborated lay testimony, Ms. Pizarro presented a garden variety claim of emotional distress to the jury. .........28

3. The jury's compensatory damage award exceeded analogous awards issued in comparable cases based on the evidence proffered. .................30

4. The exorbitant nature of the jury's compensatory damage award mandates retrial or remittitur. ....................................................................33

II. THE JURY'S PUNITIVE DAMAGE AWARD WAS EXCESSIVE.............33

A. The Punitive Damages Awarded By The Jury Grossly Exceeds Punitive Damages Awarded In Comparable Cases. ................................................35

B. The Jury's Punitive Damage Award Grossly Exceeded The Limit Of Civil Fines Available Under The NYCHRL And The Damage Cap Applicable To Euros Under Title VII.......................................................37

C. The Punishment Meted Out By The Jury Is Excessive In Light Of Appellants' Financial Condition. ............................................................39

III. BECAUSE THE JURY'S COMPENSATORY AND PUNTIVE DAMAGE AWARDS WERE EXCESSIVE, THE DISTRICT COURT ERRED IN FAILING TO GRANT APPELLANTS A NEW TRIAL ON DAMAGES OR REMITTITUR..............................................................................................40

IV. THE COURT COMMITTED PREJUDICIAL ERROR IN ITS JURY INSTRUCTIONS. .........................................................................................42

V. THE DISTRICT COURT SHOULD HAVE GRANTED APPELLANTS' MOTION FOR A NEW TRIAL BASED ON JUDGE HELLERSTEIN'S IMPROPER EXCLUSION OF EVIDENCE LIMITING APPELLANT'S ABILITY TO CROSS-EXAMINE MS. PIZARRO AND HER MAIN WITNESS....................................................................................................46

VI. THE DISTRICT COURT'S ATTORNEYS' FEE AWARD WAS EXCESSIVE AND SHOULD BE REMANDED FOR FURTHER CONSIDERATION AND REDUCTION. .....................................................50

CONCLUSION ............................................................................................54

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abel v. Town Sports Int'l, LLC*,
    No. 09 Civ. 10388 (DF), 2012 U.S. Dist. LEXIS 183444 (S.D.N.Y.
    Dec. 18, 2012)................................................................................51

*BMW of N. Am. v. Gore*,
    517 U.S. 559 (1996)..............................................................35, 37, 38

*Caravantes v. 53rd St. Partners, LLC*,
    2012 U.S. Dist. LEXIS 120182 (S.D.N.Y. Aug. 23, 2012)..............29, 31, 32, 36

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
    532 U.S. 424 (2001)................................................................17

*DLC Mgmt. Corp. v. Town of Hyde Park*,
    163 F.3d 124 (2d Cir. 1998) .......................................................18, 40

*Doe v. Alsaud*,
    2017 U.S. Dist. LEXIS 167359 (S.D.N.Y. Oct. 10, 2017)................................36

*Doe v. Warren*,
    No. 20-CV-9522 (ER) (VF), 2024 U.S. Dist. LEXIS 106767
    (S.D.N.Y. May 3, 2024)............................................................28

*Drice v. My Merch. Servs., LLC*,
    No. CV 2015-0395 (MKB)(MDG), 2016 U.S. Dist. LEXIS 29006
    (E.D.N.Y. Mar. 4, 2016)............................................................32

*Duarte v. St. Barnabas Hosp.*,
    341 F. Supp. 3d 306 (S.D.N.Y. 2018) ..............................................34

*Ehrlich v. Town of Glastonbury*,
    348 F.3d 48 (2d Cir. 2003) .........................................................18

*Emamian v. Rockefeller Univ.*,
    No. 7 Civ. 3919 (DAB), 2018 U.S. Dist. LEXIS 97674 (S.D.N.Y.
    June 8, 2018) (*aff'd, 823* Fed. Appx. 40 (2d Cir., 2020))................................30

*Exxon Shipping Co. v. Baker*,
554 U.S. 471 (2008)........................................................34

*Fabri v. United Techs. Int'l, Inc.*,
387 F.3d 109 (2d Cir. 2004) ...........................................17

*Gasperini v. Ctr. for Humanities, Inc.*,
518 U.S. 415 (1996).......................................................17

*Gordon v. New York City Bd. of Educ.*,
232 F.3d 111 (2d Cir. 2000) ..........................................43

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).......................................................52

*Hnot v. Willis Group Holdings Ltd.*, No. 01 Civ. 6558(GEL), 2008
U.S. Dist. LEXIS 28312 (S.D.N.Y. Apr. 7, 2008) ...........53

*Hollins v. City of N.Y.*,
761 F. App'x 15 (2d Cir. 2019) ......................................18

*Honda Motor Co. v. Oberg*,
512 U.S. 415 (1994).......................................................34

*Humphrey v. Crea*,
822 F. App'x 36 (2d Cir. 2020) .................................18, 41

*Lore v. City of Syracuse*,
670 F.3d 127 (2d Cir. 2012) .............................17, 24, 25

*Malik v. Carrier Corp.*,
202 F.3d 97 (2d Cir. 2000) ............................................18

*Mathie v. Fries*,
121 F.3d 808 (2d Cir. 1997) ..........................................39

*McDaniel v. Cnty. of Schenectady*,
595 F.3d 411 (2d Cir. 2010) .....................................18, 50

*Michelman v. Clark-Schwebel Fiber Glass Corp.*,
534 F.2d 1036 (2d Cir. 1976) ........................................41

*Moore v. Houlihan's Rest., Inc.*,
    No. 07-cv-03129 (ENV) (RER), 2011 U.S. Dist. LEXIS 64452
    (E.D.N.Y. May 10, 2011) .......................................................................51

*Munafo v. Metro. Transp. Auth.*,
    2003 U.S. Dist. LEXIS 13495 (E.D.N.Y. Jan. 22, 2003) (E.D.N.Y.
    Jan. 22, 2003).........................................................................................45

*Noonan v. Becker*,
    No. 14-CV-4084 (LTS) (JLC), 2018 U.S. Dist. LEXIS 60704
    (S.D.N.Y. Apr. 10, 2018)........................................................................36

*Ortiz v. New York*,
    843 F. App'x 355 (2d Cir. 2021) ...........................................................52

*Patterson v. Balsamico*,
    440 F.3d 104 (2d Cir. 2006) ..................................................................39

*Payne v. Jones*,
    711 F.3d 85 (2d Cir. 2012) ..............................................................17, 25

*Raja v. Burns*,
    43 F.4th 80 (2d Cir. 2022) ...............................................................51, 52

*Saleh v. Pretty Girl, Inc.*,
    No. 09-CV-1769 (RER), 2022 U.S. Dist. LEXIS 160952
    (E.D.N.Y. Sep. 6, 2022)..........................................................................30

*Scala v. Moore McCormack Lines, Inc.*,
    985 F.2d 680 (2d Cir. 1993) ..................................................................42

*Singh v. Mem'l. Sloan Kettering Cancer Ctr.*,
    2022 U.S. Dist. LEXIS 225573 (S.D.N.Y. Dec. 14, 2022) ..................37

*Sooroojballie v. Port Auth. Of N.Y. & N.J.*,
    816 F. App'x. 536 (2d Cir. 2020) ......................................25, 26, 28, 53

*Stampf v. Long Island R.R.*,
    761 F.3d 192 (2d Cir. 2014) ..................................................................24

*Terra Firma Invs. (GP) 2 Ltd. v. Citigroup Inc.*,
    716 F.3d 296 (2d Cir. 2013) ..................................................................43

*Thomas v. iStar Fin., Inc.*,
  652 F.3d 141 (2d Cir. 2010) .................................................. 17, 38, 39

*Turley v. ISG Lackawanna, Inc.*,
  774 F.3d 140 (2d Cir. 2014) .................................................. 34

*United States v. Banki*,
  685 F.3d 99 (2d Cir. 2011) .................................................. 16

*United States v. Roy*,
  783 F.3d 418 (2d Cir. 2015) .................................................. 16

*United States v. Tin Yat Chin*,
  371 F.3d 31 (2d Cir. 2004) .................................................. 49

*United States v. Vayner*,
  769 F.3d 125 (2d Cir. 2014) .................................................. 49

*Vasbinder v. Scott*,
  976 F.2d 118 (2d Cir. 1992) .................................................. 39

*Villalta v. JS Barkats, P.L.L.C.*,
  No. 16 Civ. 2772 (RA), 2021 U.S. Dist. LEXIS 75071 (S.D.N.Y.
  Apr. 16, 2021) .................................................. 32, 36

*Walia v. Vivek Purmasir & Assoc's, Inc.*,
  160 F. Supp. 2d 380 (E.D.N.Y. 2000) .................................................. 31, 37

*Walker v. Taimur Raja Shield No. 19639*,
  No. 23-7688, 2024 U.S. App. LEXIS 27383 (2d Cir. Oct. 29,
  2024) .................................................. 18

**Statutes**

28 U.S.C. § 1295(a)(1) .................................................. 1

28 U.S.C. § 1331 .................................................. 1

28 U.S.C. § 1367(a) .................................................. 1

42 U.S.C. § 1981 .................................................. 25, 38

C.P.L.R. § 5501(c) .................................................. 17, 20, 25

Civil Rights Act of 1964 Title VII.................................................*passim*

Fed. R. Civ. P. 50...........................................................................5

Fed. R. Civ. P. 59....................................................................5, 43

Fed. R. Evid. 901..........................................................................49

N.Y.C. Admin. Code § 8-101 (NYCHRL)...........................*passim*

N.Y.C. Admin. Code § 8-126(a)..................................................38

New York State Executive Law § 296 (NYSHRL).............*passim*

## JURISDICTIONAL STATEMENT

This appeal is from a $2,725,000 judgment of the United States District Court for the Southern District of New York (the "District Court" or "Trial Court") which the Clerk of the Court entered on October 25, 2023 and District Judge Alvin K. Hellerstein endorsed on February 22, 2024. The judgment was issued against Defendants-Appellants Euros El Tina Restaurant Lounge and Billiards Corp. ("Euros") and Santiago Quezada, Sr. ("Quezada, Sr.") (collectively "Appellants") based on a jury verdict rendered on October 23, 2023 in favor of Plaintiff-Appellee Maria Jose Pizarro ("Appellee" or "Ms. Pizarro").

Jurisdiction below was based on 28 U.S.C. § 1331. The District Court had subject matter jurisdiction because one or more of Appellee's claims arose under "the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. The District Court had supplemental jurisdiction over Appellee's remaining claims pursuant to 28 U.S.C. § 1367(a). Appellants timely filed a Notice of Appeal on September 9, 2024, and an Amended Notice of Appeal on September 27, 2024. This Court has jurisdiction over this appeal under 28 U.S.C. § 1295(a)(1).

## ISSUES FOR REVIEW

(1)    Whether Appellants are entitled to a new trial or remittitur on the jury's award of $1.725 million in compensatory damages because the amount awarded is grossly excessive, is not limited to making Ms. Pizarro whole for any

actual harm that she experienced, is unsupported by the evidence submitted, and deviates materially from compensatory damage awards issued in comparable cases?

(2)     Whether Appellants are entitled to judgment as a matter of law, a new trial or remittitur on the jury's award of $1,000,000 in punitive damages because Ms. Pizarro did not meet the standards for recovering punitive damages under Title VII, the NYSHRL and/or the NYCHRL and/or the award is grossly excessive?

