# 24-2422-CV

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



MARIA JOSE PIZARRO,

*Plaintiff-Counter-Defendant-Third-Party-Defendant-Cross-Defendant-Counter-Defendant-Appellee,*

*v.*

SANTIAGO QUEZADA, EUROS EL TINA RESTAURANT
LOUNGE AND BILLIARDS CORP.,

*Defendant-Counter-Claimant-Third-Party-Plaintiff-Cross-Claimant-Counter-Claimant-Appellants,*

*(Caption Continued on the Reverse)*

―――――――――

*On Appeal from the United States District Court
for the Southern District of New York*

## BRIEF FOR PLAINTIFF-COUNTER-DEFENDANT-THIRD-PARTY-DEFENDANT-CROSS-DEFENDANT-COUNTER-DEFENDANT-APPELLEE

Brian L. Bromberg
BROMBERG LAW OFFICE, P.C.
352 Rutland Road, #1
Brooklyn, New York 11225
212-248-7906

Evan Brustein
BRUSTEIN LAW PLLC
299 Broadway, Suite 800
New York, New York 10007
212-233-3900

*Attorneys for Plaintiff-Counter-Defendant-Third-Party-Defendant-Cross-Defendant-Counter-Defendant-Appellee*


(212) 719-0990
appeals@phpny.com

SANTIAGO QUEZADA, JR.,

*Defendant-Counter-Claimant-Third-Party-Plaintiff-*
*Cross-Claimant-Counter-Claimant-Defendant,*

EMITON FERNANDEZ, NARCISCO GOMEZ, JOSE R. CASTRO,
TOMAS ANDRES PIZARRO ZEPEDA, ELADIO CASTRO PRODUCTIONS, INC.,
ZOILIMAR MEJIA,

*Defendant-Third-Party-Defendant-Cross-*
*Defendant-Counter-Defendants.*

# Table of Contents

Statement of the Issues ........................................................................... 1

Counter-Statement of the Case ............................................................... 3

Standards of Review ............................................................................. 16

Argument ............................................................................................. 18

    I.   The jury's compensatory award is not excessive and should not be remitted, nor should this case be remanded for a new trial ............... 18

       A.   Standard of review .................................................................. 18

       B.   Given the extent of the sexual assaults that she endured and the egregious level of Pizarro's emotional distress, the compensatory-damages award does not shock the conscience, nor does the amount deviate materially from awards in similar cases ............................ 20

    II.  The jury's punitive-damage award was reasonable ...................... 46

       A.   Appellants did not argue that punitive damages are excessive and are thus precluded from doing so .............................................. 46

       B.   Appellants' unsupported claim that they are insolvent, which they have raised for the first time on appeal, is made in bad faith and is the subject of an investigation by the trustee in bankruptcy court ............................................................................................... 48

    III.   Appellants are not entitled to a new trial ................................. 50

    IV.   Appellants failed to preserve their objections to the jury instructions and their belated claims on appeal do not constitute plain error 53

    V.  Because Pizarro's attorneys were extraordinarily successful and because the approved fees represented less than 10% of the recovery, the district court's award of fees and costs was reasonable and should not be disturbed ................................................................................. 57

    VI.   The district court did not abuse its discretion in setting the hourly rates it awarded Pizarro's attorneys ....................................... 65

Conclusion ........................................................................................... 71

## Table of Authorities

Page(s)

### Cases

*Breest v. Haggis,*
Index No. 161137/2017, 2023 WL 374404 (N.Y. Sup. Ct.,
N.Y. Cty. Jan. 24, 2023)................................................................24

*Broecker v. New York City Dep't of Educ.,*
2023 WL 7485465 (2d Cir. Nov. 13, 2023).....................................46

*Broome* v. *Biondi,*
17 F. Supp. 2d 211 (E.D.N.Y. 1997) .....................................20, 21, 42

*C.R.R. v. Bresnniel Jansen,*
No. 14-031736 CA 11, 18 ........................................................29, 30

*Caravantes v. 53rd Street Partners, LLC,*
No. 09-CV-7821, 2012 WL 3631276 (S.D.N.Y. Aug. 23,
2012)...........................................................................................37

*Carroll v. Trump,*
124 F.4th 140 (2d Cir. 2024) .........................................................23, 52

*Carroll v. Trump,*
683 F.Supp.3d 302 (S.D.N.Y. 2023), *aff'd* 124 F.4th 140 (2d
Cir. 2024)...............................................................................22, 23, 40

*Coker v. Georgia,*
433 U.S. 584 (1977)......................................................................21

*Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.,*
246 F.3d 142 (2d Cir.2001) ...........................................................18, 57

*Deborah S. v. Diorio,*
153 Misc. 2d 708 (N.Y. Civ. Ct. N.Y. Cnty. 1992), *aff'd as*
*modified,* 160 Misc. 2d 210 (1st Dep't 1994)...................................21

*DiSorbo* v. *Hoy,*
343 F.3d 172 (2d Cir. 2003) ......................................................19, 25, 39

*Doe v. Delarosa*,
  No. 51-2012-CA-006209, 2014 WL 7927468 (Fla. Cir. Ct.
  2014) .................................................................................... 30

*Doe v. HRH Prince Abdulaziz Bin Fahd Alsaud, Saudi Oger
  Ltd.*,
  No. 13-CV-571, 2017 WL 4541426 (S.D.N.Y. Oct. 10, 2017) . 26, 27, 47

*Doe v. Warren & Baram Management LLC*,
  No. 20-CV-9522, 2024 WL 2941222 (S.D.N.Y. May 3,
  2024) .................................................................................... 36

*Drice v. My Merchant Services, LLC*,
  No. 2015-CV-0395, 2016 WL 1266866 (E.D.N.Y. Mar. 4,
  2016) .................................................................................... 38

*Egan v. Gordon*,
  No. 904231-20 (N.Y. Sup. Ct. Albany Cty. Nov. 10, 2022) ................. 24

*Gibbs v. United States*,
  599 F.2d 36 (2d Cir. 1979) ...................................................... 20

*Graham v. City of New York*,
  128 F.Supp.3d 681 (E.D.N.Y. 2015) ........................................... 50

*Greenbaum v. Handelsbanken*,
  67 F.Supp.2d 228 (S.D.N.Y.1999) (Sotomayor, J.) ........................... 46

*Hill v. Airborne Freight Corp.*,
  212 F.Supp.2d 59 (E.D.N.Y. 2002) ............................................. 46

*Hughes v. Patrolmen's Benev. Ass'n of City of New York,
  Inc.*,
  850 F.2d 876 (2d Cir. 1988) ..................................................... 18

*Jane Doe, Pro Ami v. Crime Prevention Agency*,
  5 JVR No. 1806080054, 2018 WL 2949238 (Ga. State Ct.
  2018) .................................................................................... 31

*Jimena v. UBS AG Bank, Inc.*,
No. 07-CV-367, 2011 WL 2551413 (E.D.Cal. June 27,
2011) ...................................................................................... 52, 53

*K.C. v. Going Places, LLC*,
No. 2017-L-011405, 2022 WL 1617851 (Ill. Cir. Ct. 2016) ............... 30

*Keeling v. Hars*,
809 F.3d 43 (2d Cir. 2015) ..................................................... 54

*Lore v. City of Syracuse*,
670 F.3d 127 (2d Cir. 2012) ..................................................... 16, 17

*M.S. v. PCM Barker Cypress*,
No. 20120-39725, 2012 WL 1243849 (Tex. Dist. 2012) ..................... 30

*McIntyre v Manhattan Ford, Lincoln Mercury, Inc.*,
256 A.D.2d at 271, 682 N.Y.S.2d at 169 ............................................ 47

*McQuillin v. Perez*,
No. 2001-0194-CA-17, 2005 WL 2398200 (Fla. Cir. Ct.
2005) ...................................................................................... 29

*Miller v. Weisel*,
15 A.D.3d 458 (2d Dep't 2005) ............................................... 22

*MJAC Consulting, Inc. v. Barrett*,
2006 WL 2051129 (S.D.N.Y. July 24, 2006) ............................... 50, 51

*Mullady v. Brooklyn Heights R.R. Co.*,
65 A.D. 549 (2d Dep't 1901) ..................................................... 22

*Munafo v. Metro. Transp. Auth.*,
98-CV-4572, 00-CV-0134, 2003 WL 21799913 (E.D.N.Y.
Jan. 22, 2003) ...................................................................... 55, 56

*New York City Transit Auth. v. SDHR*,
78 N.Y.2d 207 (1991) ............................................................. 44, 45

*Noonan v. Becker*,
No. 14-CV-4084 (LTS) (JLC), 2018 WL 1738746 (S.D.N.Y.
Apr. 10, 2018)............................................................... 27, 28, 47

*Olsen v. Cnty. of Nassau*,
615 F. Supp. 2d 35 (E.D.N.Y. 2009) ............................................ 33, 34

*Ortiz v. 975 LLC*,
74 A.D.3d 485 (1st Dep't 2010) ........................................................ 19

*Ortiz v. New York City Hous. Auth.*,
22 F. Supp. 2d 15 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 234 (2d
Cir. 1999)................................................................................ 25, 26

*Osorio v. Source Enterprises, Inc.*,
No. 05 Civ. 10029, 2007 WL 683985 (S.D.N.Y. Mar. 2,
2007)...................................................................................... *passim*

*Payne v. Jones*,
711 F.3d 85 (2d Cir. 2012) ........................................................ 17, 18

*Phillips v. Bowen*,
278 F.3d 103 (2d Cir. 2002) ............................................................ 16

*Pizarro v. Euros El Tina Restaurant Lounge and Billiards
Corp. ("Pizarro I")*,
No. 20-CV-5783, 2024 WL 837572 (S.D.N.Y. Feb. 27,
2024)............................................................................ 9, 13, 33, 42

*Pizarro v. Euros El Tina Restaurant Lounge and Billiards
Corp. ("Pizarro II")*,
No. 20-CV-5783, 2024 WL 4249835 (S.D.N.Y. Aug. 29,
2024)....................................................................................... 9, 12

*Plaintiff v. Luster*,
JVR No. 412802, 2003 WL 23519466 (Cal. Ct. Oct. 1,
2003)......................................................................................... 31

*Rasanen v. Doe*,
723 F.3d 325 (2d Cir. 2013) ................................................ 16, 53, 54

v

*Restivo v. Hessemann,*
846 F.3d 547 (2d Cir. 2017) ............................................................ 40

*Riascos-Hurtado v. Raines,*
422 F. Supp. 3d 595 (E.D.N.Y. 2019) ............................................ 26

*Santos-Vidal v. Hongye L.L.C.,*
No. KC067686, 2017 WL 5186772 (Cal. Super. Ct. Los
Angeles Cnty. 2017) ...................................................................... 30

*Scala v. Moore McCormack Lines, Inc.,*
985 F.2d 680 (2d Cir. 1993) ............................................................ 18

*Senko v. Fonda,*
53 A.D.2d 638 (2d Dep't 1976) ...................................................... 22

*Shannon v. Fireman's Fund Ins. Co.,*
156 F.Supp.2d 279 (S.D.N.Y.2001) .............................................. 58

*Sooroojballie v. Port Auth. of N.Y. & N.J.,*
816 F. App'x 536 (2d Cir. 2020) .................................................... 36

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
538 U.S. 408 (2003) ........................................................................ 47

*Thomas v. Roach,*
165 F.3d 137 (2d Cir.1999) ............................................................ 46

*Matter of Town of Hempstead v. State Div. of Human Rights,*
233 A.D.2d 451 (2d Dep't 1996), *appeal dismissed* 89
N.Y.2d 1029 (1997), *lv. denied* 90 N.Y.2d 807 (1997) .............. 25

*Turley v. ISG Lackawanna,*
744 F.3d 140 (2d Cir. 2014) ...................................................... 33, 34

*Turley v. ISG Lackawanna, Inc.,*
774 F.3d 140 (2d Cir. 2014) ............................................................ 47

*United States v. Greer,*
285 F.3d 158 (2d Cir.2002) ............................................................ 46

*United States v. Yousef,*
  327 F.3d 56 (2d Cir. 2003) ..................................................... 46

*Vaval v. NYRAC, Inc.,*
  31 A.D.3d 438 (2d Dep't 2006) ............................................. 19

*Villalta v. JS Barkats, P.L.L.C.,*
  16-CV-2772 (RAR)(WL) 2021 WL 2458023 (S.D.N.Y. June
  16, 2021) ..................................................................... 37, 38