(3)     Whether Appellants are entitled to a new trial on liability and/or damages, or the District Court committed reversible error, because the District Court abused its discretion and improperly allowed Appellants to provide lay, uncorroborated testimony regarding her alleged medical condition and treatment?

(4)     Whether Appellants are entitled to a new trial on liability and/or damages, or the District Court committed reversible error, because the District Court abused its discretion and improperly precluded Appellants from introducing impeachment evidence during the cross-examination of Ms. Pizarro and her main witness Jose Eladio Castro Rodriguez?

(5)     Whether the district court erred in failing to substantially reduce Ms. Pizarro's counsel's application for attorneys' fees?

The above questions should be answered in the affirmative and the judgment entered in favor of Appellee should be reversed or modified for the reasons set

forth herein.

## STATEMENT OF THE CASE

Ms. Pizarro commenced this case by filing a Complaint with the United Stated District Court for the Southern District of New York on July 24, 2020. (A. 37).[1] In her Complaint, Appellee asserted 36 claims against Appellants. (A. 37-52). On September 30, 2020, Appellants filed their Answer with various Counterclaims and Cross-claims. (A. 53-67). Both parties subsequently amended their initial pleadings. (A. 122-193).[2]

While discovery was ongoing, Judge Hellerstein bifurcated the adjudication of the claims asserted on behalf of Appellee from the adjudication of the Counterclaims asserted on behalf of Appellants. After the parties completed discovery for Appellee's claims, they filed a Pretrial Order with the District Court on October 17, 2023. (A. 224).

The District Court convened a jury trial on October 17, 2023, which continued for four days. (A. 232-507). During the trial, the jury was asked to render a verdict on Appellee's following claims: (1) hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title

---

[1] Pages from the Special Appendix are referenced herein as "(S.A. ____)." Pages from the Appendix are referenced herein as "(A. ____)."

[2] Several of the claims asserted in Appellee's Complaint and Amended Complaint were dismissed or withdrawn prior to trial. (A. 224).

VII") and the New York State Human Rights Law ("NYSHRL") against Euros; (2) gender discrimination in the form of sexual harassment in violation of the New York City Human Rights Law ("NYCHRL") against Euros and Quezada, Sr.; and (3) aiding and abetting gender discrimination in violation of the NYCHRL against Santiago Quezada Jr. (A. 610).[3]

At trial, the District Court afforded the parties an opportunity to adduce evidence regarding liability for Appellee's substantive and remedial claims at issue, including Appellee's claims for compensatory and punitive damages. The District Court did not bifurcate the introduction of evidence on Appellee's punitive damage claims.

During the trial, Ms. Pizarro testified and called two witnesses to testify in support of her allegations. Ms. Pizarro did not call any treating physicians or expert witnesses to testify on her behalf with respect to her compensatory damage or other claims. In addition, Ms. Pizarro did not call any lay witnesses to corroborate her allegations of emotional distress.

The jury found against Appellants on Appellee's claims for sexual harassment in violation of Title VII and the NYSHRL and on Appellee's claims for gender discrimination in the form of sexual harassment in violation of the NYCHRL. The jury awarded Ms. Pizarro $1,725,000 in compensatory damages

---

[3] Appellee voluntarily withdrew her aiding and abetting claims against Santiago Quezada, Jr. after the close of evidence. (A. 416).

($725,000 against Euros and $1 million against Quezada, Sr.) and $1 million in punitive damages ($375,000 against Euros and $625,000 against Quezada, Sr.). (A. 610).

After the close of evidence and the issuance of the verdict, Appellants moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 or for a new trial pursuant to Fed. R. Civ. P. 59. (A. 510). Ms. Pizarro moved for an award of attorneys' fees. (A. 559).

On or about February 27, 2024, Judge Hellerstein issued an Order denying Appellants' post-trial motions for judgment as a matter of law or a new trial. (S.A. 2). In addition, Judge Hellerstein granted Ms. Pizarro's motion for attorneys' fees and costs in the amount of $247,108.13 with minimal elaboration or analysis. (S.A. 7-8). On February 22, 2024, Judge Hellerstein endorsed a judgment upholding the jury's verdict. (S.A. 1).

On August 29, 2024, Judge Hellerstein dismissed Appellants' Counterclaims and Cross-claims after the parties and Crossclaim Defendants engaged in summary judgment motion practice. On August 30, 2024, the Clerk of the Court entered Judgment on Judge Hellerstein's August 29, 2024 Order. Appellants appeal from the District Court's: (1) February 27, 2024 Order; (2) February 22, 2024 endorsed judgment; and (3) evidentiary rulings precluding Appellees from adducing evidence demonstrating the bias of Ms. Pizarro's main witness and undermining

Ms. Pizarro's credibility.  (A-616).

## STATEMENT OF FACTS

Washington Heights Billiards Inc. d/b/a Eurolatino Lounge (hereinafter "Washington Heights Billiards") was a business "operating a billiards hall/bar/nightclub/cafeteria" located at 500 West 207th St., New York, New York 10034.  (A. 276-277, 307).   Appellee and her ex-husband owned Washington Heights Billiards. (A. 174).   In August 2010, Quezada, Sr. purchased the assets of Washington Heights Billiards from Appellee and her ex-husband.  (A. 252, 277, 405-406).   Following this purchase, the restaurant was renamed Euros El Tina Restaurant Lounge and Billiards Corp. ("Euros").  (A. 174).

Euros was a large discotheque, bar, and restaurant which had billiards and a stage on which artists performed.  (A. 252-253).  Quezada, Sr. hired Ms. Pizarro to work for Euros as a manager.  (A. 252, 307, 389).  In this capacity, Ms. Pizarro was in charge of the daily operations of Euros.  (A. 251-252, 277, 307, 389, 405-406).  Ms. Pizarro was the highest nonowner employee of Euros.  (A. 389).  Euros employed approximately 30 employees, including servers, bartenders, busboys, a disc jockey ("DJ"), and other staff. (A. 389-390).

Euros operated on Fridays, Saturdays and Sundays from 7 p.m. to 5 a.m. (A. 278, 393).  The business had more than 50 cameras installed on premises. (A. 278). Appellee's ex-husband installed many of these cameras when he and Appellee

owned Washington Heights Billiards. (A. 372). The restaurant had a back office (in which Ms. Pizarro primarily worked out of) in one of the rear corners of the floor of the building in which Euros was located. (A. 277). The door to the office required employees to enter a code to enter the office. (A. 253, 371-372). The office included a desk with a cash register and two computers, a safe, a bathroom, electronic equipment to monitor the camera system, furniture, a back area in which liquor was stored behind a door, refrigerators, supplies and stock. (A. 253-254, 366, 374).

## I.    PIZARRO'S EMPLOYMENT AND ALLEGED HARASSMENT AT EUROS.

Euros employed Ms. Pizarro from August 2010 to November 23, 2019. (A. 277, 392-393). Ms. Pizarro testified that during her nine-year employment with Euros, Quezada, Sr. subjected her to various acts of sexual harassment in the form of unwanted touching, telling sexual stories on two occasions, using the bathroom in the office with the door open and at times exposing his penis as he zipped his zipper, masturbating in the office bathroom on one occasion, and one act of attempted rape on October 19, 2019. (A. 282-297, 317-324).

Except for the October 19, 2019 incident, Ms. Pizarro's allegations were unsupported by any corroborating testimony or documentary evidence concerning conduct that allegedly occurred within the 300-day statute of limitations under

Title VII.  Although Appellee called witnesses Third-Party Defendant Jose Eladio Castro Rodriguez ("Castro") and Cristan Guzman Dilone ("Dilone") to testify, these witnesses described a few isolated events they purportedly observed in contrast to the nine-year course of conduct Appellee attributed to Quezada, Sr.

Ms. Pizarro testified that sometime in mid-2011, she accompanied Quezada, Sr. to a political event.  (A. 282-283).  Ms. Pizarro claimed Quezada, Sr. raised the back of her dress in public during the event so that people behind her could see her undergarments and buttocks.  (A. 282-283, 338).  Ms. Pizarro said she did not expect Quezada, Sr. to behave in such manner and left the event shortly thereafter. (A. 282-283, 338).  According to Ms. Pizarro, she telephoned Quezada, Sr. the next day to let him know she would not attend another event with him because he did not know how to behave.  (A. 284).  Ms. Pizarro further alleged she never wore a dress or skirt in front of Quezada, Sr. again.  (A. 284).

Ms. Pizarro testified to several other alleged incidents and conduct that purportedly occurred throughout her employment without specifying when the incidents occurred.  For example, Ms. Pizarro testified that while she worked in the office at Euros, Quezada, Sr. would come up to her from behind and grab her breasts at least two times a month for almost 8 years.  (A. 284-285).  Ms. Pizarro further claimed Quezada, Sr. grabbed and squeezed her buttocks without permission approximately once a month.  (A. 286-288).

Ms. Pizarro testified Quezada, Sr. told sexually explicit stories to his friends or business partners in Ms. Pizarro's presence on two occasions. (A. 288-290). Ms. Pizarro further claimed Quezada, Sr. regularly used the bathroom in the back office with the door open, which was about five to eight feet away from Ms. Pizarro's desk in the office. (A. 293, 370). Ms. Pizarro testified that Quezada, Sr. would occasionally leave the bathroom and zip up his zipper in front of her to show her his penis. (A. 296). Ms. Pizarro also maintained she saw Quezada, Sr. masturbate in the bathroom once. (A. 294-295). Ms. Pizarro did not recall when this occurred, but estimated it may have happened in 2014. (A. 294-295). In addition to these incidents, Ms. Pizarro testified that Quezada, Sr. gave her unsolicited gifts on unspecified occasions, including perfume, a watch, a $2 bill, and panties once. (A. 297-298).

Ms. Pizarro's witnesses testified about Quezada, Sr.'s bathroom use, but did not specify any dates or time periods in which they allegedly observed Quezada, Sr. enter, use or exit the bathroom. For example, Castro claimed he saw Quezada, Sr. go to the bathroom and leave the door open on "innumerable occasions." (A. 265). Dilone testified he once saw Quezada, Sr. at an unidentified time coming out of the bathroom with his penis in his hand, but Dilone said nothing about the incident to Quezada, Sr. or anyone else. (A. 308-312).

Ms. Pizarro testified to one specific incident that purportedly occurred

within the 300-day statute of limitations under Title VII. On October 19, 2019, the day after Ms. Pizarro's birthday, she was working in the back office. (A. 318). According to Pizarro, while she was in the office Castro knocked on the door and entered the back office to take a telephone call. (A. 318).

Ms. Pizarro testified that while Castro was on the phone in the storage room in the back of the office where the liquor was kept, Quezada, Sr. entered the office and said he had to give Ms. Pizarro a "birthday hug." (A. 318). Ms. Pizarro maintained Quezada, Sr. then came around her and grabbed her breasts from behind her with his left hand, while lifting her blouse on her left side. (A. 320-321, 377). Ms. Pizarro claimed Quezada, Sr. then started lowering her pants and underwear with his right hand, while also lowering the zipper of his pants with the same hand. (A. 320-321, 377-378). Ms. Pizarro said she struggled against Quezada, Sr. but was unable to move and felt his penis against her skin. (A. 321-322, 378). According to Ms. Pizarro, the incident lasted about a minute before Castro showed up and Quezada, Sr. let Ms. Pizarro go, fixed his clothes and left the office. (A. 323). Ms. Pizarro conceded she did not scream or call for help while she struggled with Quezada, Sr. (A. 379-380).