*Walia v. Vivek Purmasir & Assocs., Inc.,*
  160 F.Supp.2d 380 (E.D.N.Y. 2000) ..................................... 37

*Walz v. Town of Smithtown,*
  46 F.3d 162 (2d Cir. 1995) ..................................................... 19

*Wheatley* v. *Ford,*
  679 F.2d 1037 (2d Cir. 1982) ................................................. 19

*Witherspoon v. State of Ill.,*
  391 U.S. 510 (1968)................................................................ 32

*Zeno v. Pine Plains Cent. School Dist.,*
  702 F.3d 655 (2d Cir. 2012) ....................................... *passim*

## Statutes

42 U.S.C. § 2000e–5(k) ............................................................. 57

Civil Rights Act of 1964 Title VII ................................. *passim*

New York City Human Rights Law............................... *passim*

New York State Human Rights Law ............................. *passim*

New York Labor Law ................................................................. 3

## Other Authorities

*Change*, MS. MAGAZINE (Oct. 29, 2022),
  https://msmagazine.com/2020/10/29/its-been-three-years-
  since-metoo-whats-changed-whatneeds-to-change/........................ 32

Fed. R. Civ. P. 50 ...................................................................... 5

Fed. R. Civ. P. 59 ........................................................... 6, 50, 51

Fed.R.Evid. 802 ...................................................................... 52

Fed.R.Evid. 803 ...................................................................... 52

Fed.R.Evid. 901 ...................................................................... 52

Fed.R.Evid. 901(a) .................................................................. 52

*Jurors told her: 'You're worth something,'* THE
 WASHINGTON POST, May 24, 2018 .............................. 31

N.Y.C. Admin. Code § 8-502(f) ............................................... 57

N.Y.C.P.L.R. §5501(c) ......................................................... 17, 19

## Statement of the Issues

1.      Where the corroborated evidence shows a pattern of egregious sexual harassment and sexual assault of an employee by a business-owner over an almost 10-year period, consisting of groping and molestation on numerous occasions and culminating in attempted rape, leading the employee to suicidal ideation and a suicide-attempt, and causing intense and lasting emotional injury, whether a compensatory damages award of $1.725 million shocks the conscience or deviates materially from similar awards.

2.      Where other sexual-assault cases have had sustained verdicts of over $10 million in compensatory damages, in the instant case where an employee's testimony, corroborated by other witnesses, illuminated an almost decade-long and worsening pattern of physical and verbal harassment by the business-owner, consisting of groping and pinching, of exposures of private parts, masturbation in front of the employee, and an attempted rape, whether the conduct demonstrates a degree of reprehensibility sufficient to warrant an award of $1 million in punitive damages—an award which neither the business-owner nor the employer raised, much less objected to, in the remittur motion.

1

3. Where an employee's testimony, corroborated by other witnesses, illuminated an almost decade-long and worsening pattern of physical and verbal harassment by the business-owner, consisting of groping and pinching, of exposures of private parts, masturbation in front of the employee, and an attempted rape, and where that employee testified in passing, without objection, that preparing to appear and appearing in court with her attacker caused her to relive her feelings, whether there is even a basis to conclude that the emotional distress damages were related to litigation and not the decade-plus period of sexual harassment and sexual assault and its after effects such that the district court should have given an instruction to the jury that it could not award the employee for litigation-related emotional distress, even though Appellants neither asked for such an instruction, nor objected to the jury charge.

4. Whether excluding emails, the authenticity of which was denied by the employee and her witness, was an abuse of discretion by the trial judge, where there was never a foundation to authenticate the emails.

5.     Whether three years of intensive federal-court litigation, culminating in a multi-million-dollar jury verdict, warranted any reduction of the attorney-fee award for lack of success, where Defendants' own lawyer admitted that he had spent over 370 hours unsuccessfully defending the case.

## Counter-Statement of the Case

Plaintiff-Appellee Maria Jose Pizarro commenced this case by filing a complaint with the United Stated District Court for the SDNY on July 24, 2020, in connection with almost 10 years of physical, sexual, and emotional abuse that culminated in attempted rape.[1] In her complaint, Pizarro alleged four different types of claims for relief against each of the defendants: (1) discrimination/hostile work environment; (2) retaliation for filing frivolous lawsuits against her; (3) aiding and abetting; and (4) failing to provide a wage statement and sick leave under New York's Labor Law. On September 30, 2020, Appellants filed their Answer with various Counterclaims and Crossclaims.[2] Both parties later amended their initial pleadings.[3]

---

[1] A.37.
[2] A.53-67.
[3] A.122-193.

While discovery was ongoing, the Honorable Alvin K. Hellerstein bifurcated the adjudication of the claims asserted on behalf of Pizarro from the adjudication of the Counterclaims asserted on behalf of Appellants. After the parties completed discovery for Appellee's claims, they filed a Pretrial Order with the District Court on October 17, 2023.[4] Judge Hellerstein held a final pretrial conference on October 11, 2023.[5]

A jury trial was held from October 17-23, 2023.[6] The jury was asked to render a verdict on Appellee's following claims: (1) hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL") against Euros, (2) gender discrimination in the form of sexual harassment in violation of the New York City Human Rights Law ("NYCHRL") against Euros and Quezada, Sr., and (3) aiding and abetting gender discrimination in violation of the NYCHRL against Santiago Quezada Jr.[7]

---

[4] A.224.
[5] A.205-223.
[6] A.232-507.
[7] A.610.

4

At trial, the District Court afforded the parties an opportunity to adduce evidence regarding liability for Appellee's substantive and remedial claims, including Appellee's claims for compensatory and punitive damages. During the trial, Pizarro testified and called two additional witnesses to testify in support of her allegations of physical and emotional abuse and sexual assault by Quezada. These witnesses also testified as to Pizarro's distress over the incidents they witnessed. Appellants did not testify, nor did they put on any witnesses.

The jury found against Appellants on the claims for sexual harassment in violation of Title VII and the NYSHRL and on the claims for gender discrimination in the form of sexual harassment in violation of the NYCHRL. The jury awarded Pizarro $1.725 million in compensatory damages ($725,000 against Euros and $1 million against Quezada, Sr.) and $1 million in punitive damages ($375,000 against Euros and $625,000 against Quezada, Sr.).[8]

After the close of evidence and the issuance of the verdict, Appellants moved for judgment as a matter of law under Fed. R. Civ. P.

---

[8] *Id.*

50 or for a new trial under Fed. R. Civ. P. 59.[9] Pizarro moved for an award of attorney fees.[10] On or about February 27, 2024, Judge Hellerstein issued an Order denying Appellants' post-trial motions for judgment as a matter of law or a new trial.[11] In addition, Judge Hellerstein granted Pizarro's motion for attorneys' fees and costs in the amount of $247,108.13.[12] On February 22, 2024, Judge Hellerstein endorsed a judgment upholding the jury's verdict.[13]

On August 29, 2024, Judge Hellerstein dismissed Appellants' counterclaims and crossclaims after the parties and crossclaim defendants engaged in summary judgment motion practice. In so doing, Judge Hellerstein held that Appellants' counterclaims and crossclaims were frivolous and imposed sanctions. On August 30, 2024, the Clerk of the Court entered Judgment on Judge Hellerstein's August 29, 2024 Order.

---

[9] A.510.

[10] A.559.

[11] Special Appendix (SPA) 2.

[12] SPA.7-8.

[13] SPA.1.

Appellants are appealing from the district court's: (1) February 27, 2024 Order, (2) February 22, 2024 endorsed judgment, and (3) evidentiary rulings made during the trial.[14]

On May 14, 2024, Appellant Quezada filed under Chapter 11 (Subchapter V) in the SDNY Bankruptcy Court.[15] The trustee has retained counsel to investigate claims that Quezada has not been transparent about his financial affairs.[16] Quezada's bankruptcy counsel has moved to withdraw[17] and the U.S. Trustee has moved to dismiss the case.[18] Appellant Euros has not filed for bankruptcy.

## Statement of Facts

For almost 10 years, Santiago Quezada, Sr., owner of Euros El Tina Restaurant Lounge and Billiards Corp., sexually harassed and sexually assaulted his employee, Maria Pizarro, multiple times per month. Pizarro confronted him verbally and/or physically each time. On October 19, 2019, the sexual assault culminated in an attempted rape.

---

[14] A.616.

[15] *In re Santiago Quezada, Sr.,* SDNY Bktcy Case No. 24-22431.

[16] *See* Application to Employ, *Id.* at Doc.No. 50.

[17] *See* Motion and Amended Motion to Withdraw as Attorney, *Id.* at Doc.Nos. 58 and 69.

[18] *See* U.S. Trustee's Motion to Dismiss, *Id.* at Doc.No. 75.

On October 11, 2023, the parties met for a lengthy final pretrial conference.[19] From October 17-23, 2023, a jury trial was held.[20] Pizarro put on her case. She took the stand herself,[21] as did corroborating witnesses,[22] who testified not only to acts of sexual harassment and sexual assault, but to their effect on Pizarro. Appellants chose not to testify or call any witnesses.[23]

On October 23, 2023, after hearing the evidence, the jury returned a verdict for Pizarro of $2.725 million—$1.725 million in compensatory damages and $1 million in punitive damages—on her claims for sexual harassment/hostile work environment under Title VII of the Civil Rights Act ("Title II"), the New York State Human Rights Law (the "NYSHRL"), and the New York City Human Rights Law (the "NYCHRL").[24]

---

[19] A.205-223.

[20] A.232-507 (Trial Transcript (TT)).

[21] A.276-302; 317-407 (Pizarro).

[22] A.251-275 (Castro); A.306-316 (Dilone).

[23] A.407-408.

[24] A.610-612 (Verdict Sheet).

Appellants moved for judgment as a matter of law and for a new trial.[25] Remittitur was the crux of Appellants' post-trial motion.[26] Citing the "egregious" nature of the undisputed sexual harassment that Pizarro endured, Judge Hellerstein refused to remit the jury's verdict regarding compensatory or punitive damages.[27] Judge Hellerstein also granted Pizarro's petition for attorney fees and costs in the amount of $247,108.13, and denied Defendants' cross motion for partial reimbursement of their $170,567.45 in attorneys' fees and costs.[28] In a separate post-trial order, Judge Hellerstein granted summary judgment dismissing Appellants' counterclaims for theft—which had been bifurcated—and sanctioned Appellants for pursuing the counterclaims without evidence.[29]

---

[25] A.508-528.

[26] *Id.*

[27] SPA.6-7; *Pizarro v. Euros El Tina Restaurant Lounge and Billiards Corp. ("Pizarro I")*, No. 20-CV-5783, 2024 WL 837572, at *3 (S.D.N.Y. Feb. 27, 2024).

[28] SPA.7-8; *Pizarro I,* 2024 WL 837572, at *3-4.

[29] Supplemental Appendix (SA) 30-32; *Pizarro v. Euros El Tina Restaurant Lounge and Billiards Corp. ("Pizarro II")*, No. 20-CV-5783, 2024 WL 4249835 (S.D.N.Y. Aug. 29, 2024).