Ms. Pizarro testified she felt ashamed and began crying and was afraid she would be raped. (A. 322-323, 379). However, she admittedly returned to work for approximately four hours and finished her shift. (A. 323-324, 380).

Castro also testified about this event. Castro stated he did not have the combination code to enter the office and Ms. Pizarro opened the door to let him in. (A. 265). Castro claimed he went to the storage area in the rear of the office to take his phone call. (A. 265-267). Castro estimated he was on the phone for 10 to 13 minutes. (A. 265). Castro said he opened the door to the storage area after he finished his call and saw Quezada, Sr. grabbing Ms. Pizarro with his arms from behind her and rubbing her with force. (A. 266). Castro claimed he could see one of Ms. Pizarro's breasts. (A. 267). According to Castro, after Quezada, Sr. saw Castro he zipped his zipper and left the office. (A. 267). Both Castro and Ms. Pizarro admitted they did not report this incident to the police. (A.270, 325, 404-405). In addition, Castro did not report the incident to Euros' the head of security or discuss what occurred with Quezada, Sr. or Santiago Quezada, Jr. (A. 270). Ms. Pizarro further admitted she did not speak to anyone other than Quezada, Sr. about the incident. (A. 357-358, 403-404).

During her employment with Euros, Appellee admittedly never made any complaints about Quezada, Sr. to any other management employee of Euros, to security or to the police. (A. 285-288, 356-358).

Euros was shut down permanently on November 23, 2019 due to violations with the facility's certificate of occupancy. (A. 393, 399). Before the trial began,

Ms. Pizarro had not seen Quezada, Sr. since the day after the business shut down. (A. 332-333).

## II. MS. PIZARRO'S TESTIMONY REGARDING EMOTIONAL DISTRESS.

During the trial, Judge Hellerstein provided Ms. Pizarro with wide latitude to testify about her claims, her interactions with Quezada, Sr., her symptoms of emotional distress, and the medical treatment she received for depression and high blood pressure. Significantly, Ms. Pizarro did not introduce any lay or expert witnesses to corroborate the nature, duration, severity or consequences of the emotional distress she allegedly experienced or exhibited as a result of Appellants' conduct. (A. 327-334). Similarly, Ms. Pizarro did not introduce any medical testimony, medical records or other evidence regarding the treatment and medication she purportedly received from her primary care physician or the psychiatric clinic she claimed she attended. (A. 327-334). Instead, the sole evidence Ms. Pizarro proffered in support of her claims for compensatory damages was her self-serving testimony.

Ms. Pizarro testified fairly extensively regarding the symptoms of, and treatment for, emotional distress she claimed she experienced as a result of her interactions with Quezada, Sr. For example, Ms. Pizarro claimed:[4]

---

[4] Judge Hellerstein overruled most of defense counsel's repeated objections to Appellee's testimony about the nature, cause and treatment of her emotional distress. (A. 328-332).

1. She felt ashamed, humiliated, afraid, a little intimidated, and threatened by Quezada, Sr.'s alleged conduct. (A. 283, 285-288, 296, 322-324, 326);

2. She began receiving treatment for depression and high blood pressure in mid-2011. (A. 327);

3. In 2011 she began taking Sertraline for depression and Valsartan for her blood pressure. (A. 328);

4. She took the sertraline until 2020, but changed her treatment after her primary care physician referred her to a psychiatric clinic. (A. 328);

5. Her primary care physician referred her to a psychiatric clinic because her depression increased and she attempted suicide by taking sleeping pills around Christmas in 2019. (A. 328-329);

6. She has been receiving care from a psychiatric clinic since January 2020. (A. 329);

7. Her psychiatrist changed her medication to Lexapro, 20 milligrams, and Trazadone, 150 milligrams. (A. 329-330);

8. The Lexapro is to keep her depression and mood more controlled. (A. 330);

9. The Trazadone is for sleeping. (A. 330);

10. At her clinic she is considered to be a high-risk patient. (A. 330);

11. She has a number to call a therapist who will stay with her on the phone. (A. 330);

12. She takes medication for sleeping because she has nightmares. (A. 330);[5]

13. In her nightmares, she sees Quezada, Sr. asphyxiating her with his arms. She also sees Quezada, Sr. and his son wanting to run her over with their car. (A. 332);

14. Here nightmares are recurrent. The nightmares of asphyxiation occur once a month. The nightmare about being run over by a car occur twice a week. (A. 332, 334);

15. The last time she had a nightmare regarding asphyxiation occurred the Friday before the trial because she was getting ready to come to court. (A. 332);

16. The last time she had a nightmare regarding being run over by a car happened the Sunday before the trial. (A. 334).

Outside the jury's presence, Judge Hellerstein informed counsel he overruled defense counsel's objections to this line of questioning because:

---

[5] Judge Hellerstein sustained defense counsel's objection to Appellee's testimony that she has been diagnosed with post-traumatic distress. (A. 330).

> The questions were proper because they intended to elicit the consequences of the sexual molestation of the plaintiff, and a plaintiff so aggrieved is competent to testify about the consequences that she felt and that affected her. But as I said before, she's not competent to testify on what professionals may have told her, unless it affects some kind of behavior, then she can discuss the behavior that changed after seeing the professional … She certainly can say what she was expecting from the medicine and she can certainly say what impact the medicine had on her.

(A. 335-336).

During defense counsel's cross-examination of Castro and Ms. Pizarro, Judge Hellerstein precluded Appellants from introducing into evidence copies of emails Appellants found on Ms. Pizarro's work computer which Appellants believed Ms. Pizarro exchanged with Castro in 2012. (A. 128, 271-272, 340-351). Appellants maintained these emails demonstrated Ms. Pizarro and Castro were involved in a long-term romantic relationship. (A. 346-350).

Appellants sought to use these emails to demonstrate bias on the part of Castro and to impeach Ms. Pizarro's credibility. Appellants considered these emails to be crucial to their defense, as Castro was the only alleged witness to the attempted rape for which Quezada, Sr. was accused, and this was the sole allegation against Quezada, Sr. that occurred within the 300-day statute of limitations under Title VII. Judge Hellerstein refused to admit the emails into evidence because: (1) Ms. Castro said she did not remember them and her

computer had been hacked; and (2) Appellants did not authenticate the emails. (A. 350).

The jury found against the Appellants on Ms. Pizarro's claims under Title VII, the NYSHRL and the NYCHRL and awarded Ms. Pizarro $1,725,000 in compensatory damages and $1 million in punitive damages. (A. 501-502).

## III. POST-TRIAL MOTIONS.

The District Court denied Appellants' post-trial motions and refused to reduce the damages awards. (S.A. 2-8). According to Judge Hellerstein, the verdict was supported by Ms. Pizarro's claims of "egregious" emotional distress, Ms. Pizarro's "untouched" credibility and Appellants' "reprehensible" conduct. (S.A. 6-7). Judge Hellerstein also awarded Ms. Pizarro $247,108.13 in attorneys' fees and costs without disclosing any analysis of the three-year billing entries submitted in support of the fee application. (S.A. 6-7).

## STANDARD OF REVIEW

A claim of instructional error is reviewed *de novo,* if "the error was prejudicial in light of the charge as a whole," the Court "will reverse." *United States v. Banki*, 685 F.3d 99, 105 (2d Cir. 2011). An instruction "is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Roy*, 783 F.3d 418, 420 (2d Cir. 2015).

A district court's decision whether to order a remittitur of compensatory damages is reviewed for abuse of discretion, "taking into account amounts awarded in other, comparable cases." *Lore v. City of Syracuse,* 670 F.3d 127, 177 (2d Cir. 2012). Although this Court "'give[s] the benefit of every doubt'" to the Trial Court's judgment, there is "'an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable men may differ, but a question of law.'" *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 435 (1996) (quoting *Dagnello v. Long Island R. Co.,* 289 F.2d 797, 806 (2d Cir. 1961)). As to federal claims, an award so high as to "shock the judicial conscience and constitute a denial of justice" will be set aside. *Lore,* 670 F.3d at 177. "Under New York law … an award is deemed excessive 'if it deviates materially from what would be reasonable compensation.'" *Id.* (quoting C.P.L.R. § 5501(c)).

The constitutionality of an award of punitive damages is reviewed *de novo. Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.,* 532 U.S. 424, 436 (2001). *Thomas v. iStar Fin., Inc.,* 652 F.3d 141, 148 (2d Cir. 2010). A district court's decision evaluating a punitive award for excessiveness under the common law is reviewed for abuse of discretion, but "the degree of discretion enjoyed by trial courts in these matters is relatively narrow." *Payne v. Jones,* 711 F.3d 85, 98, 100 (2d Cir. 2012).

Denial of a motion for judgment as a matter of law ("JMOL") is reviewed *de novo*. *Malik v. Carrier Corp.*, 202 F.3d 97, 103 (2d Cir. 2000); *Fabri v. United Techs. Int'l, Inc.,* 387 F.3d 109, 119 (2d Cir. 2004). Judgment should be granted "when, viewing the evidence in the light most favorable to the non-moving party, there can be but one conclusion as to the verdict that reasonable persons could have reached." *Ehrlich v. Town of Glastonbury,* 348 F.3d 48, 52 (2d Cir. 2003).

Denial of a motion for a new trial is reviewed for abuse of discretion. *Walker v. Taimur Raja Shield No. 19639*, No. 23-7688, 2024 U.S. App. LEXIS 27383, at *3 (2d Cir. Oct. 29, 2024). A new trial is warranted where the jury's verdict is against the weight of the evidence. *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998). A verdict is against the weight of the evidence if the jury reached a seriously erroneous result or the verdict is a miscarriage of justice. *Humphrey v. Crea*, 822 F. App'x 36, 37 (2d Cir. 2020). In evaluating the sufficiency of a motion for a new trial, the District Court may weigh conflicting evidence and need not view such evidence in the light most favorable to the non-moving party. *Hollins v. City of N.Y.*, 761 F. App'x 15, 17 (2d Cir. 2019). In fact, a new trial "may be granted even if there is substantial evidence supporting the jury's verdict." *DLC*, 163 F.3d at 133-34.

Finally, an award of attorneys' fees should be vacated for abuse of discretion. *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 416 (2d Cir. 2010).

## SUMMARY OF ARGUMENT

On Ms. Pizarro's hostile work environment sexual harassment and gender discrimination claims, Appellants ask this Court to: (1) vacate the judgment and order a new trial for the multiple reasons elaborated herein; or (2) remit the jury's awards for compensatory and punitive damages. Appellants acknowledge that through her testimony, Ms. Pizarro alleged several acts of harassment against Appellants even though only one alleged incident purportedly occurred during the 300-day statute of limitations under Title VII. The central questions on appeal, however, are whether the amounts awarded to compensate Ms. Pizarro and punish Appellants are excessive as a matter of law in light of the evidence the District Court allowed Ms. Pizarro to introduce and prevented Appellants from adducing.

The jury's $1,725,000 compensatory damage award for emotional distress is excessive and should be vacated or reduced. The District Court incorrectly applied the remittitur standard under New York law by (1) finding the $1,725,000 compensatory damage award did not deviate materially from comparable cases, and (2) refusing to reduce the award.

By relying solely on her uncorroborated testimony, Ms. Pizarro withheld from the jury the nature and quantum of evidence that could support an award of "significant" or "egregious" emotional distress as those categories of relief have been defined by state and federal precedent in New York. As a lay witness, Ms.