The sexual harassment began almost 10 years before Pizarro filed suit, at a political event at a location called "809."[30] Quezada lifted Pizarro's dress in front of everyone in attendance and exposed her underwear and buttocks.[31] After the incident, Pizarro ran to the bathroom crying and felt very ashamed.[32] She called Quezada and told him that she would never accompany him to another event ever again and never wore a dress in front of him again.[33]

From mid-2011 until October 19, 2019, Quezada would grab Pizarro's breasts twice a month and squeeze her behind at least once per month.[34] Pizarro tried to protect herself by standing up from her desk, lifting up her arms, and "tell[ing] him that he had to [end] that behavior."[35] In addition, Quezada would follow her to the bar and "grab [her] buttock, tightening it."[36] Pizarro "felt very bad, humiliated. And the worst thing is that the employees also saw that."[37] Quezada would

---

[30] TT at 51:20–52:3 (A.282-83).
[31] TT at 52:4-11 (A.283).
[32] TT at 52:15-19 (A.283).
[33] TT at 53:9-17 (A.284).
[34] TT at 54:17-20 (A.285).
[35] TT at 54:3-10 (A.285).
[36] TT at 55:12-22 (A.286).
[37] TT at 55:25-56:1 (A.286).

squeeze Pizarro's bottom approximately once a month.[38] She would tell him that she was going to call security, and he would respond that security was his employees; that he was their boss.[39]

Quezada would also tell inappropriate and sexually explicit stories in front of Pizarro.[40] In addition, mere feet from Pizarro's desk, Quezada would use the bathroom with the door open, then walk towards her with his penis exposed as he slowly zipped up his pants, and on one occasion even masturbated, while Pizarro was at her desk.[41] She would tell him to close the door.[42] On many occasions, Quezada would also "place perfume on her desk and would call [her] and tell [her] that he had left a gift for [her] there."[43] Pizarro would tell him not to give her any gifts; she did not need them.[44]  Pizarro endured this abuse for years in silence, because Quezada told her that as a woman who lived alone, something bad could happen, and Pizarro feared for her safety.[45]

---

[38] TT at 57:14-15 (A.288).
[39] TT at 56:16-20 (A.287).
[40] TT at 57:16-58:10, 59:6 -22 (A.288-90).
[41] Castro TT at 34:7-12 (A.265); Pizarro TT at 62:1-64:19 (A.293-95); Dilone TT at 77:7-79:24 (A.308-10).
[42] TT at 65:3-4 (A.296).
[43] TT at 66:17-66:22 (A.297).
[44] TT at 67:1-8 (A.298).
[45] Pizarro TT at 54:17-55:11; 95:15-96:20 (A.285-86; 326-327);

On October 19, 2019, Quezada's most brazen act of sexual harassment and sexual assault occurred, when Quezada tried to rape Pizarro. That evening, Quezada came into the office, pushed himself onto Pizarro, grabbed her breasts, started taking off her (and his) clothes, and pressed his exposed penis against her bare buttocks.[46] Pizarro struggled with him until a trial witness, Jose Eladio Castro Rodriguez, thankfully, emerged from within the office.[47] Quezada fixed his zipper and left immediately.[48] Castro confirmed this occurrence, describing how he had received a phone call and went into the rear of the office where the liquor was kept and made phone calls for 10-13 minutes.[49] After the phone call, he came out to find Quezada handling Pizarro "in a violent way," "rubbing her with force" with his hands in front of Pizarro.[50] Pizarro cried and went into the bathroom.[51] This is all undisputed.

---

[46] TT at 88:1–91:8 (A.319-22).
[47] *Id.*
[48] TT at 91:17-19 (A.322).
[49] TT at 34:13-25 (A.265).
[50] TT at 35:7-11 (A.266).
[51] TT at 37:20–38:3 (A.268-69).

Pizarro testified to suffering from depression starting in mid-2011 as a consequence of Quezada's actions.[52] As a result of her depression, in 2011, Pizarro began taking anti-depressants, which progressed until Christmas 2019 when she attempted suicide by overdosing on prescription pills, and her doctor referred her to a psychiatric clinic.[53] After that incident, Pizarro's sister came to visit her and, with her doctor, they looked for the clinic that has been treating Pizarro until now.[54] A psychiatrist changed her previous depression medication, but Pizarro still has thoughts of killing herself and has been labeled a "high risk patient" with a toll-free suicide hotline.[55] Pizarro testified to having recurring nightmares about Quezada (and his son) and suffering from PTSD.[56] As Judge Hellerstein observed in denying Appellants' post-trial motions, "Plaintiff's credibility was untouched by strenuous cross-examination."[57]

---

[52] TT at 96:21-97:10 (A.327-28).
[53] TT at 97:11-98:15 (A.328-29).
[54] TT at 98:16-18 (A.329).
[55] TT at 98:25-99:17 (A.329-30).
[56] TT at 99:18-21, 101:8-22 (A.330-32).
[57] *Pizarro I*, 2024 WL 837572, at *3.

At the charging conference, the parties had the following exchange

with the Court:

> MR. BRUSTEIN: Page 15, your Honor. I do not
> believe that there's been any evidence submitted
> to the jury upon which they could make a finding
> of the elements for an affirmative defense. So I
> don't believe that it's something that should be
> put to the jury.
>
> MR. RESTITUYO: I disagree with that, your
> Honor.
>
> THE COURT: Tell me.
>
> MR. RESTITUYO: Yes. So that is information
> that I can – from the information that I've elicited
> from Ms. Pizarro, I can establish my affirmative
> defense.
>
> THE COURT: Which one?
>
> MR. RESTITUYO: That she would've, for
> example, *unreasonably failed to take advantage
> of preventative or corrective opportunity.* I
> elicited that she didn't tell anybody, that she had
> opportunities to tell people, etc.
>
> THE COURT: That's not an affirmative defense.
>
> MR. RESTITUYO: That's not what?
>
> THE COURT: *That's not an affirmative defense.
> The only affirmative defense against the company
> is that if she failed to use a procedure at the
> company to remedy the problem.* But you brought
> out nothing about such a –

14

> MR. RESTITUYO: Well, Mr. Quezada Jr. is an owner of the company and presumably, according to her, her supervisor.
>
> THE COURT: I don't believe you brought that affirmative defense out.
>
> MR. RESTITUYO: She stated that, your Honor.
>
> THE COURT: I'm not going to give that. Withdrawn. We'll let the jury decide. There is nothing wrong in this charge. If the jury thinks it's important, they'll take it. If not, they won't take it. I'm leaving it.[58]

Never did Restituyo mention anything about taking measures to "avoid harm otherwise." The argument was a new one that Appellants raised for the first time in post-trial briefing.[59] Never did Restituyo mention anything about, nor even request, an instruction that Pizarro could not recover for "litigation-related emotional distress." Appellants are raising this argument for the first time on appeal.

Finally, with respect to including an affirmative defense to the verdict sheet—the statute of limitations defense—Appellants' counsel

---

[58] TT at 188:10–189:16 (emphasis added) (A.419-20).

[59] *See* Defendants' Memorandum in Support of Motion for Judgment as a Matter of Law and New Trial ("Def.Br.") at 12-13 (A.521-22).

15

did not object at all to the Verdict Sheet at trial (or ever). In fact, the Court struck this defense at the parties' pretrial conference.[60]

## Standards of Review

Denial of a motion for JMOL is reviewed *de novo*. The Court views the evidence in the light most favorable to the nonmoving party and does not weigh the evidence or the credibility of witnesses. JMOL can only be granted when there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture."[61]

When a party does not preserve an objection to a jury charge, the Court reviews for plain error.[62] When a party does not preserve an objection to a verdict form, the Court reviews for fundamental error.[63] The format and language of a verdict form is reviewed for abuse of

---

[60] Pretrial Conference Transcript at 3:24–5:2 (A.207-09).

[61] *Phillips v. Bowen*, 278 F.3d 103, 108 (2d Cir. 2002).

[62] *Rasanen v. Doe*, 723 F.3d 325, 332 (2d Cir. 2013) (citing Fed. R. Civ. P. 51(d)(2)).

[63] *Lore v. City of Syracuse*, 670 F.3d 127, 160 (2d Cir. 2012) (internal citations omitted) (party's failure to object at trial to substance of verdict form "waives its right to a new trial on that ground and [party] has no right to object to such matters on appeal ... unless the error is fundamental").

discretion and must be considered in conjunction with the jury instructions.[64]

A district court's order denying remittitur of a jury's award for compensatory damages is reviewed for abuse of discretion, and considerable deference is accorded the factual findings of both judge and jury. Under Title VII, this Court will set aside a jury's award only if it "is so high as to shock the judicial conscience and constitute a denial of justice."[65] This Court does not "vacate or reduce a jury award merely because [it] would have granted a lesser amount of damages."[66] Instead, it focuses on whether the verdict lies within the range of awards in similar cases.[67] Under New York law, a compensatory award is reviewed to determine "if it deviates materially from what would be reasonable compensation."[68]

This Court reviews *de novo* whether a punitive damages award is so grossly excessive as to violate due process.[69] Under federal common

---

[64] *Id.* at 159-60.

[65] *Zeno v. Pine Plains Cent. School Dist.*, 702 F.3d 655, 671 (2d Cir. 2012).

[66] *Lore*, 670 F.3d at 177.

[67] *Zeno*, 702 F.3d at 671.

[68] N.Y.C.P.L.R. §5501(c).

[69] *Payne v. Jones*, 711 F.3d 85, 98 (2d Cir. 2012).

law, this Court reviews a trial court's determination for abuse of discretion, and will reverse only when the award is "so high as to shock the judicial conscience and constitute a denial of justice."[70] This Court views the evidence and draws all factual inferences in favor of the appellee.[71]

This Court's "review of an award of attorneys' fees is 'highly deferential to the district court'" and the Court will reverse such an award only for an abuse of discretion.[72]

## Argument

I.    **The jury's compensatory award is not excessive and should not be remitted, nor should this case be remanded for a new trial**

### A. Standard of review

"'[C]alculation of damages is the province of the jury.' '[T]he standard of appellate review of damage awards [under Title VII], whether compensatory or punitive, is whether the award is so high as to

---

[70] *Id.* at 100; *Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inc.*, 850 F.2d 876, 883 (2d Cir. 1988).

[71] *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 683 (2d Cir. 1993).

[72] *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 146 (2d Cir.2001) (quoting *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir.1999)).

18

shock the judicial conscience and constitute a denial of justice.'"[73]

"When reviewing a claim of excessive damages, an appellate court must accord substantial deference to the jury's determination of factual issues."[74] This is a "narrow" review.[75]

Under New York law, which is pertinent to the extent that Pizarro was found entitled to recover under the NYSHRL or the NYCHRL, a compensatory award is reviewed to determine "if it deviates materially from what would be reasonable compensation."[76] The jury's damages verdict is "entitled to great deference based upon its evaluation of the evidence."[77] "Only where the award 'deviates materially from what would be reasonable compensation' is a new trial on damages to be granted."[78]

---

[73] *Walz v. Town of Smithtown,* 46 F.3d 162, 170 (2d Cir. 1995).

[74] *Wheatley* v. *Ford,* 679 F.2d 1037, 1039 (2d Cir. 1982).

[75] *DiSorbo* v. *Hoy,* 343 F.3d 172, 183 (2d Cir. 2003).

[76] CPLR § 5501(c).

[77] *Ortiz v. 975 LLC,* 74 A.D.3d 485, 486 (1st Dep't 2010).

[78] *Vaval v. NYRAC, Inc.,* 31 A.D.3d 438, 438 (2d Dep't 2006) (quoting CPLR 5501).

**B. Given the extent of the sexual assaults that she endured and the egregious level of Pizarro's emotional distress, the compensatory-damages award does not shock the conscience, nor does the amount deviate materially from awards in similar cases**

Having suffered repeated sexual harassments and assaults over an almost 10-year period, culminating in an attempted rape and resulting in suicidal ideation and a suicide attempt, Pizarro's award for compensatory damages of $1.725 million was proper and not excessive. Bearing in mind that "measuring pain and suffering in dollars is inescapably subjective," the jury heard evidence from every angle.[79] Appellant Quezada carried out the sexual harassment and sexual assault, while his company was deliberately indifferent to almost 10 years of continuous harassment and assault. Nevertheless, Appellants have attempted to minimize Pizarro's pain and suffering.

"[C]ourts ... have recognized the severe mental trauma associated with unlawful discrimination and have upheld large compensatory awards for the victims in such cases."[80] Before even addressing the attempted rape, research "connects the experience of discrimination to lower levels of life satisfaction and higher levels of stress and

---

[79] *Gibbs* v. *United States, 599* F.2d 36, 39 (2d Cir. 1979).
[80] *Broome* v. *Biondi,* 17 F. Supp. 2d 211, 224 (E.D.N.Y. 1997).

psychological suffering, including depression. ... Two authors described the lasting impact of discrimination: '[i]n the immediate situation or over the long haul, discrimination can generate determination, embarrassment, frustration, bitterness, anger, rage, and any combination of these feelings. Discrimination is an energy-consuming, life-consuming experience.'"[81]

Moreover, courts in civil cases arising from sexual assaults have recognized that compensatory damages in such cases must take into account "[t]he social and emotional betrayal and humiliation, the isolation, the threat and violation to her self-esteem, physical, psychic and emotional integrity and health, the fear for her life, the utter sense of hopelessness and helplessness" that rape survivors experience.[82] As the Supreme Court has noted, "[s]hort of homicide, [rape] is the ultimate violation of self."[83]

"[P]rior damage awards in cases involving similar injuries . . . guide and enlighten [courts] with respect to determining whether a

---

[81] *Id.* at 225, n.9 (citations omitted).
[82] *Deborah S. v. Diorio*, 153 Misc. 2d 708, 715 (N.Y. Civ. Ct. N.Y. Cnty. 1992), *aff'd as modified*, 160 Misc. 2d 210 (1st Dep't 1994).
[83] *Coker v. Georgia*, 433 U.S. 584, 597 (1977) (internal quotation marks omitted).

verdict in a given case constitutes reasonable compensation."[84] But "[t]his is not to say that the amount of damages awarded or sustained in cases involving similar injuries are in any way binding upon the courts in the exercise of their discretion."[85] Rather, prior damages awards in similar cases "need not restrain [the court], for the reason that no two cases morally can present precisely similar circumstances of pain, suffering, impairment, or of loss."[86]

There is ample authority for affirming the jury's award without remittur. Both the length of time and the extent of sexual abuse Pizarro was subjected to are far greater than the SDNY case of *Carroll v. Trump.* There, the district court held that the jury's compensatory damages award of $2 million for a sexual battery claim involving assault in a department store dressing room with digital and forcible penetration did not deviate materially from reasonable compensation for pain and suffering so as to make it excessive under New York law.[87]

---

[84] *Miller v. Weisel,* 15 A.D.3d 458, 459 (2d Dep't 2005).