Pizarro was not qualified to introduce evidence capable of proving she has suffered or will suffer long-term debilitating distress as a result of Appellants' alleged conduct. Moreover, in testifying about the cause, extent and treatment of her emotional distress without any corroborating medical testimony or records, Ms. Pizarro prevented Appellants from challenging the clinical *bona fides* of her allegations through incisive cross-examination. This dearth also forced the jury to substitute conjecture and ire for competent medical analysis in evaluating the reliability of Ms. Pizarro's emotional distress claims.

In addition to these deficits, the jury's compensatory damage award deviated materially from awards issued in cases with similar facts at issue in a manner that should shock the judicial conscience. Other plaintiffs who, like Ms. Pizarro, have proffered uncorroborated evidence of emotional distress typically have received a fraction of the amount awarded to Ms. Pizarro in compensatory damages. Awarding a plaintiff $1.725 million for essentially garden variety emotional distress (even at the high range of the garden variety spectrum) would upend years of case law defining the monetary limits of such awards and defeat the parity and predictability contemplated by CPLR § 5501(c). Even when compared to compensatory damage awards issued in cases involving plaintiffs who suffered "egregious" emotional distress proven through unassailable evidence like

corroborating medical records and expert testimony, the $1.725 million award Ms. Pizarro received for pain and suffering is off the charts.

A review of punitive awards upheld in other employment cases within this Circuit confirms that $1,000,000 constitutes excessive punishment under federal common law. Punitive damage awards ranging between $50,000 and $300,000 are typical in such cases, and awards above $1,000,000 regularly are reduced to six figures or less. The punitive damage award Ms. Pizarro received grossly exceeded civil penalties available to punish wrongdoing under the NYCHRL and is particularly excessive in light of Appellants' financial situation.

Moreover, this Court should find the District Court abused its discretion in declining to grant a new trial or to remit Appellee's damage awards because the District Court deprived Appellants of the best opportunity they had to challenge Ms. Pizarro's credibility and establish the bias of her principal witness Jose Eladio Castro Rodriguez.

As explained in Point II above, the District Court refused to allow Appellants to introduce into evidence a series of emails ostensibly exchanged between Ms. Pizarro and Castro in 2012 and maintained on her work computer. (A. 128). These emails contained numerous terms of endearment, mutual expressions of love and devotion, and colloquy about work-related events at Euros.

The District Court's refusal to admit these emails into evidence based on insufficient authentication was not harmless error.

The information offered to authenticate these emails was adequate for their introduction into evidence because Ms. Pizarro confirmed the emails included her former email address at aol.com and the emails were found on her work computer. (A. 128). As a result, there was a sufficient foundation for the Court to admit Defendants' Proposed Exhibit A into evidence and allow the jury to assign its appropriate weight. If this evidence and the related cross-examination of Ms. Pizarro and Castro had been permitted, Appellants would have been able to demonstrate Castro's bias in favor of Ms. Pizarro and assail Ms. Pizarro's credibility on the hallmark of her testimony – Santiago, Sr.'s alleged attempted rape on October 19, 2019. This cannot be deemed harmless error in the context of this case, where Castro was the only alleged witness to Ms. Pizarro's most offensive, timely and prejudicial allegations against Appellants. Because these emails were pivotal to the central theory of the defense, the exclusion of the emails from evidence swayed the judgment of the jury and their exclusion cannot be deemed harmless error.

In addition to these legal and evidentiary issues, the Court's jury instructions on the scope of compensatory damages constituted reversible error because the Court neglected to inform the jury that Ms. Pizzaro could not be awarded

compensatory damages for any emotional distress she experienced as a result of pursuing her lawsuit against Appellants.

Finally, the attorneys' fees awarded by the District Court cannot be sustained at $247,108.13 for a straightforward, single plaintiff employment discrimination suit that resulted in a four-day trial. The District Court failed to provide any analysis of the reasonableness of counsels' fee petition. This is especially problematic where only four of the 36 claims asserted in Ms. Pizarro's judicial Complaint proceeded to trial.

These errors, whether considered individually or cumulatively, were not harmless. For these reasons and those elaborated below, Appellants are entitled to a new trial (or in the alternative judgment as a matter of law), or a remittitur, on Ms. Pizarro's claims for compensatory and punitive damages.

## ARGUMENT

### I. THE JURY'S EXCESSIVE COMPENSATORY DAMAGE AWARD MUST BE REMITTED OR REMANDED FOR A NEW TRIAL.

The $1,750,000 in compensatory damages for emotional distress awarded by the jury are shockingly excessive and disproportionate to awards issued in similar cases in light of Ms. Pizarro's failure to corroborate any of the testimony she was allowed to proffer on her emotional state, mental health, psychiatric treatment and medication administration with additional lay or expert testimony and medical

records. A comparison of the compensatory damages awarded here with amounts permitted in this Circuit in cases involving "significant" or even "egregious" emotional distress confirms the excessiveness of the awards against Appellants.

The jury's award of $1.725 million in compensatory damages against Appellants is excessive and is not sustainable as a matter of law. The disconnect between the jury's award and the record evidence, as well as the awards issued in comparable cases, demonstrates the award under review likely reflects the jury's deep sympathy for Ms. Pizarro rather than a desire to ameliorate any actual harm she has suffered as a result of Appellants' conduct. Since Ms. Pizarro was not seeking any economic damages in this case, it appears the jury's compensatory damage award was guided by emotion or sympathy. This, however, is an improper basis for awarding compensatory damages, which must be limited to making Ms. Pizarro whole for any actual harm she experienced because of any conduct undertaken by Appellants the jury deemed actionable under Title VII, the NYSHRL and/or the NYCHRL. The interests of justice therefor implore the Court to set a new trial or, at a minimum, remit the compensatory damage award. *Stampf v. Long Island R.R.*, 761 F.3d 192, 205 (2d Cir. 2014) ("[A] legal system has an obligation to ensure that such awards for intangibles be fair, reasonable, predictable, and proportionate.").

### A. Applicable Standards For Evaluating The Breadth Of Compensatory Damage Awards Under Federal And State Law.

The Court's specific role in the calculation of compensatory damages under Title VII is to determine "whether the award is so high as to shock the judicial conscience and constitute a denial of justice." *Sooroojballie v. Port Auth. Of N.Y. & N.J.*, 816 F. App'x. 536, 545-46 (2d Cir. 2020) (quoting *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003)). Under New York law, which is pertinent to evaluating the propriety of any compensatory damages awarded under the NYSHRL or the NYCHRL, an award is deemed excessive "if it deviates materially from what would be reasonable compensation." CPLR § 5501(c); *Lore*, 670 F.3d at 177.[6]

### B. The Jury's Compensatory Damages Award Grossly Exceeded Awards Issued In Cases Addressing Claims Similar To Those Asserted By Ms. Pizarro.

In serving this narrow role under the federal or New York standards, courts possess the authority and power—and indeed, are duty-bound—to scrutinize the size of awards rendered in the trial courts within the Second Circuit. *See Payne v. Jones*, 711 F.3d 85, 96 (2d Cir. 2012) ("Responsibility to appraise these matters of necessity falls on the courts[.]"). To determine whether an award is excessive, the

---

[6] It is undisputed that Euros employed approximately 30 employees. (A. 389). Pursuant to 42 U.S.C. § 1981a, Euros' liability for compensatory and punitive damages under Title VII was capped at $50,000. 42 U.S.C. § 1981a. Accordingly, the vast majority of the jury's $1.725 million compensatory damage award presumably was issued against: (1) Euros under the NYSHRL and/or the NYCHRL, and (2) Quezada, Sr. under the NYCHRL.

district courts "are bound by precedent to compare the awards in this case with the awards in analogous cases." *Sooroojballie*, 816 F. App'x. at 546.

1. **The District Court abused its discretion in allowing Ms. Pizarro to substitute her uncorroborated lay testimony for competent medical evidence.**

Here, the compensatory damages award of $1.725 million represents an extreme upward departure from the ranges of compensatory damage awards the district courts have allowed in comparable cases. This is especially true in light of Ms. Pizarro's failure to introduce any evidence to corroborate her claims in the form of medical records, testimony by a treating or examining physician, or testimony from other lay witnesses. Ms. Pizarro alone testified about the alleged symptoms of emotional distress she contended were caused by Appellants' conduct, and the psychiatric treatment (including medication management) she purportedly received while she worked at Euros and after her employment ceased.

By declining to support her emotional distress claims with medical testimony or records, Ms. Pizarro deprived Appellants of an opportunity to question the clinical validity, causation, duration and efficacy of the medical treatment she purportedly received and attributed to her primary care physician and psychiatric clinic in a thinly veiled form of hearsay. As catalogued in Section II of the Statement of Facts above, Ms. Pizarro relied solely on her conclusory testimony to allege: (1) Appellants caused her to feel bad, ashamed, humiliated,

depressed and suicidal (A. 283, 285-288, 296, 322-324, 326); (2) she received extensive psychiatric counseling (A. 328-329); (3) she was prescribed varying strengths of medications for high blood pressure, depression, and sleep disturbances (A. 327-328, 330, 338); (4) her psychiatric clinic considered here to be a high-risk patient (A. 330); and (5) Appellants caused her to experience recurring nightmares (A. 332, 334).

The District Court granted Ms. Pizarro wide latitude – almost carte blanche—in allowing her to testify about the causation, extent, duration and severity of her physical and emotional condition and related medical treatment. (A. 327-334). The District Court justified this largesse by ruling Ms. Pizarro was competent to testify about the consequences she felt from her sexual molestation (a conclusion which was entrusted to the jury, not the District Court) and that affected her, including her expectations for taking medicine and the impact the medicine had on her. (A. 335-336). In denying Appellants' post-trial motions, the District Court bootstrapped this explanation by incorrectly characterizing Ms. Pizarro's emotional distress claims as "egregious." (S.A. 6).

Appellants maintain the District Court erred in allowing Ms. Pizarro to introduce such unreliable faux medical evidence, virtually immune from meaningful cross-examination. In light of Ms. Pizzaro's failure to proffer any medical or expert testimony, or any medical records related to her alleged

psychiatric treatment, the jury's compensatory damage award cannot be allowed to stand. *See Doe v. Warren*, No. 20-CV-9522 (ER) (VF), 2024 U.S. Dist. LEXIS 106767, at *26 (S.D.N.Y. May 3, 2024) (plaintiff awarded $500,000 in compensatory damages after alleging she was raped, but did not submit any medical records to substantiate her injuries).

## 2. By relying solely on her uncorroborated lay testimony, Ms. Pizarro presented a garden variety claim of emotional distress to the jury.

There are three categories routinely considered by the Second Circuit in assessing the propriety and size of jury awards for compensatory damages: (1) "garden variety;" (2) "significant;" and (3) "egregious." *See Sooroojballie*, 816 F. App'x. at 546. Based on the factors the courts use to evaluate emotional distress claims, the type of evidence offered in this trial falls within the "garden variety" category (or at worst, possibly the "significant" category). The "garden variety" characterization is apt because Ms. Pizarro relied solely on her lay testimony, described her symptoms and treatment in vague or conclusory terms, and failed to corroborate her self-serving allegations with any medical testimony, medical records, or other lay testimony regarding her observable affect and actions.