[85] *Senko v. Fonda,* 53 A.D.2d 638, 639 (2d Dep't 1976) (citing *Mullady v. Brooklyn Heights R.R. Co.,* 65 A.D. 549, 551 (2d Dep't 1901)).

[86] *Mullady,* 65 A.D. at 551.

[87] *Carroll v. Trump,* 683 F.Supp.3d 302, 327-28 (S.D.N.Y. 2023), *aff'd* 124 F.4th 140 (2d Cir. 2024).

Carroll suffered long-lasting emotional and psychological trauma after the incident.[88] Like Carroll, Pizarro suffered long-lasting emotional and psychological trauma. But *Carroll* dealt with just one incident—not over 250 times as is the case here. Notably, the jury in that case found that Carroll had not been raped and there was no evidence that she had attempted suicide. Despite appealing the jury's verdict on other grounds, no argument was made that $2 million was an excessive verdict. This Court affirmed the *Carroll* verdict.[89] As the sexual abuse Carroll was subjected to was limited to one occasion, not hundreds of times over approximately a decade, the $1.725 million here does shock the conscience, nor does the amount deviate materially from awards in similar cases.

While the district court in *Carroll* found $2 million in compensatory damages to be reasonable, much higher awards for sexual assault have also been found reasonable. For example, in the Albany County case of *Egan v. Gordan*, decided after a bench trial, the court awarded $13.8 million in compensatory damages to a rape and sexual

---

[88] *Id.*
[89] *Carroll v. Trump,* 124 F.4th 140 (2d Cir. 2024).

assault survivor who "continuously relives" the abuse through "flashbacks," was diagnosed with PTSD, experiences hypervigilance, sleep disturbance, and whose career and personal life were upended by the abuse she suffered.[90]

And in the New York County case of *Breest v. Haggis,* the court found reasonable a jury award of $7.5 million in compensatory damages and $2.5 million in punitive damages for a forced and unwanted sexual assault and rape.[91] At trial, the plaintiff, Breest, testified extensively regarding her injuries, which the court held "alone was sufficient to entitle her to compensatory damages."[92] Among other things, Breest explained that after the rape she had difficulty "dating, was not able to have normal intimate relations with men and suffered from anxiety and flashbacks. Breest also testified that because of the rape, she had increased anxiety and body image issues."[93] Breest was also fired from her job because of the rape.[94]

---

[90] November 10, 2022 Decision and Order in *Egan v. Gordon*, No. 904231-20 (N.Y. Sup. Ct. Albany Cty. Nov. 10, 2022) NYSCEF No. 26.
[91] *Breest v. Haggis,* Index No. 161137/2017, 2023 WL 374404, at *3-4 (N.Y. Sup. Ct., N.Y. Cty. Jan. 24, 2023).
[92] *Id.* at *3.
[93] *Id.*
[94] *Id.*

In addition, "when considering the sizes of the awards in earlier cases, we must take into account inflation, as the reasonable range for [plaintiff s] injuries today is higher than what it would have been ten years ago."[95] Factoring in inflation makes the award here even more reasonable.

For instance, in the EDNY case of *Ortiz v. New York City Housing Authority*,[96] the trial court affirmed the jury's award of $3 million in compensatory damages—or approximately $5.8 million in 2025 dollars—to an adult woman who was raped. There, the plaintiff "lost all

---

[95] *DiSorbo,* 343 F.3d at 185; *see, e.g., Osorio v. Source Enterprises, Inc.*, No. 05 Civ. 10029, 2007 WL 683985, at *5 (S.D.N.Y. Mar. 2, 2007) (sustaining $4 million for pain and suffering—$6.3 million in 2025 dollars—on retaliation claim where "[p]laintiff, having risen from humble beginnings to the position of Editor-in-Chief of this prominent publication, only to be summarily dismissed in retaliation for filing a complaint of gender discrimination, might reasonably have suffered, as she averred, substantial emotional distress and reputational harm - and a jury, having found that such retaliation was intentional, could reasonably have concluded, under any standard, to award substantial damages"); *Matter of Town of Hempstead v. State Div. of Human Rights,* 233 A.D.2d 451, 452, 454 (2d Dep't 1996), *appeal dismissed* 89 N.Y.2d 1029 (1997), *lv. denied* 90 N.Y.2d 807 (1997) (sustaining $500,000 in pain and suffering—approximately $1 million in 2025 dollars—where plaintiff suffered pervasive sexual harassment over a period of nine months even though she sought no counseling).
[96] *Ortiz v. New York City Hous. Auth.*, 22 F. Supp. 2d 15 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 234 (2d Cir. 1999).

25

interest in sexual relations," was diagnosed with PTSD, experienced sleep problems, depression, and anxiety, but never attempted suicide.[97]

Other cases in this Circuit are also comparable. For example, in the EDNY case of *Riascos-Hurtado v. Raines*, two female inmates were each awarded $1.5 million (approximately $1.9 million in 2025 dollars) in compensatory damages after a series of sexual assaults in a federal jail by a correctional counselor.[98] While those inmates suffered from severe PTSD, had anxiety and flashbacks triggered by men in uniforms and enclosed spaces, and were unable to maintain intimate relationships with men after their release from prison, there was no evidence that either attempted suicide.[99]

In *Doe v. HRH Prince Abdulaziz Bin Fahd Alsaud, Saudi Oger Ltd.*, the SDNY awarded the plaintiff $1.25 million in compensatory damages for a sexual assault that occurred on a single day.[100] This award consisted of $850,000 for past pain and suffering and $400,000

---

[97] *Id.* at 38.

[98] *Riascos-Hurtado v. Raines*, 422 F. Supp. 3d 595, 597 (E.D.N.Y. 2019).

[99] *Id.* at 602-03.

[100] *Doe v. HRH Prince Abdulaziz Bin Fahd Alsaud, Saudi Oger Ltd.*, No. 13-CV-571, 2017 WL 4541426, at *1 (S.D.N.Y. Oct. 10, 2017).

for future pain and suffering.[101] The plaintiff described how the attack impacted her self-esteem, confidence, and she began to embrace solitude and social isolation to cope with her trauma.[102]

Also illustrative is the SDNY case of *Noonan v. Becker*,[103] which involved sexual violence by a police officer. In *Noonan*, the court conducted a thorough canvas of damages awarded in sexual assault cases in this Circuit, noting that:[104]

> In *Kukla v. Syfus Leasing Corp.*, 928 F. Supp. 1328, 1336–37 (S.D.N.Y. 1996), the court upheld a jury's award of $1,350,000 for past and future pain and suffering in a negligence action brought against a hotel where plaintiff was raped. These awards are consistent with compensatory damages awarded by courts outside of this Circuit related to sexual assault perpetrated by private individuals. For example, in *Pantages v. L.G. Airport Hotel Assocs., Inc.*, 589 N.Y.S.2d 426, 427 (1st Dep't 1992), a New York State appellate court affirmed a jury's award of $1,875,000 for pain and suffering to a plaintiff who was "brutally raped, sodomized and assaulted by three men."[105]

---

[101] *Id.*

[102] *Id.* at *2.

[103] *Noonan v. Becker*, No. 14-CV-4084 (LTS) (JLC), 2018 WL 1738746, at *8 (S.D.N.Y. Apr. 10, 2018), report and recommendation adopted, 2018 WL 2088279 (S.D.N.Y. May 3, 2018).

[104] *See Noonan*, 2018 WL 1738746, at *5-7.

[105] *Noonan*, 2018 WL 1738746, at *7, report and recommendation adopted, 2018 WL 2088279.

The *Noonan* court awarded the plaintiff $1 million in compensatory damages, even though there had been no suicide attempt, and the sexual assault was limited to the single occurrence.[106]

Most of the awards set forth above were for one-time sexual assaults. It cannot be overemphasized, however, that the sexual harassment and assault here took place at work over the course of almost 10 years. This was not a single incident of sexual predation, but constant sexual harassment and abuse, culminating in an attempted rape, that affected her life and her career. The SDNY case of *Osorio v. Source Enterprises, Inc.*[107] is instructive as to the serious extent of these additional injuries. In *Osorio*, the trial court affirmed the jury's compensatory damages awards of $4 million for discrimination and $3.5 million for defamation—a total of $7.5 million, in 2007 dollars—in a case involving a single woman who was discriminated against at work and wrongfully terminated. In *Osorio*, the jury found that the defendants had created a hostile work environment and retaliated against the plaintiff when she complained of sexual harassment. In

---

[106] *Id.* at *7.
[107] *Osorio*, 2007 WL 683985.

upholding the admittedly "full" $4 million compensatory damages award on the retaliation claim, the court noted that, like Pizarro, the plaintiff in *Osorio* "testified at some length about the emotional distress" the defendants had caused her, including how she felt depressed, anxious, and embarrassed, and experienced difficulty at "professional events and the like."[108] Again, there was no evidence that the plaintiff in *Osorio* had attempted suicide.[109]

Awards upheld in sexual assault cases in other states are also comparable. In *McQuillin v. Perez*, a Florida jury awarded $15 million in damages, including $6 million in compensatory damages—approximately $10 million in 2022 dollars—to a 32-year-old woman who was raped once by a professional baseball player.[110] There, the defendant "coaxed" the plaintiff into his car, "promising to bring her directly back to the house," and then, taking her to his apartment under false pretenses, raped her once inside his home.[111] In *C.R.R. v.*

---

[108] *Id.* at *5.

[109] *Id.*, generally.

[110] *McQuillin v. Perez*, No. 2001-0194-CA-17, 2005 WL 2398200 (Fla. Cir. Ct. 2005).

[111] *Id.*

*Bresnniel Jansen,*[112] a Florida jury awarded $49.2 million total damages, including $19.2 million in compensatory damages, to a teen survivor of rape and sexual assault who suffered psychological injuries, "constant fear," and "anxiety." In *Santos-Vidal v. Hongye L.L.C.*,[113] a California jury awarded $15.5 million for pain and suffering to a rape and sexual harassment survivor. In the Florida case of *Doe v. Delarosa,*[114] a jury awarded $12.4 million in compensatory damages to a survivor for a single incidence of sexual assault who suffered "mental anguish" and "emotional anguish." In *MS v. PCM Barker Cypress,*[115] a Texas jury awarded $12 million in compensatory damages to a single adult rape survivor for pain and suffering, loss of normal life, and emotional distress. In *K.C. v. Going Places, LLC,*[116] an Illinois jury awarded $7.8 in compensatory damages for pain and suffering to a

---

[112] *C.R.R. v. Bresnniel Jansen,* No. 14-031736 CA 11, 18 FJVR 2-16, 2017 WL 7906461 (Fla. Cir. Ct. 2017).

[113] *Santos-Vidal v. Hongye L.L.C.*, No. KC067686, 2017 WL 5186772 (Cal. Super. Ct. Los Angeles Cnty. 2017).

[114] *Doe v. Delarosa*, No. 51-2012-CA-006209, 2014 WL 7927468 (Fla. Cir. Ct. 2014).

[115] *M.S. v. PCM Barker Cypress,* No. 20120-39725, 2012 WL 1243849 (Tex. Dist. 2012).