In "garden variety" emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injuries in vague or conclusory terms, without relating either the severity or

consequences of the injuries. *See, e.g.*, *Caravantes v. 53rd St. Partners, LLC*, 2012 U.S. Dist. LEXIS 120182, at *71 (S.D.N.Y. Aug. 23, 2012). Such claims typically lack extraordinary circumstances and are unsupported by any medical corroboration. *Id.*, citing *Olsen v. Cnty. of Nassau,* 615 F. Supp. 2d 35, 46–47 (E.D.N.Y. 2009) (internal quotations and citations omitted).

"Significant" emotional distress claims typically are (1) based on more substantial harm or more offensive conduct, and (2) are supported by medical testimony and evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses. *Caravantes*, 2012 U.S. Dist. LEXIS 120182, at *71. Finally, "egregious" emotional distress claims generally involve either "outrageous or shocking" discriminatory conduct or a significant impact on the physical health of the plaintiff. *Id.* In "significant" or "egregious" cases, the plaintiff usually introduces evidence of debilitating and permanent alterations in his or her lifestyle. *Id.*

As stated above, the garden variety category of emotional distress claims largely consists of cases that rely on a plaintiff's own testimony and the testimony of other lay witnesses. *Caravantes*, 2012 U.S. Dist. LEXIS 120182, at *71. In such cases, jury awards tend to be in the range of $25,000-$75,000, with outliers of $125,000 and $150,000 recognized within the Second Circuit. *Id.*

Even if the degree of Ms. Pizarro's emotional distress could be categorized

as "significant" (which Appellants maintain it cannot), awards for "significant" emotional distress generally fall within the range of $50,000 to $200,000. *See Emamian v. Rockefeller Univ.*, No. 7 Civ 3919 (DAB), 2018 U.S. Dist. LEXIS 97674, \*16 (S.D.N.Y. June 8, 2018) (*aff'd, 823* Fed. Appx. 40 (2d Cir., 2020)) (reducing $2 million jury award to $200,000 where distress was considered significant in light of plaintiff's testimony about her mental state, physical manifestations of emotional distress, and corroborative medical testimony); *Saleh v. Pretty Girl, Inc.*, No. 09-CV-1769 (RER), 2022 U.S. Dist. LEXIS 160952, at \*75 (E.D.N.Y. Sep. 6, 2022) (Plaintiff presented his own testimony and the testimony of corroborating lay witnesses regarding his emotional distress and its physical manifestations. Plaintiff testified he received some psychiatric medical treatment in connection with his emotional distress, but did not proffer any testimony from an independent healthcare professional. Based on these factors, the district court found the plaintiff's evidence most comparable to higher end "garden variety" or mid-range "significant" emotional distress claims and upheld the jury's compensatory damage award of $100,000).

### 3. <u>The jury's compensatory damage award exceeded analogous awards issued in comparable cases based on the evidence proffered.</u>

In discrimination and harassment cases involving emotional distress of severity and duration comparable to that depicted by Ms. Pizarro, courts in the

Second Circuit routinely have granted motions for new trial or remittitur to redress arbitrary and disproportionate jury awards. Here, the jury's award of $1.725 million in compensatory damages shocks the conscience, bears no relation to the evidence presented at trial, and dramatically exceeds compensatory damage awards issued or affirmed on the basis of comparable fact patterns.

Cases involving conduct similar to that alleged by Ms. Pizarro do not support the extensive type of compensatory damage award Ms. Pizarro received. In *Walia v. Vivek Purmasir & Assoc's, Inc.,* 160 F. Supp. 2d 380 (E.D.N.Y. 2000), the plaintiff's employer asked her out repeatedly, continued to press her to engage in a relationship, grabbed her from behind, squeezed her breasts, and threatened her to refrain from reporting him. The plaintiff alleged she was ashamed and claimed she suffered from stomach aches, slept too much, and went to a psychologist on several occasions for therapy. Although this case resulted in a default judgment, the district court declined to award the plaintiff the $150,000 she sought for emotional injuries and instead awarded her $30,760 for sexual harassment under the NYCHRL.

In *Caravantes*, 2012 U.S. Dist. LEXIS 120182, at *24, a heterosexual employee was subject to *quid pro quo* sexual harassment involving repeated, unwanted homosexual sexual encounters (oral and anal sex) with his supervisor for years, often on a daily basis. The plaintiff testified he developed "serious

31

depression," social withdrawal, insomnia, lowered energy level, impaired concentration, suicidal thoughts, sleep disturbance, and appetite disturbances. In addition, these symptoms were corroborated by an expert psychologist.

Based on the evidence summarized above, the *Caravantes* Court found the case fell into the "egregious" category of emotional distress claims. *Caravantes*, 2012 U.S. Dist. LEXIS 120182, at *24. However, because the plaintiff's psychiatric conditions were treatable and the plaintiff was working in a restaurant at the time of trial, the district court awarded the plaintiff $150,000 in compensatory damages. *See also Villalta v. JS Barkats, P.L.L.C.*, No. 16 Civ. 2772 (RA) (RWL), 2021 U.S. Dist. LEXIS 75071, *40 (S.D.N.Y. Apr. 16, 2021) (finding compensatory damage award of $350,000 was appropriate because the defendant sexually assaulted the plaintiff twice in the workplace, and routinely physically assaulted and harassed the plaintiff at the workplace); *Drice v. My Merch. Servs., LLC,* No. CV 2015-0395 (MKB)(MDG), 2016 U.S. Dist. LEXIS 29006, at *18 (E.D.N.Y. Mar. 4, 2016) ($20,000 default judgment awarded on the plaintiff's sexual harassment claims under Title VII and the NYCHRL where the plaintiff alleged she felt offended, disturbed and humiliated by the conduct she endured, but failed to introduce medical or mental health records in support of her compensatory damage claim).

### 4. **The exorbitant nature of the jury's compensatory damage award mandates retrial or remittitur.**

Due to the completely uncorroborated nature of Ms. Pizarro's testimony, there is no basis in the trial record upon which a reasonable jury could have found Ms. Pizarro met her burden of establishing she experienced "egregious" emotional distress as a result of Appellants' alleged conduct. As a result, the Court should grant Appellants a new trial on the issue of compensatory damages.

Alternatively, the Court should follow well-established case law and remit Ms. Pizarro's compensatory damage award to an amount significantly less than $1.725 million. If based on relevant precedent the Court assesses Ms. Pizarro's uncorroborated evidence of emotional distress to be garden variety, the award should be remitted to less than $125,000. If the Court assesses Ms. Pizarro's evidence of emotional distress to be significant, the award should be remitted to less than $200,000. Under well-developed case law, this is the maximum range of compensatory damages Ms. Pizarro should be able to sustain as a matter of law given her vague, conclusory and self-serving testimony and her calculated decision to refrain from introducing any medical testimony, expert testimony or medical records into the trial record.

## II. **THE JURY'S PUNITIVE DAMAGE AWARD WAS EXCESSIVE.**

The Court should also grant Appellants a new trial on the jury's blatantly

unconstitutional and outrageous award of $1 million in punitive damages. Alternatively, the Court should grant Appellants remittitur to reduce the punitive damage award to a sum less than $250,000, the maximum civil fine allowed under the NYCHRL for willful, wanton or malicious acts.

"Judicial review of the size of punitive damages awards has been a safeguard against excessive verdicts for as long as punitive damages have been awarded." *Honda Motor Co. v. Oberg,* 512 U.S. 415, 421 (1994). The Court "exercise[s] relatively stringent control over the size of punitive awards in order to ensure that such damages are 'fair, reasonable, predictable, and proportionate,' to avoid extensive and burdensome social costs, and to reflect the fact that punitive awards are imposed without the protections of criminal trials." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 164 (2d Cir. 2014); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 499, 570 (2008) (noting "the stark unpredictability of punitive awards").[7]

In this civil action, there has been no corresponding criminal trial or conviction of Quezada, Sr.'s alleged conduct. In fact, it is undisputed Ms. Pizarro never reported any of Quezada, Sr.'s alleged misconduct with the police in either Manhattan or Queens where she resides. (A. 325, 404-405). Appellants maintain

---

[7] *See also Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 328 (S.D.N.Y. 2018) ("Regarding the magnitude of punitive damage awards, due process requires that they be reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition.") (citations and quotations omitted).

the jury's $1 million punitive damage award is unreasonable and unconstitutionally excessive in punishing Quezada, Sr. individually, and as the owner of the now defunct Euros.

The framework for assessing whether an award of punitive damages violates due process is well established in *BMW of N. Am. v. Gore*, 517 U.S. 559, 575 (1996). The *Gore* Court articulated three guideposts for the federal courts to utilize in reviewing punitive damage awards: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.*

### A. The Punitive Damages Awarded By The Jury Grossly Exceeds Punitive Damages Awarded In Comparable Cases.

The punitive damage award rendered by the jury should be reduced because it grossly exceeds the limits of punitive damages imposed in cases based on fact patterns comparable to the evidence adduced before the Trial Court. In the Second Circuit, multiple district courts have awarded punitive damages where the conduct at issue involved a sexual assault.

Cases in which $1 million punitive damage awards have been granted or upheld involve conduct significantly more reprehensible than the behavior Ms.

Pizarro ascribed to Quezada, Sr. *See*, *e.g.*, *Doe v. Alsaud*, 2017 U.S. Dist. LEXIS 167359, at *1 (S.D.N.Y. Oct. 10, 2017) (awarding the plaintiff $1,000,000 in punitive damages after assessing the extraordinarily reprehensible conduct of the rape of two women and the defendant's indifference to the brutality of the act); *Noonan v. Becker*, No. 14-CV-4084 (LTS) (JLC), 2018 U.S. Dist. LEXIS 60704, at *4 (S.D.N.Y. Apr. 10, 2018) (awarding, after default, $1,000,000 in punitive damages where the plaintiff was raped by a police officer who implicitly threatened to harm her legal case if she did not comply).

In some instances, conduct significantly more severe than Ms. Pizarro's allegations against Quezada, Sr. has resulted in punitive damage awards considerably less than the $1 million awarded in the instant case. *See, e.g., Caravantes*, 2012 U.S. Dist. LEXIS 120182, at *24 (district court awarded plaintiff $40,000 in punitive damages where plaintiff, a heterosexual employee, was subjected to *quid pro quo* sexual harassment involving repeated, unwanted homosexual sexual encounters (oral and anal sex) with his supervisor for years); *Villalta*, 2021 U.S. Dist. LEXIS 75071, at *40 (district court found $700,000 punitive damage award was appropriate because the defendant twice raped the plaintiff in the workplace, and regularly physically assaulted and harassed the plaintiff in the workplace).

Here, the complained-of conduct (viewed in isolation or in the aggregate)

does not rise to the level of extreme and outrageous behavior the Second Circuit has found to warrant a seven-figure award of punitive damages. A comparison of the record evidence introduced before the Trial Court to evidence adduced in similar cases demonstrates the jury's punitive damages award was excessive as a matter of law. *See, e.g., Singh v. Mem'l. Sloan Kettering Cancer Ctr.*, 2022 U.S. Dist. LEXIS 225573, at *4 (S.D.N.Y. Dec. 14, 2022) (plaintiff was awarded $200,000 in punitive damages based on evidence confirming defendant regularly touched and grabbed plaintiff in the workplace); *Walia,* 160 F. Supp. 2d at 397 (district court awarded plaintiff $30,000 in punitive damages based on evidence establishing plaintiff's employer asked plaintiff out repeatedly, continued to press her for a relationship, grabbed her from behind, squeezed her breasts, and threatened her to refrain from reporting employer).