[116] *K.C. v. Going Places, LLC*, No. 2017-L-011405, 2022 WL 1617851 (Ill. Cir. Ct. 2016).

single adult sexual assault survivor. In *Plaintiff v. Luster*,[117] a California jury awarded $10 million in compensatory damages and $10 million in punitive damages to a victim of a single rape who "suffered psychological injuries resulting in post-traumatic stress disorder." In *Jane Doe, Pro Ami v. Crime Prevention Agency*,[118] a Georgia jury awarded $1 billion in compensatory damages for pain and suffering of a teenage girl in a single incidence of rape.[119]

The more significant jury awards in recent years for sexual harassment and sexual assault likely reflect the fact that public attitudes and reasonableness have changed in recent history regarding rape and sexual assault. The #MeToo movement has significantly altered the public conscience on these issues in the years since it began

---

[117] *Plaintiff v. Luster*, JVR No. 412802, 2003 WL 23519466 (Cal. Ct. Oct. 1, 2003).

[118] *Jane Doe, Pro Ami v. Crime Prevention Agency*, 5 JVR No. 1806080054, 2018 WL 2949238 (Ga. State Ct. 2018).

[119] Bever, Lindsey, *A rape victim was just awarded $1 billion. Jurors told her: 'You're worth something,'* THE WASHINGTON POST, May 24, 2018, https://www.washingtonpost.com/news/post-nation/wp/2018/05/24/a-rape-victim-was-just-awarded-1-billion-jurorstold-her-youre-worth-something/.

in 2017.[120] Most of the cases cited by Appellants pre-date that movement. Insofar as the jury's award in Pizarro's case reflects the more enlightened collective views of today, it should not be disregarded or minimized.[121]

Not only did Appellants not address any of these cases, but they also failed to substantively address any of the arguments or cases raised by Judge Hellerstein in his decision. In his order denying remittur of the jury award of $1.725 million in compensatory damages, Judge Hellerstein observed that "[c]ases in this Circuit involving 'egregious' claims of sexual harassment, including those that take place in the workplace, and over several years, have led to similar amounts in

---

[120] Anne Lauren, *It's Been Three Years Since #MeToo. What's Changed? What Needs to Change*, MS. MAGAZINE (Oct. 29, 2022), https://msmagazine.com/2020/10/29/its-been-three-years-since-metoo-whats-changed-whatneeds-to-change/ (noting that #MeToo movement caused a "macro-shift in awareness [that] marked a tipping point in society where the focus shifted from the protection of the perpetrator to the safety of the victim").

[121] *See Witherspoon v. State of Ill.*, 391 U.S. 510, 520 n.15 (1968) (noting that "one of the most important functions any jury can perform" is maintaining a link between "community values" and the law, without which "the determination of punishment would hardly reflect the evolving standards of decency that mark the progress of a maturing society" (internal quotation marks and citations omitted)).

compensatory damages when considering adjustments for inflation."[122] In support of this observation, Judge Hellerstein cited to: (1) this Court's 2014 opinion in *Turley v. ISG Lackawanna*, upholding a jury award of $1.32 million for emotional damages from racially-motivated harassment by coworkers and supervisors for a period of several years;[123] (2) the EDNY 2009 opinion in *Olsen v. County of Nassau*, upholding an award of $1 million for Title VII claims without sexual assault;[124] (3) the 2007 SDNY opinion in *Osorio v. Source Enterprises, Inc.*, in which the district court upholding an award of $4 million for retaliation claim after a witness testified regarding impact;[125] and (4) this Court's 2012 opinion in *Zeno v. Pine Plains Cent. Sch. Dist.*, upholding a $1 million jury award in a race-discrimination suit without sexual assault.[126] Using the U.S. Bureau of Labor Statistics' "CPI Inflation Calculator"[127] supports Judge Hellerstein's intuition that when adjusted for inflation, the awards would be comparable to the

---

[122] *Pizarro I*, 2024 WL 837572, at *3.

[123] *Turley v. ISG Lackawanna*, 744 F.3d 140, 166 (2d Cir. 2014).

[124] *Olsen v. Cnty. of Nassau*, 615 F. Supp. 2d 35, 47 (E.D.N.Y. 2009)

[125] *Osorio*, 2007 WL 683985, at *5.

[126] *Zeno,* 702 F.3d at 673.

[127] Available at https://www.bls.gov/data/inflation_calculator.htm.

$1.725 million awarded here: $1.8 million in 2025 dollars for *Turley*; $1.5 million for *Olsen*; $6.3 million for *Osorio*; and $1.4 million for *Zeno*. Notably despite those cases each having awards exceeding $1 million, none of those plaintiffs testified to attempting suicide.

Here, on appeal, when faced with Judge Hellerstein's citations to comparable awards, Appellants have not even attempted to distinguish them. Instead, Appellants cite to *Turley* in passing for the irrelevant general proposition that punitive-damage awards must be "fair, reasonable, predictable, and proportionate,"[128] and Appellants have not cited the other three cases at all.[129]

Despite not addressing any of the above cases, Appellants' cited cases are not comparable to this one and do not require remittur. Appellants incredibly are claiming that Pizarro's compensatory damages should be remitted to less than $200,000.[130] Allow that to sink in: Appellants are arguing that for almost 10 years of groping, flashing, and public masturbation, culminating in an attempted rape and

---

[128] Appellants' Brief at 34.
[129] *See Id.*, generally.
[130] *Id.* at 29-30.

followed by suicidal ideation and a suicide attempt, Pizarro's damages should be capped at $200,000, or less than $25,000 a year.

In any event, many of the cases cited by Appellants as purportedly comparable cases did not even involve attempted rape or sexual assault. Even for those that did, the length of the abuse was considerably shorter, occurring on only one occasion or lasting only a few weeks. Most notably, the cases lack any evidence or testimony similar to the long-term trauma endured by Pizarro and the severity of the harm, which included suicidal ideations and a suicide attempt. Even if this Court considers any of these cases comparable, when added to the cases put forth by Pizarro, which we submit are true comparators, it just places her verdict within the range of acceptable and does nothing to show that the cases cited by Appellee are inappropriate. The failure to address any of the cases cited in Judge Hellerstein's decision, which they are appealing, is telling. As is Appellants' failure to acknowledge or address any of the other cases cited above by Appellee or in Appellee's opposition to Appellants' Motion for Remittur.

Unsurprisingly, the cases cited by Appellants in support of this claim pale in comparison to what Pizarro endured. For example, in

35

*Sooroojballie v. Port Auth. of N.Y. & N.J.*,[131] the case was one of discrimination and a hostile-work environment based on race and national origin over a 12-to-14-month period. What Sooroojballie suffered, while awful, lasted just over one year, not years, and did not involve monthly sexual assaults, an attempted rape, suicidal ideation, or a suicide attempt. Even the Report and Recommendation in the SDNY case of *Doe v. Warren & Baram Management LLC*[132] awarded $1 million in compensatory damages, even though it was based solely on the papers without the magistrate judge hearing any testimony about the incident, which took place on a single date.

Here, Pizzaro set forth at length that this was not an isolated incident of sexual harassment. Unlike the plaintiff in *Doe v. Warren & Baram,* Pizarro suffered repeated sexual abuse—in Pizzaro's case almost 10 years—as she was regularly groped and humiliated and the only reason that Quezada did not finish raping her is that he was interrupted as his penis was on her bare buttocks. So bad was the abuse

---

[131] *Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 F. App'x 536 (2d Cir. 2020) (summary order).
[132] *Doe v. Warren & Baram Management LLC*, No. 20-CV-9522, 2024 WL 2941222 (S.D.N.Y. May 3, 2024).

that not only did she suffer PTSD, but she suffered suicidal ideation and attempted suicide.

Much of Appellants' argument regarding compensatory damages relies upon cherry-picking cases involving sexual harassment and assault, which upon examination are not appropriate comparators. For example, in the EDNY case of *Walia v. Vivek Purmasir & Assocs., Inc.*,[133] the assault was not an attempted rape but consisted of grabbing the victim from behind and squeezing her breasts over the course of three days.[134] The SDNY case of *Caravantes v. 53rd Street Partners, LLC*,[135] cited by Appellants is also inapplicable because unlike the abuse endured by Pizarro, the plaintiff in Caravantes entered into a *quid pro quo* situation and not only was force not used but there also was no testimony about suicidal ideation, let alone an attempt to commit suicide.

In another case cited by Appellants, *Villalta v. JS Barkats, P.L.L.C.*, on inquest, although the magistrate judge found that "the

---

[133] *Walia v. Vivek Purmasir & Assocs., Inc.*, 160 F.Supp.2d 380 (E.D.N.Y. 2000).
[134] *Id.* at 392.
[135] *Caravantes v. 53rd Street Partners, LLC*, No. 09-CV-7821, 2012 WL 3631276 (S.D.N.Y. Aug. 23, 2012).

Court has no difficulty concluding that an award of 'egregious' emotional harm damages is appropriate… she does not claim to have attempted suicide… only treated with a therapist for a short time… does not purport to be taking any medications…."[136] This is quite different from the evidence here, which established that Pizarro not only was prescribed medication and treated with a psychiatrist, but had attempted suicide and was given access to an emergency help line.

The final case upon which Appellants rely to claim remittitur of compensatory damages is the EDNY case of *Drice v. My Merchant Services, LLC*,[137] which was not even remotely similar to what occurred here. Not only did it take place over less than two weeks, but the only physical contact alleged was kissing a salesperson's fingers and touching her forehead with her fingers.

While Appellants have attempted to label Pizarro's testimony as being "uncorroborated lay testimony," so as to claim that she should be limited to "garden-variety" emotional-distress damages, her testimony

---

[136] *Villalta v. JS Barkats, P.L.L.C.,* 16-CV-2772 (RAR)(WL) 2021 WL 2458023 (S.D.N.Y. June 16, 2021).

[137] *Drice v. My Merchant Services, LLC*, No. 2015-CV-0395, 2016 WL 1266866 (E.D.N.Y. Mar. 4, 2016).

was not only uncontroverted but also corroborated by two other witnesses. The undisputed evidence established that Pizarro was violently and repeatedly sexually assaulted over many years. She saw a psychiatrist and took medication to treat her symptoms. Moreover, she was sexually assaulted at least three times per month over an eight-year period—Appellant Quezada grabbed her breasts an undisputed twice a month and squeezed her behind at least once per month—for a total of *over 250 times*. Quezada masturbated and urinated in front of her. And Pizarro tried to commit suicide—a far cry from mere "garden-variety" emotional distress.

More than a decade ago, in *Zeno v. Pine Plains Cent. Sch. Dist.*,[138] this Court upheld an award of $1 million in a race-discrimination case which involved no expert testimony. This Court has long recognized that it "must take into account inflation, as the reasonable range for [Plaintiff's] injuries today is higher than what it would have been ten years ago."[139] Accounting for inflation, from 2012, a $1 million verdict

---

[138] *See Zeno*, 702 F.3d at 673.
[139] *DiSorbo*, 343 F.3d at 185.

today would be roughly $1.4 million today.[140] As bad as the discrimination encountered in *Zeno* was, it lasted a shorter period of time and did not rise to the violent sexual assaults suffered by Pizarro. As such, this Court should find that a $1.725 million compensatory award is fair and reasonable and should not be disturbed.

The mere fact that courts have found a lesser amount to be a reasonable award in one case is not a basis for this Court to find that the jury's award in the present case was excessive. "Although a review of comparable cases is appropriate, we need not average the high and low awards; we focus instead on whether the verdict lies within the reasonable range."[141] As the court in *Carroll* just found $2 million to be a reasonable compensatory award in a case involving a single sexual assault, the jury's award here does not deviate materially from what is reasonable.[142] Accordingly, this Court should not remit the award.

This was not an isolated event, nor was it limited to a few events. Pizarro was sexually assaulted at least three times per month over an

---

[140] *See* US Bureau of Labor and Statistics website, at CPI Inflation Calculator.
[141] *Restivo v. Hessemann,* 846 F.3d 547, 587 (2d Cir. 2017).
[142] *See Carroll*, 2023 WL 4612082.