**B.     The Jury's Punitive Damage Award Grossly Exceeded The Limit Of Civil Fines Available Under The NYCHRL And The Damage Cap Applicable To Euros Under Title VII.**

As to the third guidepost for evaluating the constitutionality of punitive damage awards under *BMW of N. Am. v. Gore*, this Court and the district courts in this Circuit routinely have identified the general range of punitive damages awards appropriate in employment discrimination cases as being in six-figures, especially where a federal, state or local legislative body has imposed a limit on civil penalties or fines for violating a fair employment practices statute. "[A] reviewing

court engaged in determining whether an award of punitive damages is excessive should accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue." *Gore*, 517 U.S. at 583 (citations and quotations omitted).

According to this Court: "Although[] the ratio of the jury's punitive damages award to this civil penalty does not render the award *per se* unconstitutional, the substantial size of the jury's punitive damages award as compared to the relevant civil fine indicates that the award was excessive." *iStar*, 652 F.3d at 149 (considering the NYCHRL's imposition of civil fines of up to $250,000 for willful, wanton, or malicious acts, and up to $125,000 absent evidence of willful, wanton, or malicious behavior).

The NYCHRL permits the imposition of civil fines of up to $250,000 for an "unlawful discriminatory practice [that] was the result of the respondent's willful, wanton[,] or malicious act," and up to $125,000 where there is no evidence of willful, wanton, or malicious behavior. *See* N.Y.C. Admin. Code § 8-126(a). Similarly, Euros' liability for compensatory and punitive damages under Title VII is capped at $50,000 because Euros employed approximately thirty employees before it ceased doing business. (A. 389). 42 U.S.C. § 1981a(b)(3)(A).

The jury's $1 million punitive damage award is four times the maximum civil penalty permitted under the NYCHRL, and 20 times the damage cap

applicable to Euros under Title VII. Accordingly, and particularly in light of the maximum NYCHRL civil penalty of $250,0000, Ms. Pizarro's punitive damages award must be substantially reduced. *iStar*, 652 F.3d at 149.

### C. The Punishment Meted Out By The Jury Is Excessive In Light Of Appellants' Financial Condition.

Lastly, the $1 million punitive damage award against Appellants is grossly excessive in light of Appellants' financial condition. Punitive damages should not "result in the financial ruin of the defendant" or "constitute a disproportionately large percentage of a defendant's net worth." *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir. 1992). Here, Appellants have "'show[n] that [their] financial circumstances warrant a limitation" of the punitive awards. *Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) (internal quotation marks omitted).

During her testimony, Ms. Pizarro acknowledged that Euros is a defunct company which has been closed since November 23, 2019. (A. 392-393, 399-401). Quezada, Sr. was the owner or co-owner of Euros. (A. 252, 277, 307, 362). Moreover, Quezada, Sr. is now the debtor in a bankruptcy proceeding. (A. 332-3). Due to the financial insolvency of both Euros and Quezada, Sr., the punishment imposed by the $1 million punitive damage award is excessive and must be reduced. *See Patterson v. Balsamico*, 440 F.3d 104, 122 (2d Cir. 2006) (award that would "result in the financial ruin of the defendant or constitute a

disproportionately large percentage of the defendant's net worth" should be reduced) (internal quotation marks omitted); *Vasbinder*, 976 F.2d at 121 (reducing punitive award that "would consume approximately thirty percent of [the defendant's] net worth").

For the reasons discussed above, the Court should grant Appellants a new trial on Appellant's unconstitutionally large punitive damage award. Alternatively, the award should be remitted to an amount less than $250,000 to comport with the range of civil fines available to deter violations of the NYCHRL.

## III.   BECAUSE THE JURY'S COMPENSATORY AND PUNTIVE DAMAGE AWARDS WERE EXCESSIVE, THE DISTRICT COURT ERRED IN FAILING TO GRANT APPELLANTS A NEW TRIAL ON DAMAGES OR REMITTITUR.

In light of the excessive nature of the jury's compensatory and punitive damage awards, the District Court abused its discretion in denying Appellants' motion for a new trial or remittitur. The District Court should have granted Appellants' motion for a new trial on Ms. Pizarro's compensatory and punitive damage claims because the jury's verdict on these remedies was "against the weight of the evidence." *DLC*, 163 F.3d at 133.

The wide disparity between the jury's compensatory and punitive damage awards and the remedial awards issued in cases adjudicating similar fact patterns cited in Points I and II of the Arguments Section above suggest the jury's verdict

was motivated by passion, prejudice and surmise, rather than a reasoned assessment of the evidence Ms. Pizzaro presented at trial. *See Humphrey*, 822 F App'x at 37. As this Court observed, "the jury's role as the finder of fact does not entitle it to return a verdict based only on confusion, speculation or prejudice; its verdict must be reasonably based on evidence presented at trial." *Michelman v. Clark-Schwebel Fiber Glass Corp.,* 534 F.2d 1036, 1042 (2d Cir. 1976).

The District Court's failure to grant Appellants' post-trial motion for remittitur was equally, if not exceedingly, erroneous. As stated in Point I above, the District Court incorrectly declined to remit the jury's $1.725 million compensatory damage award even though the garden variety evidence of emotional distress adduced at trial consisted solely of Ms. Pizarro's uncorroborated testimony. The District Court reached this conclusion based on its (1) characterization of Plaintiff's emotional distress claims as "egregious," (2) assessment of Ms. Pizarro's credibility as "untouched" during cross-examination, and (3) opinion that Appellants' "reprehensible" conduct justified the award. (S.A. 6-7). This conclusion ignored prevailing Second Circuit authority requiring the District Court to determine whether the jury's compensatory and punitive damage awards were excessive by "review[ing] awards in other cases *involving similar injuries*, bearing in mind that any given judgment depends on a *unique set of facts*

*and circumstances*." *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 684 (2d Cir. 1993) (internal quotation omitted) (emphasis supplied).

As detailed extensively above, the District Court's failure to compare the jury's compensatory and punitive damage awards to awards issued in similar cases represented clear error and an abuse of discretion. As discussed in detail in Point V below, the District Court compounded this lapse and bootstrapped its conclusion by preventing Appellants from introducing evidence of the romantic relationship between Ms. Pizarro and her primary witness Jose Eladio Castro Rodriguez. Accordingly, this Court should remit the jury's excessive compensatory and punitive damage awards in the manner proposed in Points I and II of the Argument Section above.

## IV. **THE COURT COMMITTED PREJUDICIAL ERROR IN ITS JURY INSTRUCTIONS.**

During the District Court's charging of the jury, Judge Hellerstein failed to instruct the jury that Ms. Pizzaro could not recover compensatory damages for any emotional distress she experienced as a result of pursuing her legal claims against Appellants. This abuse of discretion contributed to the jury's inflated compensatory damage award, and necessitates the commencement of a new trial or a reduction of the award through remittitur to correct this prejudicial oversight.

Where a jury charge erroneously instructs the jury about a plaintiff's burden

of proof, the improper instruction is *per se* prejudicial and a new trial is warranted. *See Terra Firma Invs. (GP) 2 Ltd. v. Citigroup Inc.*, 716 F.3d 296, 298 (2d Cir. 2013) ("[I]t is accepted that an error in instructing a jury on the burden of proof is ordinarily harmful.") (citing *Bank of China v. NBM LLC*, 359 F.3d 171, 176 (2d Cir. 2004); *LNC Invs., Inc. v. First Fid. Bank, N.A.,* 173 F.3d 454, 462-63 (2d Cir. 1999)); *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) ("If an instruction improperly directs the jury on whether the plaintiff has satisfied her burden of proof, 'it is not harmless error because it goes directly to the plaintiff's claim, and a new trial is warranted.'") (quoting *LNC Invs.*, 173 F.3d at 463). The appropriate remedy for this error of law is the granting of a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.

The omission in the District Court's jury charges provided an erroneous legal standard to the jury regarding the scope of compensatory damages they were eligible to award Ms. Pizarro. In describing the factors the jury could consider in awarding Ms. Pizarro compensatory damages, the District Court initially stated:

> Compensatory damages can be physical damage – that is, if you suffer any injury to the person physically – or they can be emotional damages. Emotional damage is what happens to you: pain, suffering, lingering feelings, anything of that nature. The important point is that plaintiff must prove her damages, whether physical or emotional, or both; she must prove that by a preponderance of the evidence, and that's compensatory damages. You can compensate her for the physical or emotional injury that she has suffered and likely may

> continue to suffer.  Again, plaintiff's burden is by a preponderance of the evidence.

(A. 478).

In response to the jury's request for the District Court to "redefine compensatory damages," Judge Hellerstein elaborated:

> As to compensatory damages, I told you essentially this: That plaintiff is entitled to recover as compensatory damages the amount of money that will justly and fairly compensate her for any injuries proximately caused by the defendants' conduct, including mental anguish, emotional harm, fear, and humiliation proximately caused by the defendants' conduct. I could give you a more elaborate charge if that might be helpful. Plaintiff is also entitled to recover damages in an amount which will reasonably compensate her for the loss and injuries suffered as a result of defendants' unlawful conduct.
>
> You may award plaintiff reasonable compensation for the following:
>
> > 1. Pain, suffering and physical or emotional distress;
> > 2. Embarrassment and humiliation;
> > 3. Loss of enjoyment of life -- that is, plaintiff's loss of the ability to enjoy certain aspects of her life as a result of defendants' discriminatory actions; and
> > 4. which is not relevant, any out-of-pocket expenses or losses incurred as a result of the unlawful discrimination.
>
> You may consider the testimony and the demeanor of plaintiff in considering and determining a fair allowance for any damages for emotional distress, humiliation and loss of enjoyment of life. Emotional harm may manifest itself, for example, as sleeplessness, anxiety, stress, depression, marital strain, embarrassment, humiliation, loss of respect, emotional distress, loss of self-esteem or excessive fatigue. Physical manifestations of emotional harm may also occur, and there's been no evidence of that in this case, such as ulcers, headaches, skin rashes, gastrointestinal disorders or hair loss.

> In the determination of the amount of the award, it will often be impossible for you to arrive at a precise award. These damages are intangible, and it is difficult to arrive at a precise evaluation of actual damages for emotional harm from gender discrimination. No opinion of any witness is required as to the amount of such reasonable compensation. Nonetheless, it is necessary to arrive at a reasonable award that is supported by the evidence.

(A. 498-499).

Despite the length of these dual instructions, the District Court failed to explain the exclusion for litigation-related emotional distress recognized by law. This omission was consequential, as Ms. Pizarro testified that some of the anguish she experienced was caused by the stress of participating in the parties' litigation. (A. 332, 334). For example, Ms. Pizarro testified at length about the disturbances she felt as she prepared for and participated in the trial, claiming she had nightmares about seeing Quezada, Sr. in Court. (A. 332, 334).

It is beyond cavil that litigants are not entitled to recover litigation-related emotional distress as a matter of law. *See, e.g., Munafo v. Metro. Transp. Auth.*, 2003 U.S. Dist. LEXIS 13495, at *67 (E.D.N.Y. Jan. 22, 2003) (E.D.N.Y. Jan. 22, 2003) ("[A] litigant who commences a protracted and expensive lawsuit . . . may not then claim as an element of damages that he suffered emotional and financial anxiety because the lawsuit cost too much.").