40

eight-year period—a total of over 250 times. It is undisputed that Quezada masturbated in front of Pizarro. It is undisputed that Quezada urinated in front of Pizarro numerous times and was observed by a trial witness, Cristian Guzman Dilone, "coming forward with his intimate part in his hand, going out from the bathroom towards Maria"[143] before zipping up his zipper three feet away from her. Again, it is undisputed that Pizarro treated with a psychiatrist and took medication after trying to commit suicide. It has been more than four years now, and Pizarro still has nightmares. While an expert could have corroborated Pizarro's testimony that she was prescribed medication, had suicidal ideations, had attempted suicide, and was still suffering from the emotional trauma, the testimony would have only corroborated it. As the district court noted in its decision, "Plaintiff testified the Quezada groped and molested her on numerous occasions, disregarding her objections and protestations, that she feared rape and sexual assaults, and was driven to suicidal ideations. She testified that she tried to take

---

[143] TT at 77:11-16 (A.309).

her own life after Defendant Quezada attempted to rape her. Plaintiff's credibility was untouched by strenuous cross-examination."[144]

Pizarro suffered significant distress and substantially adverse emotional consequences because of Appellants' deliberate actions. Sustained pain and suffering is inherent in the pervasive verbal and physical harassment, including suicidal ideation resulting in a suicide attempt. Medical testimony was not required.[145]

Pizarro testified extensively about her pain and suffering over the course of more than 10 years, enough to bring the case well above the garden-variety category.[146] She testified not only to the sexual harassment and assaults by Quezada, but to the nightmares she experienced at least once a month, as well as her depression and suicide attempt.[147] The jury appreciated the fundamental harm to Pizarro's core

---

[144] *Pizarro I*, 2024 WL 837572, AT *3.

[145] *See, Broome,* 17 F. Supp. 2d at 224 ("proof of mental anguish or emotional distress does not have to include medical testimony and it may consist of the plaintiffs testimony, alone, as corroborated by reference to the circumstances of the alleged misconduct") (citing *Miner* v. *City of Glens Falls,* 999 F.2d 655, 663 (2d Cir. 1993) ("[A] prescription for medicine or a visit to a doctor can lend support to a claim for emotional distress; however, such evidence is neither required nor necessarily probative")).

[146] TT at 95:2-103:17 (A.326-34).

[147] *Id.*

identity caused by this type of pervasive harassment, particularly given its duration. The jury did not need expert testimony to understand this. In addition, in response to a question from the jury asking the district court to "redefine compensatory and punitive damages," Judge Hellerstein read, without objection, a model jury instruction from a treatise on federal employment jury instructions. In his recitation, Judge Hellerstein advised the jury that it might award Pizarro reasonable compensation for, *inter alia*, "Loss of enjoyment of life—that is, plaintiff's loss of the ability to enjoy certain aspects of her life as a result of defendants' discriminatory actions…."[148] Before this jury instruction was given, Judge Hellerstein asked Appellants' attorney whether he had any objections and he responded, "No objections, your Honor."[149]

In other words, the jury was cognizant of its obligation to follow the law in awarding compensatory damages and after hearing the district court's instruction explaining the components of compensatory damages, reasonably understood that the pain and suffering did not go

---

[148] A.498.
[149] A.496.

away when Pizarro no longer worked for Appellants. This kind of mental injury can reasonably be expected to last into the future. There can be no rational argument that Pizarro's pain and suffering does not continue to the present day. It does not take a psychologist to conclude that groping and sexual assault and being shamed and humiliated, would adversely affect a woman's psyche and prospects. The cumulative destruction of Pizarro's life and its lasting damage is worth at least $1.725 million.

New York state courts have endorsed the aggregation of damages for pain and suffering in sex-discrimination cases. For example, in a 1991 opinion in *New York City Transit Auth.* v. *SDHR,*[150] the New York Court of Appeals reversed the First Department and approved of the findings of an Administrative Law Judge who found that the complainant was entitled to four separate damages awards for mental anguish and aggravation totaling $450,000, comprised of: (1) $250,000 for the Transit Authority's June-July 1981 discrimination; (2) $50,000 for the July-September 1981 discrimination; (3) $100,000 for January-September 1982 discrimination; and, (4) $50,000 for the discriminatory

---

[150] *New York City Transit Auth.* v. *SDHR,* 78 N.Y.2d 207 (1991).

conduct in September 1981.[151] This breakdown in damages by time period illustrates that one acceptable way to calculate damages is by breaking the damages awarded for discriminatory conduct over an extended period of time into a cumulative damages model.

Under this cumulative-damages model, the jurors could have rationally asked themselves, "What is a lost year subject to Appellants' sexual harassment and assault worth?" Even putting aside future pain and suffering, as the Court of Appeals found reasonable $250,000 reasonable for just a three-month period for harassment without sexual assault, surely an entire year of Pizarro being sexually assaulted, being groped dozens of times per year, could reasonably have entitled her to at least the same $250,000. Enduring that abuse for just seven years would have made a verdict of $1.725 million reasonable. But here, the abuse lasted much longer than seven years and included an attempted rape, as well as suicidal ideation and a suicide attempt, to say nothing of the future pain and suffering Pizarro is certain to experience.

---

[151] *Id.* at 214.

## II. The jury's punitive-damage award was reasonable

### A. Appellants did not argue that punitive damages are excessive and are thus precluded from doing so

This Court has long considered arguments not raised in an initial motion to be waived.[152] "[P]laintiffs forfeited this argument when they failed to assert it in their opening brief."[153] Here, before the district court, Appellants did not challenge the $1 million punitive damages award against Quezada and Euros. Therefore, those damages must stand.

Even if the Court were to consider the appropriateness of the punitive damages award, it should still stand. In reviewing Second Circuit and New York cases, the court found that punitive awards for workplace discrimination as high $1.5 million had been upheld.[154]

---

[152] *See, e.g., United States v. Greer,* 285 F.3d 158, 170 at n. 3 (2d Cir.2002); *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999); *United States v. Yousef,* 327 F.3d 56, 115 (2d Cir. 2003).

[153] *Broecker v. New York City Dep't of Educ.,* 2023 WL 7485465, at *3 (2d Cir. Nov. 13, 2023).

[154] *See, e.g., Hill v. Airborne Freight Corp.,* 212 F.Supp.2d 59, 76–77 (E.D.N.Y. 2002) (awarding $1 million, spread across multiple plaintiffs, for discrimination and retaliatory conduct); *Greenbaum v. Handelsbanken,* 67 F.Supp.2d 228, 269–71 (S.D.N.Y.1999) (Sotomayor, J.) (upholding $1.25 million award in sex discrimination case, noting that the defendants' actions, while malicious and deceitful, were

Notably both *Noonan* and *HRH Prince* awarded $1 million in punitive damages for victims of sexual assault.

Here, the punitive damages are less than the compensatory damage award of $1.725 million, which displays that the jury truly thought out how much it would take to punish and deter Quezada. Even if the compensatory damages had been significantly lower, an award of $1 million in punitive damages would still not be excessive.[155] Accordingly, this Court should also not disturb the jury's punitive damages award, first because Appellants did not object to it in their initial moving papers below, but second because it is within the range of acceptable awards.

---

"certainly less reprehensible than the worst imaginable violations"); *McIntyre v Manhattan Ford, Lincoln Mercury, Inc.,* 256 A.D.2d at 271, 682 N.Y.S.2d at 169 (remitting award to $1.5 million in case concerning harassment, retaliatory discharge, and IIED); *Turley v. ISG Lackawanna, Inc.,* 774 F.3d 140, 166 (2d Cir. 2014).

[155] *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003) (While "there are no rigid benchmarks that a punitive damages award may not surpass," "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety.") (emphasis added).

**B. Appellants' unsupported claim that they are insolvent, which they have raised for the first time on appeal, is made in bad faith and is the subject of an investigation by the trustee in bankruptcy court**

Appellants claim for the first time on appeal that the $1 million punitive-damage award "is grossly excessive in light of Appellants' financial condition."[156] In support of this claim, Appellants point to Pizarro's testimony that "Euros is a defunct company which has been closed since November 23, 2019."[157] But Appellants did not seek to make this argument to the district court, nor does it appear to be true that Appellants are insolvent. The mere closing of a business does not mean that the business or its owners are insolvent. Instead, it may show that Appellants wanted to take the money and run, rather than pay their obligations to Pizarro. And that appears to be what is happening here.

On May 14, 2024, less than three months after the district court upheld the jury verdict and entered judgment, Appellant Quezada filed under Chapter 11 (Subchapter V) in the SDNY Bankruptcy Court.[158] In

---

[156] Appellants' Brief at 39.
[157] *Id.*
[158] *In re Santiago Quezada, Sr.,* SDNY Bktcy Case No. 24-22431.

bankruptcy, Quezada has not been transparent about his financial affairs and Pizarro advised the trustee of her concerns.[159] She believes that Quezada has bank accounts and properties in the Dominican Republic worth $10 million or more that he has not properly disclosed in his bankruptcy schedules.[160] The trustee has retained counsel to investigate.[161] Quezada's bankruptcy counsel has moved to withdraw.[162] On April 22, 2025, the U.S. Trustee moved to dismiss Quezada's bankruptcy, on the grounds that he is grossly mismanaging his estate, has failed to provide requested information, is not pursuing a reorganization plan in good faith, and is unlikely to propose a feasible plan.[163] Notably, Appellant Euros has not filed for bankruptcy. Thus, not only have Appellants waived their rights to appeal the punitive-damages award on the grounds that they were not given an opportunity to plead poverty, but the very claim of poverty appears to be fabricated to avoid paying Pizarro.

---

[159] *See* Pizarro Declaration, *Id.* at Doc. Nos. 36 and 36-1.
[160] *Id.*
[161] *See* Application to Employ, *Id.* at Doc. No. 50.
[162] *See* Motion and Amended Motion to Withdraw as Attorney, *Id.* at Doc. Nos. 58 and 69.
[163] *See* U.S. Trustee's Motion to Dismiss, *Id.* at Doc.No. 75.

49

### III. Appellants are not entitled to a new trial

A jury's verdict should "rarely be disturbed" and a motion for a new trial should be granted only if the court is convinced that the jury's verdict is "seriously erroneous or a miscarriage of justice."[164] "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."[165]

First, Appellants admitted below that a defending employer may avoid liability only if (a) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[166] Here, Appellants clearly failed to "exercise[] reasonable care to prevent and correct promptly any sexually harassing behavior" by allowing Quezada to do what he pleased with Pizarro for almost ten years. Further, Pizarro did try to "avoid harm otherwise" by telling Mr.

---

[164] *Graham v. City of New York*, 128 F.Supp.3d 681, 692-93 (E.D.N.Y. 2015) (citations omitted).

[165] *MJAC Consulting, Inc. v. Barrett*, 2006 WL 2051129 at *3 (S.D.N.Y. July 24, 2006) (citation omitted).

[166] Def.Br. at 12 (A.521) (citation omitted).

Quesada to stop, pushing him off her, physically trying to stop him, and telling him to close the door while urinating, among other things. She struggled physically and verbally to protect herself from Quezada. At trial, Appellants' counsel objected to the jury instructions only insofar as they "unreasonably failed to take advantage of preventative or corrective opportunity."[167] He mentioned nothing about the language "avoid harm otherwise" at any time, so he cannot now use it as a basis for challenging the verdict. "It is well-settled that Rule 59 is not a vehicle for … presenting the case under new theories."[168]

Second, with respect to including an affirmative defense to the verdict sheet—the statute of limitations defense—Appellants' counsel did not object at all to the Verdict Sheet at trial (or ever). Appellants cannot now "present[] the case under new theories."[169] Indeed, the district court struck this defense at the parties' pretrial conference.[170]

Finally, Appellants claim that they were somehow prejudiced by the district court's exclusion of emails that they claim were between

---

[167] TT at 188:10–189:16.

[168] *MJAC Consulting*, 2006 WL 2051129 at *3.

[169] *Id.*

[170] Pretrial Conference Transcript at 3:24–5:2 (A.207-209).

Castro and Pizarro. This Court has recently observed that "We will disturb an evidentiary ruling only where the decision to admit or exclude evidence was manifestly erroneous. To find such abuse [of discretion], we must conclude that the trial judge's evidentiary rulings were arbitrary and irrational."[171]

"Authentication is a 'condition precedent to admissibility,' and can be satisfied 'by evidence sufficient to support a finding that the matter in question is what its proponent claims.' Fed.R.Evid. 901(a)."[172] "[W]hen the recipient of an e-mail attempts to prove that the message was authored by a particular individual whose name appears in the header, such self-identification by designated sender is insufficient to establish authorship."[173]

Under Fed.R.Evid. 901, Appellants had to authenticate, and because emails are hearsay under Fed.R.Evid. 802, Appellants had to show that they fell within one of the exceptions contained within Fed.R.Evid. 803. Here, Pizarro and Castro were asked about the emails

---

[171] *Carroll*, 124 F.4th at 157 (internal citations and quotation marks omitted).