The District Court's failure to instruct the jury on this legal limitation allowed the jury to compensate Ms. Pizarro for the emotional distress she

attributed to the stress she felt as a result of pursuing her legal claims against Appellants. This abuse of discretion represented reversible error, and should be corrected by granting Appellants a new trial on the issue of compensatory damages or remitting the jury's compensatory damage award in a manner consistent with the reductions proposed in Point I of the Argument Section above.

## V. **THE DISTRICT COURT SHOULD HAVE GRANTED APPELLANTS' MOTION FOR A NEW TRIAL BASED ON JUDGE HELLERSTEIN'S IMPROPER EXCLUSION OF EVIDENCE LIMITING APPELLANT'S ABILITY TO CROSS-EXAMINE MS. PIZARRO AND HER MAIN WITNESS.**

On two occasions during the trial, Appellants sought to introduce into evidence copies of emails Ms. Pizarro exchanged with the only witness to Quezada, Sr.'s alleged attempted rape -- Jose Eladio Castro Rodriguez. (A271-272, 340-351). These emails, which were sent and received through Ms. Pizarro's former email address and found on Ms. Pizarro's work computer, ostensibly demonstrated that Ms. Pizarro and Castro maintained a romantic relationship dating as far back as 2012. (A. 128, 346-350). In fact, the District Court described at least one of the emails as a "love note." (A. 346). The emails also contained discussions of work-related issues at Euros, which further confirmed their authenticity. (A. 346-350).

Despite these indicia of reliability, the District Court prevented Appellants from introducing the emails into evidence because Ms. Pizarro blithely claimed she

did not recognize them and her computer had been hacked. (A. 350). Based on these assertions, the District Court ruled Appellants failed to sufficiently authenticate the emails. (A. 350).

The District Court's exclusion of these emails from evidence sounded the death knell for Appellants' case because it neutered Appellants' ability to demonstrate (1) Castro's bias in favor of Ms. Pizarro, and (2) the contrived nature of both Castro's and Appellee's descriptions of Quezada, Sr.'s alleged attempted rape. Any doubts about the potency of these inculpating documents can be resolved by acknowledging other efforts the District Court undertook to bolster the evidence in favor of Ms. Pizarro and blunt the evidence in favor of Appellants.

A prime example of this uneven treatment occurred during Appellants' cross-examination of Castro. Defense counsel's questioning exposed in plain sight Castro's collusion with Ms. Pizarro, but the District Court obscured this evidence by rehabilitating Castro *sua sponte*. This obfuscation is evidenced by the following colloquy:

BY MR. RESTITUYO

Q. And isn't it a fact that you commenced an action against Mr. Quezada and Euros El Tina Lounge on January 29 of 2020?
A. Correct.
***
Q. And Ms. Pizarro is testifying for you in that case, correct?
A. Correct.
Q. And so you're testifying for her in this case, correct?

A.     Correct.

BY MR. MARINO:

Q.     Is your testimony in this case contingent upon her testimony in your case?

A.     Yes.

THE COURT:  Could you elaborate on what you mean by contingent?

THE WITNESS:  I understand what the word "contingent," what I really saw.

THE COURT:  Are you testifying in this case here because Ms. Pizarro testifies in your case?

THE WITNESS:  No.

(A. 273-274)

Mr. Castro is an attorney who presumably knows what the word contingent means.  (A. 270).  The District Court's rehabilitation of Castro contrasted starkly with the strictures Judge Hellerstein imposed on defense counsel during his cross-examination of Ms. Pizarro.  For example, on no less than *seven separate occasions* the District Court truncated defense counsel's inquiries and instructed defense counsel to save his elaborations for summation.  (A. 339, 356, 360, 381, 400, 405-406).

Against this backdrop, the District Court's refusal to accept the authentication of the emails at issue—based in part on Ms. Pizzaro's confirmation they contained her former email address -- represented an abuse of discretion.

Rule 901 of the Federal Rules of Evidence "does not definitively establish the nature or quantum of proof that is required" preliminarily to authenticate an item of evidence." *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014) (internal citations omitted). The Second Circuit repeatedly has held the "bar for authentication of evidence is not particularly high" and the "proof of authentication may be direct or circumstantial." *Id*.

Once the requirements of FRE 901(a) have been met, "the other party then remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the weight of the evidence--not to its admissibility." *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004).

In light of relatively flexible standards for authenticating evidence, the District Court's preclusion from evidence of the emails Appellants proffered cannot be deemed harmless error. By excluding these essential manifestations of Ms. Pizarro's longstanding romantic relationship with Castro, the District Court toppled the scaffolding of Appellants' defense like a tower of Jenga blocks.[8] In addition, this outcome underpinned the District Court's refusal to grant Appellants' motion for remittitur based on Judge Hellerstein's conclusion that he was not

---

[8]  In so doing, the District Court did not characterize the emails as being prejudicial to Ms. Pizarro or her claims.  (A. 350).

required to remit the large compensatory damage award Ms. Pizarro received based in part on her credibility being "untouched" on cross-examination. (S.A. 6).

In short, the District Court's refusal to admit the emails in question into evidence contributed to the jury's runaway verdicts for both compensatory and punitive damages. This abuse of discretion should be rectified by granting Appellees a new trial on damages or remitting the jury's compensatory and punitive damage awards in a manner consistent with the reductions proposed in Points I and II of the Argument Section above.

## VI. THE DISTRICT COURT'S ATTORNEYS' FEE AWARD WAS EXCESSIVE AND SHOULD BE REMANDED FOR FURTHER CONSIDERATION AND REDUCTION.

Finally, the District Court erred and abused its discretion in failing to reduce the attorneys' fees Judge Hellerstein awarded without adjusting the fees sought to exclude fees Ms. Pizarro's counsel expended in pursuing unsuccessful claims during the three-year course of this litigation. Although an appellate court is deferential to a district court's award of attorney's fees, such an award must be vacated for an abuse of discretion. *McDaniel*, 595 F.3d at 416.

This was a straightforward, single-plaintiff employment discrimination case that was tried for only four days. In this Circuit, single-plaintiff discrimination cases usually involve substantially smaller attorneys' fee applications and awards than the $247,108.13 Ms. Pizarro's attorneys sought and the District Court rubber

stamped without demonstrable analysis in this action. *See, e.g.*, *Abel v. Town Sports Int'l, LLC*, No. 09 Civ. 10388 (DF), 2012 U.S. Dist. LEXIS 183444, at *114 (S.D.N.Y. Dec. 18, 2012) (three-year, single-plaintiff discrimination case involving fee application of $263,363.25 for 672.75 hours, resulting in award of $130,870.50); *Moore v. Houlihan's Rest., Inc.*, No. 07-cv-03129 (ENV) (RER), 2011 U.S. Dist. LEXIS 64452, at *27-28 (E.D.N.Y. May 10, 2011) (four-year single-plaintiff discrimination case involving $40,000.00 fee request reduced to $26,198.00).

In this case, Ms. Pizarro's counsel sought fees for $241,997.50 based on 316.9 hours expended by Mr. Brustein at the hourly rate of $550 and 159.3 hours expended by Mr. Marino at the hourly rate of $425. (A. 572-577). These hours included time spent pursuing the 36 claims Ms. Pizarro asserted in her judicial Complaint, which were winnowed down to only four claims by the time the jury deliberated on the evidence adduced at trial. (A. 574-577).

The most important factor in ascertaining whether an application for attorneys' fees is reasonable is the degree of success obtained. *See Raja v. Burns*, 43 F.4th 80, 88 (2d Cir. 2022) (internal citations omitted). In a case like this where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims

were interrelated, nonfrivolous, and raised in good faith." *Hensley v. Eckerhart*, 461 U.S. 424, 436 n.11 (1983). As a result, when a plaintiff does not prevail on all of her claims, the district court must conduct a two-step inquiry to determine whether a reduction of the lodestar or presumptively reasonable fee (reasonable hours spent multiplied by reasonable hourly rates) is necessary. *Id*. at 434; *Ortiz v. New York*, 843 F. App'x 355, 358 (2d Cir. 2021).

First, the district court must determine "whether the plaintiff failed to succeed on any claims wholly unrelated to the claims on which the plaintiff succeeded." *Hensley*, 461 U.S. at 434; *Raja*, 43 F.4th at 88. If so, time spent on unrelated, unsuccessful claims should be subtracted from the fee award. *Hensley*, 461 U.S. 424, 434; *Raja*, 43 F.4th at 88. Second, the district court must consider whether the plaintiff was unsuccessful on claims which were interrelated with successful claims (e.g., that arose out of a common core of facts or involved related legal theories). *Hensley*, 461 U.S. at 434; *Raja*, 43 F.4th at 88. If this is the case, "the court must determine whether the plaintiff's level of success warrants a reduction in the fee award." *Hensley*, 461 U.S. at 436.

In the case below, the District Court failed to conduct this searching analysis. The vast majority of Ms. Pizarro's claims against Appellants were dismissed prior to trial. In addition, many of the claims Ms. Pizarro asserted in her original Complaint were wholly unrelated to her claims for sexual harassment and

gender discrimination. Accordingly, the District Court abused its discretion in failing to exclude from the attorneys' fee award any time Ms. Pizarro's counsel devoted to pursuing unsuccessful claims in this action. To redress this oversight, the attorneys' fee award should be remanded to the District Court for further analysis and reduction. *See Sooroojballie,* 816 F. App'x at 550-551 (issue of attorneys' fees remanded where the district court approved fee award without deviating from counsel's proposed award, and the Second Circuit was unable to assess the reasonableness of the fees in the absence of any explanation by the district court).

Lastly, many of the billing records Ms. Pizarro's counsel submitted for the District Court's review were replete with vague time which failed to identify the subject matter of the activity being performed. (A. 572-577). This lack of specificity renders such billing entries non-compensable as a matter of law. A time entry is vague, and therefore not compensable, if it lacks "'sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed.'" *Hnot v. Willis Group Holdings Ltd.*, No. 01 Civ. 6558(GEL), 2008 U.S. Dist. LEXIS 28312, at *16 (S.D.N.Y. Apr. 7, 2008) (citations omitted). Such ambiguity impedes this Court's ability to assess the reasonableness of the attorneys' fees awarded by the District Court and their relation to Ms. Pizarro's

unsuccessful claims, and represents an independent basis for reducing the fee award on remand.

## CONCLUSION

Based on the foregoing evidentiary issues and controlling legal authorities, Appellants respectfully request the Court to: (1) vacate the parties' February 27, 2024 judgment; (2) grant Appellants a new trial on Ms. Pizarro's claims for compensatory and punitive damages or, in the alternative, remit the jury's compensatory and punitive damage awards in a manner consistent with the reductions proposed in Points I and II of the Argument Section above; and (3) remand the attorneys' fees award to the District Court for further analysis and reduction to eliminate fees Ms. Pizarro's counsel expended in pursuing unsuccessful claims in this action.

Respectfully submitted,

JACKSON LEWIS P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601
914-872-8060

By:  _____
Scott T. Baken
Poonam Sethi
*ATTORNEYS FOR
DEFENDANTS-APPELLANTS*

Dated:    January 22, 2025
White Plains, New York

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Scott T. Baken, attorney of record for Defendants-Appellants, hereby certifies that the preceding brief complies with the type volume limitation set forth in Local Rule 32.1(a)(4)(A). This brief is in 14-point Times New Roman font. The total number of words in the brief, based upon the word count of the word-processing system used to prepare the brief is 12,246.