[172] *Jimena v. UBS AG Bank, Inc.,* No. 07-CV-367, 2011 WL 2551413, at *3 (E.D.Cal. June 27, 2011).

[173] *Id.*, at *6 (internal quotation marks omitted).

and denied their authenticity.[174] Judge Hellerstein gave Appellants every opportunity to lay a foundation and even held a lengthy sidebar in his robing room,[175] before ruling that since Appellants were unable to authenticate the emails, they could not introduce them.[176] Thus, the district court did not abuse its discretion in excluding the emails.

IV.     **Appellants failed to preserve their objections to the jury instructions and their belated claims on appeal do not constitute plain error**

While challenges to jury instructions in civil cases are generally reviewed for "an error that is not harmless," "if the challenging party failed to object to the charge at trial," instructions are reviewed for "plain error, that is, if the error 'affects substantial rights.'"[177] "[A] jury instruction will be deemed adequate if the charge, taken as a whole, is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it."[178] Conversely, "a jury charge is erroneous if it misleads the jury as to the correct legal standard, or if it

---

[174] TT at 40:18-41:16; 110:2-120:5 (A.271-72; 341-51).

[175] *Id.*

[176] TT at 119:7-120:5 (A.350-51).

[177] *Rasanen*, 723 F.3d at 332 (quoting Fed. R. Civ. P. 51(d)(2)).

[178] *Id.* (quoting *Hathaway, v. Coughlin*, 99 F.3d 550, 554 (2d Cir. 1996)).

53

does not adequately inform the jury of the law."[179] "To constitute plain error, 'a court's action must contravene an established rule of law,' and 'go to the very essence of the case.' "[180] The plain error exception to Rule 51's objection requirement "should only be invoked with extreme caution in the civil context."[181]

Here, the parties had ample opportunity to comment on the instruction to be given to the jury. Both sides were afforded an opportunity to submit proposed jury instructions before trial.[182] Appellants even submitted a number of proposed jury instructions after the case in chief.[183] The parties were given the court's proposed jury instructions in advance[184] and were then given an opportunity to review the proposed jury instructions and voice objections.[185] Appellant raised

---

[179] *Keeling v. Hars*, 809 F.3d 43, 51–52 (2d Cir. 2015) (quoting *Hathaway*, 99 F.3d at 552) (considering unpreserved objection in a copyright context).
[180] *Rasanen*, 723 F.3d at 333 (quoting *Lavin–McEleney v. Marist Coll.*, 239 F.3d 476, 483 (2d Cir. 2001) and *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994)).
[181] *Keeling*, 809 F.3d at 52 (quoting *Rasanen*, 723 F.3d at 333).
[182] *See* District Court Case No. 20-CV-5783, Docket Nos. 147, 151, 155.
[183] *Id.*, Docket No. 160.
[184] TT at 184:2-4 (A.415).
[185] TT at 184:1-195:12 (A.415-26).

no objection related to any error alleged on this appeal.[186] Because there was no objection, this Court should review the jury instructions for plain error.

Appellants now claim that the district court should have instructed the jury that Pizarro could not recover for litigation-related emotional distress.[187] But Appellants never alerted the district court to this purported concern, so that Judge Hellerstein could decide whether to give such an instruction.[188] Instead, Appellants appear to have dreamt up this argument for the first time on appeal. In support of this claim, they point to a decision in the EDNY case of *Munafo v. Metro. Transp. Auth.,*[189] in which the district court held that "a litigant who commences a protracted and expensive lawsuit (a majority of which has already been dismissed as frivolous) may not then claim as an element of damages that he suffered emotional and financial anxiety because the lawsuit cost too much."[190] Appellants go on to claim that because

---

[186] *Id.*

[187] Appellants' Brief (Docket Entry 37) at 42-46.

[188] TT at 184:1-195:12 (A.415-26).

[189] *Munafo v. Metro. Transp. Auth.,* 98-CV-4572, 00-CV-0134, 2003 WL 21799913 (E.D.N.Y. Jan. 22, 2003).

[190] *Id.* at \*22.

Pizarro testified that the most recent time she had a nightmare about Quezada was while she was preparing to see him at trial, the jury must have awarded her damages for emotional distress caused by the litigation.[191]

But that is not the lesson of *Munafo*. There, the plaintiff sought to testify as to the "stress and financial anxiety resulting from the cost of litigation."[192] Here, Pizarro testified to an ordeal of almost 10 years of physical and emotional abuse, culminating in an attempted rape on October 19, 2019. This was followed by years of nightmares, suicidal ideation, and a suicide attempt. Unlike in *Munafo*, Pizarro's nightmares were not limited to her trial preparation, but had been occurring monthly, and stemmed from Quezada's threats of physically harming her. They were not products of the litigation, but symptoms of her ongoing pain and suffering from the abuse she suffered at Appellants' hands, as well as evidence of the endurance of her posttraumatic stress. There is no basis to conclude that the jury awarded more damages because of emotional distress related to the litigation. Even if the jury

---

[191] Appellants' Brief (Docket Entry 37) at 45-46.
[192] *Munafo,* 2003 WL 21799913, at *22.

may have awarded something additional because of this isolated testimony, considering almost 10 years of groping and abuse monthly, culminating in an attempted rape, any additional damages awarded would have been *de minimis* and, therefore, had there been a proper objection, any error would have been harmless.

## V. Because Pizarro's attorneys were extraordinarily successful and because the approved fees represented less than 10% of the recovery, the district court's award of fees and costs was reasonable and should not be disturbed

This Court has held that "Our review of an award of attorneys' fees is 'highly deferential to the district court'" and this Court will reverse only for an abuse of discretion.[193] Under Title VII, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee ... as part of the costs."[194] Similarly for the NYCHRL, N.Y.C. Admin. Code § 8-502(f) provides that "In any civil action commenced pursuant to this section, the court, in its discretion, may award the prevailing party costs and reasonable attorney's fees."[195] The standard guiding the

---

[193] *Crescent Publ'g Grp., Inc.*, 246 F.3d at 146.
[194] 42 U.S.C. § 2000e–5(k).
[195] N.Y.C. Admin. Code § 8-502(f).

57

determination of a reasonable fee is the same under both the NYCHRL and similar federal statutes.[196]

Even though Ms. Pizzaro was awarded a $2.725 million verdict by the jury here, Appellants incredibly are appealing the award of $241,997.50 in attorney fees on the grounds that her counsel was not successful. That is, Appellants are challenging a fee that comes to less than 10% of the jury verdict. In support of this claim, Appellants are claiming for the first time, on appeal, that Pizzaro's counsels' billing was "replete with vague time which failed to identify the subject matter of the activity being performed."[197] But below, they did not claim that the billing was excessive, duplicative, block billing, or unnecessary. Nor did Appellants substantively attack the proposed hourly rates for Pizzaro's counsel. Notably, Appellants did not even include Brustein's declaration, which included the detailed invoice of his billing, and part of the support Judge Hellerstein used to justify the rates for Brustein and Marino. As Brustein's declaration as well as several other

---

[196] *See Shannon v. Fireman's Fund Ins. Co.*, 156 F.Supp.2d 279, 298 (S.D.N.Y.2001) (citing *McIntyre v. Manhattan Ford, Lincoln–Mercury, Inc.*, 176 Misc.2d 325, 672 N.Y.S.2d 230, 231–32 (Sup.Ct., N.Y. County 1997).
[197] Appellants' Brief (Docket Entry 37) at 53.

declarations in support of Pizarro's fee application were omitted from Appellant's Appendix, Pizarro has submitted a supplemental appendix with these and other relevant court filings.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation."[198] This Circuit repeatedly has held that the degree of success obtained is "the most critical factor" in determining reasonableness.[199]

The "determination of fees should not result in a second major litigation,"[200] and in evaluating an application, "trial courts need not, and indeed should not, become green-eyeshade accountants."[201] Instead, trial courts should "take into account their overall sense of a suit,"[202] with a particular focus on "*the degree of success obtained*" by the prevailing party.[203] "Where, as here, a plaintiff succeeds on some claims

---

[198] *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (emphasis added).
[199] *De La Cruz Rosas v. Just Salad 60 Third LLC*, No. 18-CV-7342, 2023 WL 5423982, at *6 (S.D.N.Y. Aug. 4, 2023) (citing *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008)).
[200] *Fox v. Vice*, 563 U.S. 826, 838 (2011).
[201] *Id.*; *see also Restivo v. Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017).
[202] *Id.*
[203] *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (emphasis added).

but not on others, the Court must determine whether the claims brought are 'based on different facts and legal theories,' or if the claims 'involve a common core of facts or [are] based on related legal theories.'"[204]

Pizarro brought four *types* of claims for relief against each of Defendants: (1) discrimination/hostile work environment; (2) retaliation for filing frivolous lawsuits against her; (3) aiding and abetting; and (4) failing to provide a wage statement and sick leave under New York's Labor Law. The first three types of claims involve a "common core of facts"—namely, that Quezada, Sr. created a hostile work environment by trying to accost Pizarro, masturbating in front of her, and constantly urinating near her and then filed frivolous lawsuits when she finally took legal action. And Quezada, Jr. aided and abetted this behavior. The claims for failing to provide a wage statement and sick leave, which are unrelated, constituted nearly no discovery; in fact, Appellants did not identify even a single hour in Pizzaro's counsels' time records which was related solely to the claims for failing to provide a wage statement

---

[204] *Pardovani v. Crown Building Maintenance Co.*, No. 15-cv-09065, 2023 WL 3597615, at *2 (S.D.N.Y. May 23, 2023) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983)).

or sick leave. As none of the time claimed by Pizarro's counsel is attributable only to unsuccessful claims, there is no basis to reduce the hours sought based on any purportedly frivolous claims.

Equally importantly, at different stages of the litigation, Pizarro and her attorneys made strategic decisions not to pursue some of Pizarro's claims, such as aiding and abetting and failure to provide a wage statement and sick leave. They decided that these claims would only serve to distract the jury from the primary claims of sexual harassment and hostile workplace against the main perpetrator, Santiago Quezada, Sr. As evidenced by the verdict, the jury agreed with this approach. If anything, this decision served to reduce the time Pizarro took to prove her case, thereby streamlining the trial and reducing the fees for which Appellants are responsible.

On appeal, Appellants claim that Pizarro's billing records were vague, but Appellants did not ask for a reduction of fees before the district court based on duplicative work, block billing, non-compensable work, or other "usual objections" because Pizzaro's counsel did not

61

engage in that type of improper billing.[205] Notably, although permissible, Pizzaro did not even request fees on fees.[206] As no improper-billing objections were raised below, this Court should not reduce the hours requested.[207] Appellants waived those objections.[208] In fact, Appellants do not dispute that Pizarro's attorneys worked on the case for the time claimed. Rather, Appellants state vaguely that because Pizzaro was unsuccessful on some claims and because her attorneys did not proceed on all her claims, Pizzaro's attorneys were not entirely successful, and their fees should be reduced. But Appellants have not pointed to a single time entry that was not inextricably intertwined with the claims that led to the $2.725 million jury verdict.

---

[205] *See Rosario v. City of New York*, 18 Civ. 4023, 2023 WL 2523624, at *3 (S.D.N.Y. Mar. 15, 2023).

[206] *Lilly v. City of New York*, 934 F.3d 222, 235 (2d Cir. 2019).

[207] *Ceglia v. Zuckerberg*, No. 10–CV–00569A(F), 2013 WL 2535849, at *5 (W.D.N.Y. June 10, 2013) ("Plaintiff does not challenge a single entry in the Billing Schedule Defendants submit in support of these hours as excessive, redundant or unnecessary. In the absence of specific objections to the number of hours claimed, the district judge cannot be expected to review, evaluate and rule on every entry in an attorney's fee application.") (emphasis added).

[208] *Franco v. Better Way Wholesale Autos, Inc.*, No. 14-cv-00422, 2016 WL 3064051, at *2 (D.Conn. May 31, 2016).

Notably, before the district court, Appellants did not identify a single billing entry that they claimed was excessive or double-billed, nor did they try to explain why the rates for Brustein and Marino should be reduced at all, especially considering Martin Restituyo, Esq.'s own hourly rate. Instead, without referring to the actual bills, Restituyo chose to argue that Pizzaro's attorneys were not successful and that therefore the district court should have slashed their bills across the board. Given the arguments made by trial counsel below, the detailed billing by Pizarro's counsel and the high degree of success at trial, there is no basis to disturb Judge Hellerstein's decision with respect to attorney fees and costs.