_____
Scott T. Baken

**SPECIAL APPENDIX**

## TABLE OF CONTENTS

| | Page |
|---|---|
| Judgment, dated October 25, 2023, Appealed From.. | SPA-1 |
| Order of the Honorable Alvin K. Hellerstein, dated February 27, 2024, Appealed From ...................... | SPA-2 |

SPA-1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MARIA JOSE PIZARRO,

                 Plaintiff,

-against-

EUROS EL TINA RESTAURANT LOUNGE and
BILLIARDS CORP. and SANTIAGO QUEZADA,

                 Defendants.
--------------------------------------------------------X

20 **CIVIL** 5783 (AKH)

**JUDGMENT**

     It is hereby **ORDERED, ADJUDGED AND DECREED:** That after a Jury

Trial before the Honorable Alvin K. Hellerstein, United States District Judge, Plaintiff Maria

Jose Pizarro has judgment in compensatory damages in the amount of $1,000,000.00 against

Defendant Santiago Quezada and $725,000 against Euros El Tina Restaurant Lounge and

Billiards Corp. Plaintiff has judgment in punitive damages in the amount of $625,000.00 against

Defendant Santiago Quezada and $375,000.00 against Euros El Tina Restaurant Lounge and

Billiards Corp.

**DATED:**  New York, New York
          October 25, 2023

                                  **RUBY J. KRAJICK**
                                  Clerk of Court

**So Ordered:**

                        BY:

     U.S.D.J.  2-22-24

                                 Deputy Clerk

SPA-2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

MARIA JOSE PIZARRO,

                         Plaintiff,

    -against-

EUROS EL TINA RESTAURANT LOUNGE
AND BILLIARDS CORP. and SANTIAGO
QUEZADA,

                       Defendants.

-------------------------------------------------------------- x

**ORDER DENYING
DEFENDANTS' POST TRIAL
MOTIONS, AND GRANTING
PLAINTIFF'S FEES MOTION**

20 Civ. 5783 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff Maria Pizarro sued her employer, Defendant Euros El Tina Restaurant

Lounge and Billiards Corp., and her manager Defendant Santiago Quezada, under Title VII of

the Civil Rights Act of 1964 and New York state and city law for Quezada's repeated sexual

harassments, creating a hostile work environment.  After a four-day trial in October 2023,

Plaintiff won a verdict against Defendants of $1,725,000 in compensatory damages ($1,000,000

against Quezada and an additional $725,000 against Euros El Tina), and $1,000,000 in punitive

damages ($625,000 against Quezada and $375,000 against Euros El Tina).  Judgment against

Defendants in these amounts was entered on February 23, 2024.  *See* ECF No. 194.  I assume

familiarity with the case background and trial transcript.

        Defendants move for judgment dismissing the case as a matter of law under Fed.

R. Civ. P. 50(b), or for a new trial under Fed. R. Civ. P. 59(a).  Plaintiff moves for attorneys'

fees and costs.  For the reasons that follow, Defendants' motion is denied, and Plaintiff's motions

are granted.

1

SPA-3

## I.  Defendants' Motion for Judgment as a Matter of Law or New Trial

### A.  Sufficiency of the Evidence

Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's New York City Human Rights Law (NYCHRL) claim because Plaintiff failed to offer proof of how a male comparator was treated in support of her claim that she was treated "less well" because of her gender.

A court may grant judgment as a matter of law against a party if it finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(b). The motion should be granted only if "viewed in the light most favorable to the nonmoving party, 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.'" *Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir. 1993) (citation omitted)

The evidence of sexual harassments and hostile work environment were overwhelming.  Plaintiff's testimony, Jose Eladio Castro's testimony, and Cristian Dilone's testimony amply support the jury's verdict.  No employee is required to experience such harassments, neither male nor female.  There is no requirement of a male comparator to support a finding of gender discrimination, or "less well" treatment, under NYCHRL.  Defendants cite to no statute or case imposing such a requirement, nor did they request that the jury be so instructed.  Defendants do not contest the verdict under the more difficult standards of Title VII or New York state law.  *See Mihalik v. Credit Agricole Cheuvreux North Am., Inc.*, 715 F.3d 102, 109 (2d Cir 2013) (explaining that NYCHRL standard is lower than federal and state law standards for hostile work environment claims); *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 261 (S.D.N.Y. 2014) The issue was properly decided by the jury.

### B. Jury Charge Challenges

Defendants assert that they are entitled to a new trial because of two issues related to the jury charge: 1) the Defendant company's affirmative defense, and 2) the absence of a specific mention of the statute of limitations in the verdict form.

Inadequate jury instructions may constitute grounds for a new trial, provided the errors are "prejudicial in light of the charge as a whole." *Lore v. City of Syracuse*, 670 F.3d 127, 156 (2d Cir. 2012). An erroneous jury instruction "misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Id.* An error in a jury instruction is not prejudicial "when [the court is] persuaded it did not influence the jury's verdict." *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 56 (2d Cir. 2012). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Lore*, 670 F.3d at 156. A new trial is not warranted if the instructions "read as a whole, presented the issues to the jury in a fair and evenhanded manner." *Id.*

### i.    Affirmative Defense Charge

Defendant Euros El Tina sought, and I included in my jury charge, an affirmative defense that employers can assert against Title VII liability. I charged that an employer may avoid liability if both of two elements are met: "First, the employer must have exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and Second, that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm." Trial Tr. at 243:15-20. Defendant argues that I should have added "or to avoid harm otherwise." *See Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

My charge had no impact on the trial's outcome. Quezada was plaintiff's boss and the principal of Defendant Euros El Tina. Plaintiff had no others to whom she could complain. And the evidence was clear that she was in no position to "avoid harm otherwise,"

3

other than to quit her job.  Defendants bear the burden of proof on this issue, and point to no

evidence that would tend to support either element of their affirmative defense.   Again, the jury

properly delivered a verdict against both defendants.  The verdict was not "seriously erroneous

or a miscarriage of justice." *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634–35 (2d Cir.

2002).

ii.     **Statute of Limitations Charge**

Defendants seek a new trial on the grounds that the verdict sheet should have

added a specific question about the statute of limitations.  However, the jury was instructed,

without objection, on the statute of limitations.  My charge to the jury stated:

> Because of the statute of limitations, you may consider only acts that took place
> after May 17, 2019, with one important exception.  If the conduct before and after
> May 17, 2019, was sufficiently similar in nature, frequency, and severity that it
> can be considered sufficiently related as to be part of a hostile work environment,
> you can conclude that.  However, if the conduct spans across people, departments,
> and large time intervals without having harassing conduct, then you could find the
> acts to be insufficiently related.  Trial Tr. at 242:20–243:7.

Defense counsel did not object to the verdict sheet or to the charge, and did not

repeat the request they made at a pre-trial conference for a specific verdict on the statute of

limitations.  See *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).  Defendants'

effort to impeach the verdict is without merit.

C.  **Remittitur**

Defendants request remittitur on the grounds that the compensatory damages

amounts, divided into $1,000,000 against Defendant Quezada and $725,000 against Defendant

Euros El Tina, were grossly excessive.  Their papers do not expressly challenge punitive

damages.

4

**SPA-6**

### i.   Compensatory Damages

"Juries have wide latitude in setting" compensatory damages. *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 162 (2d Cir. 2014).  Under New York law, the standard more favorable to Defendants, compensatory damages should be reduced where the amount "deviates materially" from similar cases. *Lore*, 670 F.3d at 177.

Cases in this Circuit involving "egregious" claims of sexual harassment, including those that take place in the workplace, and over several years, have led to similar amounts in compensatory damages when considering adjustments for inflation. *See Turley*, 744 F.3d at 166 ($1.32 million for emotional damages from sexual harassment in workplace); *Olsen v. Cnty. of Nassau*, 615 F. Supp. 2d 35, 47 (E.D.N.Y. 2009) ($1 million for Title VII claims without sexual assault); *Osorio v. Source Enterprises, Inc.*, 5cv10029, 2007 WL 683985, at *5 (S.D.N.Y. 2007) ($4 million for retaliation claim after witness testified regarding impact); *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 673 (2d Cir. 2012) ($1 million in race discrimination suit without sexual assault).  Though the proofs offered at trial in support of compensatory damages vary across these cases, "a court is not required to remit a large non-economic damage award, even where evidence of emotional damage consists solely of plaintiff's testimony." *Mendez v. Starwood Hotels & Resorts & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 600–01 (S.D.N.Y. 2010).

Plaintiff testified that Quezada groped and molested her on numerous occasions, disregarding her objections and protestations, that she feared rape and sexual assaults, and was driven to suicidal ideations.  She testified that she tried to take her own life after Defendant Quezada attempted to rape her.  Plaintiff's credibility was untouched by strenuous cross-examination.

**SPA-7**

Plaintiff's complaint was of intense and lasting emotional injury.  Physical injuries heal; emotional injuries can mar a life without surcease.  I cannot say that plaintiff's recovery exceeded the bounds of compensation.

### ii.    Punitive Damages

The degree of reprehensibility of the conduct is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award." *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996).  Relevant considerations include, *inter alia*, whether "the harm caused was physical as opposed to economic," "the conduct involved repeated actions or was an isolated incident," and the "harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

Plaintiff's testimony, corroborated by other witnesses, illuminated a decade-long and worsening pattern of physical and verbal harassment by Quezada, of groping and pinching, of exposures of private parts and a masturbation in front of her, and an attempted rape.  No employee should be subjected to such conduct.  Defendants' reprehensible conduct fully justifies the jury's award of punitive damages.  One million dollars may be high, but Quezada's conduct warrants the award.

## II. Plaintiff's Motions for Fees and Costs

Plaintiff, as the prevailing party, is entitled to recover a reasonable attorney's fee and expenses incurred by her lawyers.  42 U.S.C. § 2000e-5(k); NYCHRL § 8-502(g).  Plaintiff's counsel's rates of $550 per hour for Evan Brustein and $425 for Mark Marino and, and the amount of time they each spent litigating this case over three years, are reasonable. *See Bailey v. Pataki*, No. 08-CV-8563 (JSR), 2016 WL 3545941, at *6 (S.D.N.Y. June 16, 2016) (rate of $550 reasonable for lawyers with over a decade of experience); *McDonald v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 98 n.6 (2d Cir. 2006) ("[D]istrict courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction

6

SPA-8

in the reasonable hourly rate."). Current rates of lawyers substantially exceed those rates. Defendants present no meaningful objections to Plaintiff's counsels' rates and the time they charged.

Defendants include a request for attorneys' fees for their defense of "frivolous" claims in their opposition brief. They did not file a motion, and even if they had, it would have been futile. *See Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 249 (E.D.N.Y. 2020).

Plaintiff's motion for attorneys' fees in the amount of $241,997.50, plus expenses in the amount of $5,110.63, is granted. Expenses include filing fees and transcripts, so costs will not be further taxed.

## CONCLUSION

Defendants' motions for judgment as a matter of law and a new trial are denied. Plaintiff's motion for attorneys' fees is granted in the amount of $241,997.50, and expenses are awarded in the amount of $5,110.63, for a total of $247,108.13. No costs shall be taxed since they were included in Plaintiff's expenses filing. *See* ECF No. 185, Ex. 1. The Clerk shall terminate all open motions and mark the case closed.

SO ORDERED.

Dated:      February 27, 2024
            New York, New York

ALVIN K. HELLERSTEIN
United States District Judge