There is one additional aspect to all of this. Appellants fail to mention that after the trial, their trial counsel, Restituyo, unsuccessfully moved for his own attorney fees and costs against Pizarro and her attorneys and in so doing, revealed that Appellants had paid Restituyo's law firm $170,567.45 for his unsuccessful defense.[209] While Restituyo's defense cost less than what Pizarro was awarded for her attorney fees and costs, that difference is easily explained by the

---

[209] A.595.

results. The added value of the work performed by Pizarro's attorneys is reflected in the outcome of the case: a multimillion-dollar jury verdict, which Judge Hellerstein correctly refused to remit.

Judge Hellerstein had a front-row seat to the discovery, motion practice, trial preparation, and trial performance, not to mention the results. He could see the difference between the parties and their attorneys in presentation and preparation. He could see results from the additional time that Brustein and Marino devoted to the case. For example, during the charging conference, Restituyo made no objections to the jury instructions, whereas Brustein carefully went through the charge page by page and even identified minor typographical errors.[210] Similarly, Brustein took time to prepare his witnesses for testimony, whereas Restituyo did not even put on a case. Perhaps most importantly, Brustein and Marino proved up Pizarro's case at trial, securing a multi-million-dollar verdict.

---

[210] TT at 184:1-195:12 (A.415-26).

### VI. The district court did not abuse its discretion in setting the hourly rates it awarded Pizarro's attorneys

While Appellants did challenge the hourly rate of one of Pizarro's attorneys, Brustein, below, they were unsuccessful, because the hourly rate of $550 an hour awarded to Brustein was eminently reasonable. (Appellants did not challenge the hourly rate of $425 an hour billed by Pizarro's other attorney, Marino,[211] and have omitted multiple declarations from their Appendix.[212] Even if they had challenged his rates, Marino has over 20 years of experience and the hourly rate of $425 approved for him below was lower than the rate Restituyo was seeking for himself.[213])

---

[211] *See* Appellants' Memorandum of Law in Support of Defendants' Application for Attorney's Fees and in Opposition to Plaintiff's Motion for Approval of Attorneys' Fees at A.600 ("[I]t appears that Mr. Brustein's proposed hourly rate is beyond that commanded by attorneys with similar status and experience in this District.").
[212] *See* Table of Contents, at "ii" of Appellants' Appendix. (Appellants' Appendix was not compiled in consultation with or with notice to Pizarro's attorneys as required under Fed. R. App. P. 30(b), thus requiring the filing of a Supplemental Appendix under LR 30.1.)
[213] *See* Declaration of Plaintiffs' Attorney Evan Brustein in Support of Plaintiff's Motion for Attorneys' Fees and Costs at SA.6-7, ¶s 27-32.

This year, in the EDNY case of *Rubin v. HSBC Bank USA, NA*,[214] the Honorable Frederic Block issued a detailed opinion on determining reasonable attorney hourly rates. In *Rubin,* a case brought under the Fair Credit Reporting Act, Judge Block stressed the importance of avoiding slavish adherence to historical market rates as defined by decades-old case law. He recognized that markets are dynamic and reliance on historical rates does not account for inflation. After an extensive and well-documented discussion of the impact of inflation on the cost of living, he found that the reasonable hourly rates in the EDNY was now $450 to $650 for partners, $300 to $450 for senior associates, $150 to $300 for junior associates, and $100 to $150 for paralegals.[215] Judge Block found these rates to be reasonable for work done in the EDNY—work for which this Court has held attorneys should be paid at lower rates than in the SDNY, which is where Pizarro's case arose and where it was litigated and tried.[216]

---

[214] *Rubin v. HSBC Bank USA, NA*, No. 20-CV-4566, __ F.Supp.3d ___, 2025 WL 248253 (E.D.N.Y. Jan. 21, 2025).
[215] *See Rubin*, 2025 WL 248253, at *6.
[216] *See Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009).

Unsurprisingly, cases in the SDNY reflect awards at higher rates than in the EDNY. For example, in 2011, the Honorable Denny Chin, while he was already sitting on this Court, observed in a district-court case that "[C]onsistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600 … with average awards increasing over time."[217] In the SDNY case of *Bailey v. Pataki*, in a case with nominal damages, the court awarded three attorneys, each with only a decade of experience, the rate of $550 an hour because they undertook some of the key work in the case.[218] In the SDNY case of *Alicea v. City*

---

[217] *Lanzetta v. Florio's Enters., Inc.*, No. 08 Civ. 6181(DC), 2011 WL 3209521, at *7 (S.D.N.Y. July 27, 2011) (collecting cases and quoting *Mugavero v. Arms Acres Inc.*, 03 Civ. 5724(PGG), 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010)); *see also, Abdell v. City of New York*, No. 05-CV-8453, 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015) (citations omitted) ($650 per hour for partner was reasonable 10 years ago); *Grand v. Schwarz*, No. 15-CV-8779, 2019 WL 624603, at *5-6 (S.D.N.Y. Feb. 14, 2019) ($600 per hour for partner); *DeCurtis v. Upward Bound Int'l, Inc.*, No. 09-CV-5378, 2011 WL 4549412, at *8 (S.D.N.Y. Sept. 27, 2011) ($550 per hour for partner granted over 10 years ago); *Powell v. Metro One Loss Prevention Servs. Grp.*, No. 12-CV-4221, 2015 WL 9287121, at *2-3 (S.D.N.Y. Feb. 5, 2015), *report and recommendation adopted*, 2015 WL 9255338 (S.D.N.Y. Dec. 17, 2015) (setting hourly rate for partner in employment case at $650 per hour almost 10 years ago).
[218] *Bailey v. Pataki*, No. 08-CV-8563 (JSR), 2016 WL 3545941, at *6 (S.D.N.Y. June 16, 2016).

*of New York*, the Court awarded an attorney, with more than 14 years of experience and who was part of a team of attorneys representing the plaintiff, the rate of $500 an hour.[219]

District courts in this Circuit have recognized that rates have remained static for some time. For example, in a 2009 opinion in the EDNY case of *Vilkhu v. City of New York*,[220] the Honorable Charles P. Sifton noted that for 10 years prior to 2009, rates for civil rights attorneys in the SDNY have ranged from $250 to $600. While this Court vacated and remanded the Judge Sifton's fee award, it did so on the grounds that he should have considered applying lower rates because the case was pending in the EDNY and not the SDNY, leaving untouched his analysis of prevailing rates for 2009.[221] And district judges in this Circuit have concluded that "civil litigators should not be limited to hourly rates that have not adapted to the changing times."[222]

---

[219] *Alicea v. City of New York*, 272 F. Supp. 3d 603, 610 (S.D.N.Y. 2017).
[220] *Vilkhu v. City of New York*, No. 06-CV-2095, 2009 WL 1851019, at *4 (E.D.N.Y. June 26, 2009).
[221] *Vilkhu v. City of New York*, 372 Fed.Appx. 222 (2010) (summary order).
[222] *Champagne v. Columbia Dental, P.C.*, No. 18-CV-01390 (VLB), 2022 WL 951687, at *5 (D. Conn. Mar. 30, 2022) (noting that "[b]ased on the U.S. Bureau of Labor Statistics' Consumer Price Index Inflation

Thus, applying the Bureau of Labor Statistics' CPLI Inflation Calculator to Judge Sifton's survey of rates in the Southern District, where this case originated, a reasonable rate in 2009 of $200 to $600 an hour is now equivalent to $378 to $908 an hour.

More recently, in 2020, in *Ekukpe v. Santiago*, the Honorable Analisa Torres observed that in the SDNY, "the customary rate for experienced litigators ranges from about $400 to $600 per hour in civil rights ... cases",[223] or $495 to $743 in 2025 dollars. Similarly, in 2019, the Honorable Paul E. Davison observed that "[W]hile the Court is aware that smaller law firms typically charge lower hourly rates than large, corporate firms, precedent in this District clearly demonstrates that experienced solo civil rights practitioners and civil rights attorneys from small law firms have been awarded hourly rates as high as $550 to $650",[224] or $681 to $805 an hour in 2025 dollars.

---

Calculator, an hourly rate of $450 in 2008 was the equivalent buying power to $604.85 in February 2022").

[223] *Ekukpe v. Santiago*, No. 16-CV-5412, 2020 WL 1529259, at *3 (S.D.N.Y. Mar. 31, 2020) (quotations and citation omitted).

[224] *Cocuzza v. Rockland Cnty., New York*, No. 17-CIV-8217, 2019 WL 6498915, at *4 (S.D.N.Y. Nov. 7, 2019) (internal citations omitted), *report and recommendation adopted,* 2019 WL 6498092 (S.D.N.Y. Dec. 2, 2019).

Here, Brustein's skill in taking depositions and trying the case culminated in the unquestionably successful outcome. Brustein has tried over 100 cases to verdict, received accolades from the New York City Law Department and New York City Bar Association, and conducted numerous CLEs. Importantly, the verdict speaks to his skill in the courtroom, as the district court witnessed, with a $2.725 million verdict. Finally, Brustein did not rely on vague citations to case law, as Appellants did below. He submitted his detailed billing records together with his own detailed declaration,[225] as well as a declaration from Pizarro[226] and declarations from attorneys who not only litigate civil-rights cases, but practice in the SDNY and are familiar with Brustein's work.[227] All of these attorneys—some with more than 30 years of experience—testified to the reasonableness of Brustein's rate of $550 an hour, as well as to the quality of his work.[228]

---

[225] *See* Brustein Declaration with Exhibits (SA.1-20).
[226] *See* Pizarro Declaration (SA.30-32).
[227] *See* Earl Ward Declaration in Support (SA.21-22); Jeffrey Risman Declaration (SA. 23-26); Brian Bromberg Declaration (SA.27-29).
[228] *Id.*

In addition, the Court should be mindful of the risks inherent in the litigation, such as laying out costs of the litigation, working on a contingency fee basis, and being paid at the end of the case.

Finally, the Court should note that Appellants appear to be trying to square two diametrically opposed positions: on the one hand, Appellants try to portray the jury verdict here as an outlier, while simultaneously claiming that Brustein botched the case and should, therefore, have been awarded a lower rate and a lower fee. In other words, the two halves of Appellants' brief conflict with one another. And this Court has repeatedly held that the degree of success obtained is "the most critical factor" in determining the reasonableness of a fee award.[229] Here, Appellee obtained a high degree of success and as such, the attorney fees and costs award should not be disturbed.

## Conclusion

Since both the compensatory and the punitive damages awards neither shock the conscience nor deviate materially from awards in similar cases that have been upheld, since the award of attorney fees

---

[229] *De La Cruz Rosas v. Just Salad 60 Third LLC*, No. 18-CV-7342, 2023 WL 5423982, at *6 (S.D.N.Y. Aug. 4, 2023).

71

was reasonable, since neither the jury charge nor the evidentiary rulings were erroneous, and since Appellants have failed to preserve many of their objections, the district court's orders and judgments should be affirmed.

Dated:     April 23, 2025
           Brooklyn, New York

                                    Respectfully Submitted,
                                    Bromberg Law Office, P.C.

                                    By: */s/ Brian L. Bromberg*
                                    Brian L. Bromberg

**Attorneys for**
**Plaintiff-Appellee Maria Jose Pizarro**

Brian L. Bromberg
Bromberg Law Office, P.C.
352 Rutland Road, #1
Brooklyn, NY 11225
Tel: (212) 248-7906
Fax: (212) 248-7908
Email: brian@bromberglawoffice.com

Evan C. Brustein
Brustein Law PLLC
299 Broadway, Suite 800
New York, NY 10007
Tel: (212) 233-3900
Fax: (212) 285-0531
Email: evan@brusteinlaw.com

## Certificate of Compliance
### With Type-Volume Limitation, Typeface Requirements
### And Type Style Requirements

1. This brief complies with the type-volume limitation of Local

Rule 32.1(a)(4) because:

> This brief contains 13,947 words, excluding the
> parts of the brief exempted by Fed. R. App. P.
> 32(f).

2. This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P.

32(a)(6) because:

> This brief has been prepared in a proportionally
> spaced typeface using Microsoft Office Word
> 2016, in Century, font size 14.

Dated:     Brooklyn, New York
           April 23, 2025

                              Respectfully submitted,

                              Bromberg Law Office, P.C.
                              Attorneys for Plaintiff-Appellees


                              By:   */s/ Brian L. Bromberg*
                                    Brian L. Bromberg

73