# 24-2422-cv

# United States Court of Appeals

### *for the*

## Second Circuit

MARIA JOSE PIZARRO,

*Plaintiff-Counter-Defendant-Third-Party-Defendant-Cross-Defendant-Counter-Defendant-Appellee,*

— v. —

SANTIAGO QUEZADA, EUROS EL TINA RESTAURANT
LOUNGE AND BILLIARDS CORP.

*Defendant-Counter-Claimant-Third-Party-Plaintiff-Cross-Claimant-Counter-Claimant-Appellants,*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-COUNTER-CLAIMANT-THIRD-PARTY-PLAINTIFF-CROSS-CLAIMANT-COUNTER-CLAIMANT-APPELLANTS

SCOTT T. BAKEN
POONAM SETHI
JACKSON LEWIS P.C.
*Attorneys for Defendant-Counter-Claimant-Third-Party-Plaintiff-Cross-Claimant-Counter-Claimant-Appellants*
44 South Broadway, 14th Floor
White Plains, New York 10601
(914) 872-8060

CP COUNSEL PRESS    (800) 4-APPEAL • (381463)

SANTIAGO QUEZADA, JR.,

*Defendant-Counter-Claimant-Third-Party-Plaintiff-Cross-Claimant-Counter-Claimant-Defendant,*

EMITON FERNANDEZ, NARCISCO GOMEZ, JOSE R. CASTRO, TOMAS ANDRES PIZARRO ZEPEDA, ELADIO CASTRO PRODUCTIONS, INC., ZOILIMAR MEJIA,

*Defendant-Third-Party-Defendant-Cross-Defendant-Counter-Defendants.*

## Table of Contents

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT ...........................................................................................2

I.   PIZARRO FAILED TO DEMONSTRATE THE PROPRIETY OF THE JURY'S EXCESSIVE COMPENSATORY DAMAGE AWARD AND CONFIRMS A SIGNIFICANT REMITTITUR, OR IN THE ALTERNATIVE, A NEW TRIAL IS WARRANTED. ..................................................2

A. The Opposition Cites A Variety Of Cases In Which Compensatory Damages Were Awarded On The Basis Of Evidence Incomparable To The Primarily Uncorroborated Testimony Pizarro Presented At Trial ...................................5

B. Pizarro Failed To Demonstrate Her Evidence Of Emotional Distress Presents Anything More Than A Garden Variety Claim…………...……………….....11

II.  THE JURY'S PUNITIVE DAMAGES AWARD IS EXCESSIVE................17

A. Appellants Are Not Precluded From Arguing The Punitive Damages Awarded Are Excessive……………………………...……….…..…..17

B. The Punitive Damages Awarded Are Excessive And Must Be Reduced……………………………………….………...……….18

C. The Court Should Consider Appellants' Financial Conditions In Remitting Pizarro's Punitive Damage Award……………………………...………….20

III. APPELLANTS ARE ENTITLED TO A NEW TRIAL. .............................222

A. The District Court Committed Prejudicial Error In Its Jury Instructions……………………………...………...……….…...…….22

B. The District Court Committed Prejudicial Error In Excluding Appellants' Email Evidence……………...……………...………………….…......24

IV. THE DISTRICT COURT'S ATTORNEYS' FEE AWARD IS EXCESSIVE AND SHOULD BE REDUCED OR REMANDED FOR FURTHER CONSIDERATION AND REDUCTION. .....................................................266

A. Vague Entries, Excessive Billing, Duplicative Entires And Clerical Work…………………………………………………………………....28

B. Pizarro's Counsel Cannot Recover Attorneys' Fees For Work Performed On Unsuccessful Claims…………….……..…………….…..……..…..29

CONCLUSION .................................................................................311

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barbu v. Life Ins. Co. of N. Am.*,
No. 12-CV-1629 (JFB) (SIL), 2015 U.S. Dist. LEXIS 21874
(E.D.N.Y. Feb. 24, 2015).................................................................28

*Barfield v. N.Y.C. Health and Hosps. Corp.*,
537 F.3d 132 (2d Cir. 2008) .......................................................29, 30

*Barrella v. Vill. of Freeport*,
43 F. Supp. 3d 136 (E.D.N.Y. 2014) ...............................................26

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996).........................................................................19

*Breest v. Haggis*,
2023 N.Y. Misc. LEXIS 23487 (Sup. Ct., N.Y. Cnty. 2023)..............8

*Broome v. Biondi*,
96 Civ. 0805 (RLC), 96 Civ. 2262 (RLC), 1997 U.S. Dist. LEXIS
17349 (S.D.N.Y. Nov. 4, 1997).........................................................15

*Caravantes v. 53rd St. Partners, LLC*,
2012 U.S. Dist. LEXIS 120182 (S.D.N.Y. Aug. 23, 2012)................16

*Carroll v. Trump*,
124 F.4th 140 (2d. Cir. 2024) ............................................................6

*Carroll v. Trump*,
683 F Supp 3d 302 (S.D.N.Y. 2023) ..................................................7

*Castillo v. Time Warner Cable of N.Y. City*,
No. 09 Civ. 7644 (PAC), 2013 U.S. Dist. LEXIS 58815 (S.D.N.Y.
2013) ..................................................................................................30

*DeMarco v. Ben Krupinski Gen. Contr., Inc.*,
No. 12-CV-0573 (SJF)(ARL), 2014 U.S. Dist. LEXIS 96350
(EDNY July 14, 2014) ........................................................................16

*Doe v. Alsaud,*
  2017 U.S. Dist. LEXIS 167359 (S.D.N.Y. Oct. 10, 2017)...................................9

*Doe v. Unum Life Ins. Co. of Am.,*
  2016 U.S. Dist. LEXIS 10706 (S.D.N.Y. Jan. 28, 2016) ..................................29

*Doe v. Warren,*
  No. 20-CV-9522 (ER) (VF), 2024 U.S. Dist. LEXIS 106767
  (S.D.N.Y. May 3, 2024)....................................................................................14

*Dotson v. City of Syracuse,*
  No. 5:04-CV-1388, 2011 U.S. Dist. LEXIS 20374 (N.D.N.Y. Mar.
  2, 2011) ............................................................................................................15

*Egan v. Gordon,*
  Index No. 904231-20, NYSECF. 26, (Sup. Ct., Albany Cnty. 2022) .................7

*Emamian v. Rockefeller Univ.,*
  No. 7 Civ. 3919 (DAB), 2018 U.S. Dist. LEXIS 97674 (S.D.N.Y.
  June 8, 2018), *aff'd,* 823 Fed. Appx. 40 (2d Cir., 2020) ...................................17

*Fabri v. United Tech. Intl., Inc.,*
  387 F3d 109 (2d Cir. 2004) ...............................................................................18

*Hicks v. Tug Patriot,*
  783 F3d 939 (2d Cir. 2015) ...............................................................................18

*Hill v. Airborne Frgt. Corp.,*
  212 F Supp 2d 59 (E.D.N.Y. 2002) ..............................................................18, 20

*Hines v. 1025 Fifth Ave. Inc.,*
  No. 14-cv-3661 (SAS), 2015 U.S. Dist. LEXIS 84946 (S.D.N.Y.
  June 30, 2015)...................................................................................................29

*Konits v. Karahalis,*
  409 Fed. Appx. 418 (2d Cir. 2011)....................................................................30

*Lore v. City of Syracuse,*
  670 F.3d 127 (2d Cir. 2012) ..............................................................................14

*McIntosh v. Irving Tr. Co.,*
  887 F Supp 662 (S.D.N.Y. 1995) ..................................................................15, 16

*McIntyre v. Manhattan Ford, Lincoln-Mercury*,
    256 A.D.2d 269 (1st Dep't 1998) ................................................................19, 20

*Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*,
    746 F Supp 2d 575 (S.D.N.Y. 2010) ....................................................16

*Noonan v. Becker*,
    No. 14-CV-4084 (LTS) (JLC), 2018 U.S. Dist. LEXIS 60704
    (S.D.N.Y. Apr. 10, 2018).......................................................................9

*Ortiz v. NY City Hous. Auth.*,
    198 F.3d 234 (2d Cir. 1999) ..................................................................8

*Ortiz v. NY City Hous. Auth.*,
    22 F. Supp. 2d 15 (E.D.N.Y. 1998) ......................................................8

*Osorio v. Source Enters.*,
    2006 U.S. Dist. LEXIS 63032 (S.D.N.Y. Sep. 1, 2006) .................9, 10

*Riascos-Hurtado v. Raines*,
    422 F Supp 3d 595 (E.D.N.Y. 2019) ....................................................9

*Scott v. City of New York*,
    No. 02 Civ. 9530 (SAS), 2009 U.S. Dist. LEXIS 78078 (S.D.N.Y.
    Aug. 25, 2009), *vacated in part*, 2010 U.S. App. LEXIS 24538 (2d
    Cir. Dec. 1, 2010)................................................................................27

*United States v. Banki*,
    685 F.3d 99 (2d Cir. 2011) ..................................................................22

*United States v. Roy*,
    783 F.3d 418 (2d Cir. 2015) ................................................................22

*United States v. Vayner*,
    769 F.3d 125 (2d Cir. 2014) ................................................................25

*Vasbinder v. Scott*,
    976 F.2d 118 (2d Cir. 1992) ................................................................21

**Statutes**

42 U.S.C. § 1981 ....................................................................................19

v

C.P.L.R. § 5501(c) ....................................................................14, 17

Civil Rights Act of 1964 Title VII...........................................18, 19, 20

Fed. R. Evid. 901 ............................................................................25

N.Y.C. Admin. Code § 8-101 (NYCHRL) ...........................18, 19, 20, 21

N.Y.C. Admin. Code § 8-126(a)..........................................................20

New York State Executive Law § 296 (NYSHRL)...........................16, 19

## PRELIMINARY STATEMENT

Defendants-Appellants Euros El Tina Restaurant Lounge and Billiards Corp. ("Euros") and Santiago Quezada, Sr. ("Quezada, Sr.") (collectively "Appellants") submit this Reply Brief in Further Support of Appellants' Appeal.

In her Opposition Brief ("Opposition"),[1] Plaintiff-Appellee Maria Pizarro ("Pizarro") cements Appellants' demonstration that the jury verdict materially deviates from compensatory and punitive damage awards issued in other cases under similar circumstances and mandates remittitur. Pizarro's Brief provides this Court with no legal basis to uphold the Trial Court's February 27, 2024 Order and fails to refute or advance any credible argument against Appellants' contention that remittitur or a new trial is warranted because the jury's damage awards lack sufficient evidentiary support and represent impermissible windfalls.

Appellants are entitled to a new trial based on Judge Hellerstein's prejudicial errors in excluding key evidence and issuing incomplete jury instructions. Finally, the billing entries included in Pizarro's Supplemental Appendix evidence Pizarro's limited success and her attorneys' questionable billing practices, including billing entries that are block-billed, vague, excessive, duplicative, inconsistent and indicative of clerical work billed by attorneys or paralegals. These factors require a reduction of the attorneys' fees Judge Hellerstein awarded or a remand to the Trial

---

[1] References to Plaintiff-Appellee's Opposition Brief are referred to herein as "Opp. __."

1

Court for further consideration and reduction.  Accordingly, the Court should grant Appellants' appeal and reverse the District Court's Order for the reasons addressed in Appellants' Brief and below.

## **ARGUMENT**

## I. **PIZARRO FAILED TO DEMONSTRATE THE PROPRIETY OF THE JURY'S EXCESSIVE COMPENSATORY DAMAGE AWARD AND CONFIRMS A SIGNIFICANT REMITTITUR, OR IN THE ALTERNATIVE, A NEW TRIAL IS WARRANTED.**

The Opposition disingenuously ignores the disconnect between the jury's compensatory damages and the record evidence,[2] and relies on emotional appeals to sympathy to argue the compensatory damages was consistent with awards issued in comparable cases.  The Opposition glosses over Pizarro's reliance on her uncorroborated testimony concerning the nature, extent, duration, severity and causation of the emotional distress she described at trial.  The Opposition relies primarily on cases involving rape, significant violence, trauma, and corroborated medical treatment which are distinguishable from the conduct Pizarro attributes to Quezada, Sr. and the description of Pizarro's medical status and treatment she alone provided on the witness stand.

The Opposition sidesteps one of the thrusts of Appellants' appeal: Pizarro's

---

[2]  The jury lacked a sufficient evidentiary basis for crediting Pizarro's conclusory statements regarding her emotional distress and medical treatment in the absence of any corroborating lay or expert testimony or medical records.

uncorroborated testimony regarding the nature and extent of Quezada, Sr.'s alleged conduct and Pizarro's purported medical treatment was unreliable and bolstered by Judge Hellerstein's prejudicial evidentiary rulings. The dearth of supporting lay or expert evidence require this Court to analyze the propriety of the jury's $1,725,000 compensatory damages by comparing this result with awards issued for comparable garden variety or significant claims of emotional distress as a matter of law, rather than to cases involving egregious emotional distress claims supported by reliable expert testimony and medical documentation. The Court should ignore Pizarro's attempts to capitalize on her self-serving testimony by contending the record evidence demonstrated she suffered from medical conditions such as Post-Traumatic Stress Disorder ("PTSD"). (*See, e.g.,* Opp. 13, 37). Judge Hellerstein sustained defense counsel's objection to Pizarro's attempt to testify about her receipt of such a diagnosis. (A. 330).

The Opposition suffers from further examples of exaggerating the evidence adduced at trial. For example, Pizarro's contention that she was sexually assaulted over 250 times was not corroborated by either of the two witnesses Pizarro called. (*See, e.g.,* Opp. 23, 39, 41). Instead, Cristan Guzman Dilone testified he saw Quezada, Sr. come out of the bathroom in the back office of Euros on *one occasion* with his pants open and his private parts exposed. (A. 308-312). Similarly, Jose Eladio Castro Rodriquez testified he saw Quezada, Sr. grab Pizarro from behind

*once*, when Quezada, Sr. and Pizarro were in the back office on October 19, 2019. (A. 266). These isolated instances detract from the Opposition's premise that Pizarro endured a torrent of physical, sexual and emotional abuse from Quezada, Sr. monthly for almost 10 years. (*See, e.g.,* Opp. 1, 3, 7, 20, 56, 57).

The Opposition disregards Appellants' arguments that Pizarro was not qualified to introduce evidence capable of proving she suffered or will suffer long-term debilitating emotional distress because of Appellants' alleged conduct. Pizarro fails to acknowledge Appellants' argument that without any corroborating medical testimony or records, Appellants were prevented from challenging the clinical *bona fides* of Pizarro's allegations through incisive cross-examination. Pizarro's failure to proffer medical and/or expert evidence forced the jury to substitute conjecture and ire for competent medical analysis in evaluating the reliability, extent and compensability of Pizarro's emotional distress claims.

Pizarro's efforts to enhance the perceived comparability of the jury's compensatory damages with other awards issued by adjusting the earlier awards for inflation is another example of impermissible sleight of hand. Pizzaro's purported calculations are another element of conjecture which demonstrates the verdicts upon which she relies are inapposite to the damage awards she received from the jury.

**A.   <u>The Opposition Cites A Variety Of Cases In Which Compensatory Damages Were Awarded On The Basis Of Evidence Incomparable To The Primarily Uncorroborated Testimony Pizarro Presented At Trial.</u>**

In an unpersuasive effort to refute Appellants' legal arguments for the remittitur of the jury's compensatory damage award, Pizarro relies on cases that are readily distinguishable from the case on appeal.  In addition, Pizarro's attempt to cite her own "comparative" cases cannot withstand scrutiny.  Pizarro gathered any cases she could find in which compensatory damages of $1 million or higher were upheld and characterized these outcomes as comparable to the result she received, even though the fact patterns and evidence of clinical emotional distress were markedly more severe in the decisions she seeks to coopt.  Pizarro relies on compensatory damages issued almost exclusively in cases where medical experts confirmed the plaintiff suffered clinically demonstrable, extreme emotional distress and anxiety resulting from violent rapes.

Pizarro's brazen attempts to oversimplify the facts she presented almost singlehandedly to the jury, and to equate her uncorroborated allegations with cases involving horrific conduct and the use of medical experts to competently explain their extensive medical interventions, represent an overreaching attempt to justify what is an excessive compensatory damage award.  Pizarro cannot claim the compensatory damages she obtained is indicative of reasonable compensation (or

does not shock the judicial conscience) by relying almost exclusively on cases describing the extensive physical and emotional injuries sustained by rape victims and the corresponding clinical evidence introduced to explain the treatment they subsequently received from their medical providers.

Pizarro testified that during her nine-year employment with Euros, Quezada, Sr. subjected her to various acts of hostile environment sexual harassment in the form of unwanted touching, telling sexual stories in her presence on *two occasions*, using the bathroom in the office with the door open and at times exposing his penis as he zipped his zipper, masturbating in the office bathroom *on one occasion*, and one act of attempted rape[3] on October 19, 2019.  (A. 282-297, 317-324).

Pizarro attempts to compare the conduct she attributes to Quezada, Sr. to the conduct at issue in *Carroll v. Trump*, 124 F.4th 140, 151 (2d. Cir. 2024), a case that involved forcible digital penetration of the plaintiff's vagina.  This is not an apt comparison, as Pizarro did not accuse Quezada, Sr. of subjecting her to any form of sexual penetration.

In an unsuccessful attempt to create a false equivalence, Pizarro argues the

---

[3]  Pizarro maintained on October 19, 2019 Quezada, Sr. came around her and grabbed her breasts from behind her with his left hand, while lifting her blouse on her left side.  (A. 320-321, 377). She claimed he then started lowering her pants and underwear with his right hand, while also lowering the zipper of his pants with the same hand.  (A. 320-321, 377-378).  Pizarro said she struggled against him but was unable to move and felt his penis against her skin. (A. 321-322, 378).  According to Pizarro, this incident lasted *about one minute* before Castro entered the room and Quezada, Sr. let Pizarro go, fixed his clothes and left the office. (A. 323).

jury awarded Carroll $2 million in compensatory damages on her sexual battery claim where the jury found there was no evidence Carroll was raped but was "sexually abused." (Opp. 23). As detailed by the District Court in *Carroll*, the jury did not award Carroll more than $2 million for Trump groping her breasts through her clothing. Instead, the jury issued its award because Trump "deliberately and forcibly penetrated Carroll's vagina with his fingers, causing immediate pain and long lasting emotional and psychological harm." *Carroll v. Trump*, 683 F Supp 3d 302, 307 (S.D.N.Y. 2023). Pizarro argues "Carroll dealt with just one incident - not over 250 times as is the case here." (Opp. 23). Pizzaro's conclusory efforts to quantify Quezada, Sr.'s alleged misconduct are more fanciful than factual. In any event, from a qualitative perspective Pizarro admittedly never experienced anything as egregious as forcible digital penetration from Quezada, Sr.

The facts in *Egan v. Gordon*, Index No. 904231-20, NYSECF. 26, (Sup. Ct., Albany Cnty. 2022), are markedly more severe than the testimony Pizarro provided at trial. *Egan's* abuse began when she was 11-years old and continued into adulthood and included digital penetration, oral sex and forced sexual intercourse "over hundreds, perhaps thousands of times." *Egan*, NYSECF 26 at 2.

Pizarro incredulously suggests Quezada, Sr.'s alleged groping and attempted rape were somehow worse than the violent and brutal rapes experienced by the plaintiffs in the cases cited in the Opposition because some of these cases involve

one-time sexual assaults. Appellants submit the Court cannot elevate or equate, as a matter of law, the quantitative aspects of Pizarro's narrative with the qualitatively different experiences catalogued in the violent rape cases Pizarro cites.

For example, in *Ortiz v. NY City Hous. Auth.*, 198 F.3d 234 (2d Cir. 1999), a grandmother was raped at gunpoint. Although the Second Circuit's decision does not describe the factual basis for the compensatory damages award the plaintiff received, the District Court's decision does. *Ortiz v. NY City Hous. Auth.*, 22 F. Supp. 2d 15, 19 (E.D.N.Y. 1998).

In her trial before the District Court, Ortiz proved she suffered from PTSD which continued through the time of trial based on the diagnosis and testimony provided *by her two treating mental health professionals*. The evidence of Ortiz's distress adduced at trial included her inability to leave home by herself, the barricading of her door whenever she was in her apartment, and her collapse at trial when she had to speak about the rape—with elevated blood pressure and a rapid pulse that was documented by the courthouse nurse. This evidence demonstrates the disparity between the degree and symptoms of emotional distress Ortiz experienced and the evidence Pizarro presented here.

Many of the other cases cited in the Opposition reveal similar disparities with the uncorroborated evidence Pizarro submitted to the jury. *See also Breest v. Haggis*, 2023 N.Y. Misc. LEXIS 23487, *7 (Sup. Ct., N.Y. Cnty. 2023) (plaintiff

was raped and damages were supported by expert testimony); *Riascos-Hurtado v. Raines*, 422 F Supp 3d 595, 600 (E.D.N.Y. 2019) (two inmates were both digitally penetrated, forcibly raped and threatened with solitary confinement; the court heard testimony from both victims and medical experts as to victims' psychological trauma); *Doe v. Alsaud,*[4] 2017 U.S. Dist. LEXIS 167359, at *2 (S.D.N.Y. Oct. 10, 2017) (defendant drugged and sexually assaulted plaintiff in hotel room, and repeatedly raped and sodomized plaintiff for several hours while she lost consciousness); *Noonan v. Becker*, No. 14-CV-4084 (LTS) (JLC), 2018 U.S. Dist. LEXIS 60704, at *3 (S.D.N.Y. Apr. 10, 2018), (Defendant police officer drugged plaintiff, drove her to his home and violently raped her. Plaintiff awoke next morning gasping for air, with bruised and swollen eye, went to hospital and received an examination which revealed tearing and bruising, laceration across left breast, scratches and other physical trauma.).

Like Judge Hellerstein, Pizarro cites *Osorio v. Source Enters.*, 2006 U.S. Dist. LEXIS 63032, at *3-5 (S.D.N.Y. Sep. 1, 2006), as support for her emotional distress award. *Osario* involved a highly visible plaintiff (and arguably a public figure) who sought compensatory damages based on emotional distress *and reputational*

---

[4] Appellants cited *Alsaud* and *Noonan* to show the violent rapes at issue in those cases were significantly more reprehensible than the behavior Pizarro ascribed to Quezada. Pizarro argumentatively claims Quezada, Sr. engaged in comparably reprehensible behavior. Viewed objectively, Pizarro's characterizations cannot be credited as a matter of law.

damages (inapplicable here). Osorio was the Editor-in-Chief of a hip-hop magazine and sought damages for retaliation when her employment was terminated after she submitted a terse complaint alleging, she had been subjected to a hostile work environment. After her termination, one of the individual defendants gave an interview and claimed she tried to extort the defendants.

The $4 million compensatory damages in *Osorio* was not based solely on the emotional distress related to the plaintiff's retaliatory discharge. The trial court acknowledged a component of this compensatory damage award addressed the extensive reputational damage the plaintiff experienced in being terminated as the Editor-In-Chief of a magazine with a readership of over 2 million people. *Osorio*, 2006 U.S. Dist. LEXIS 63032, at *16-17. The remaining authorities cited by Pizarro (including the decisions from jurisdictions outside New York or the Second Circuit) are neither relevant nor binding on this Court.

Pizarro's attempt to justify the jury's compensatory damages is unpersuasive and offensive to victims of violent rape. Pizarro's failed effort to distinguish the cases cited by Appellants and her citations to cases which underscore the limited extent of the uncorroborated evidence submitted to the jury, demonstrate the garden variety nature of her emotional distress claims.

### B. Pizarro Failed To Demonstrate Her Evidence Of Emotional Distress Presents Anything More Than A Garden Variety Claim.

The Opposition unpersuasively relies on violent rape cases in a failed effort to convince the Court the excessive compensatory damage award Pizarro received does not deviate materially from what would be reasonable compensation or otherwise shock the judicial conscience. This attempt to compare apples and oranges underscores the garden variety nature of her claims. Pizarro's attempts to convert her self-serving testimony to reliable assessments of her medical condition and treatment are equally unavailing. For example, Pizarro argues her testimony "established that Pizarro not only was prescribed medication and treated with a psychiatrist, but had attempted suicide and was given access to an emergency help line." (Opp. 38).

Appellants urge the Court to reject Pizarro's efforts to stand in the shoes of her treating physicians. Pizarro endeavors to bolster the severity of the emotional distress she experienced by referring to her testimony that she began taking anti-depressants "as a result of her depression," experienced suicidal ideation and attempted suicide by overdosing on sleeping pills around Christmas of 2019. (Opp. 13). Pizarro did not testify about other stressors in her life which may have impacted or caused the symptoms she described. In addition, as a lay person, Pizarro was not qualified to identify the causes for the symptoms she described, the reasons she was

prescribed various medications, or the degree to which Quezada, Sr.'s alleged actions contributed to her symptoms of emotional distress. In the absence of corroborating medical evidence, Pizarro cannot equate the testimony she presented to the jury on her emotional state with the evidence proffered by medical experts in the cases on which she relies.

Although Judge Hellerstein sustained defense counsel's objection to Pizarro's testimony that she was diagnosed with PTSD (A. 330), he overruled defense counsel's objections to other questions about Pizarro's medical condition and treatment and stated, "…*But as I said before, she's not competent to testify on what professionals may have told …*" (A. 335-336) (emphasis added).

Despite these admonitions, Judge Hellerstein allowed Pizarro to testify extensively (over Appellants' objections) about the nature, treatment and consequences of the treatment for emotional distress she arguably had to have learned from her physicians. The extent of this testimony is summarized on pages 13 and 14 of Appellants' principal Brief. For example, Pizarro could only have known she was prescribed Sertaline for depression, Valsartan for blood pressure, Lexapro for depression and mood, and Trazadone for her sleeping if her medical provider(s) explained this to her. Pizarro's testimony regarding her treatment is hearsay and Judge Hellerstein abused his discretion in allowing Pizarro to pass this testimony off to the jury as medically reliable information.

Pizarro's medical testimony swayed the jury and was prejudicial to Appellants, resulting in an unfair trial. Pizarro relies on this mock medical testimony in comparing her compensatory damages to those supported by expert testimony and competent medical records. Since Judge Hellerstein erred in allowing Pizarro to present this evidence to the jury, Pizarro's testimony regarding the medical treatment she received should be stricken from the record. Whether the testimony is stricken or accorded its appropriate weight (or lack thereof), the Court must view Pizarro's proffer as a garden variety claim for emotional distress and compare the $1,725,000 jury award Pizarro received with compensatory damage awards issued in comparable garden variety cases as a matter of law. Accordingly, the compensatory damage award must be remitted to $125,000 to $200,000 as explained on pages 29 to 33 of Appellant's principal Brief.

Pizarro incorrectly argues Appellants failed to address Judge Hellerstein's February 27, 2024 Order in their principal Brief. (Opp. 32). Based on Judge Hellerstein's selective evidentiary rulings allowing Pizarro to foist unreliable medical evidence in the form of lay testimony on the jury, Judge Hellerstein upheld the jury's verdict and noted his decision was supported by Pizarro's claims of "egregious" emotional distress, Pizarro's "untouched" credibility and Appellants' "reprehensible" conduct. (S.A. 6-7). These errors are the basis for this appeal.

Judge Hellerstein provided Pizarro with wide latitude to testify about her

claims, her interactions with Quezada, Sr., her symptoms of emotional distress, and the medical treatment she received for depression and high blood pressure. Pizarro did not introduce any lay or expert witnesses to corroborate the nature, duration, severity or consequences of the emotional distress she allegedly experienced or exhibited because of Appellants' conduct or any medical testimony, medical records or other evidence regarding the treatment and medication she purportedly received from her primary care physician or the psychiatric clinic she claimed she attended. (A. 327-334).

A district court's decision whether to order a remittitur of compensatory damages is reviewed for abuse of discretion, "taking into account amounts awarded in other, comparable cases." *Lore v. City of Syracuse,* 670 F.3d 127, 177 (2d Cir. 2012). The compensatory damages issued here "shock[s] the judicial conscience and constitute[s] a denial of justice." *Id*. The award "deviates materially from what would be reasonable compensation.'" *Id.* (quoting C.P.L.R. § 5501(c)).

Even in cases involving rapes that were unsubstantiated by medical records, the compensatory damages awarded were significantly lower than the $1,725,000 Pizarro received. *See Doe v. Warren*, No. 20-CV-9522 (ER) (VF), 2024 U.S. Dist. LEXIS 106767, at *26 (S.D.N.Y. May 3, 2024) (plaintiff awarded $500,000 in compensatory damages after alleging she was raped, but did not submit any medical records to substantiate her injuries).

Pizarro did not address Appellants' argument that the clear weight of the evidence adduced at trial is contrary to the jury's verdict. Instead, to support her claim that medical testimony was not required to justify her exorbitant compensatory damage award, Pizarro cites *Broome v. Biondi*, 96 Civ. 0805 (RLC), 1997 U.S. Dist. LEXIS 17349, at *36 (S.D.N.Y. Nov. 4, 1997) for the propositions that (1) proof of mental anguish or emotional distress does not have to include medical testimony, and (2) may consist of the plaintiff's testimony alone, as corroborated by reference to the circumstances of the alleged misconduct. However, in *Broome,* the plaintiff was awarded $280,000 and the defendant was seeking to reduce the award to $101,000. The court found this reduction was arbitrary. Accordingly, *Broome* cannot be used to sustain a verdict where the damages awarded were as extensive as $1,725,000.

A plaintiff need not introduce medical or expert testimony in support of her claim for compensatory damages. However, the lack of such evidence must be considered by the Court in assessing the reasonableness of a compensatory damage award. *Dotson v. City of Syracuse*, No. 5:04-CV-1388 (NAM/GJD), 2011 U.S. Dist. LEXIS 20374, at *37 (N.D.N.Y. Mar. 2, 2011) (internal citations omitted). Compensatory damages are routinely reduced where the award relies solely on the conclusory testimony of the plaintiff. *See, e.g., McIntosh v. Irving Tr. Co.*, 887 F Supp 662, 666-667 (S.D.N.Y. 1995). As the District Court for the Eastern District

observed: "[b]eyond the fact of mental anguish caused by discriminatory conduct, there must be some evidence of the magnitude of the injury, to assure that the damage award is neither punitive nor arbitrary. *DeMarco v. Ben Krupinski Gen. Contr., Inc.*, No. 12-CV-0573 (SJF)(ARL), 2014 U.S. Dist. LEXIS 96350, at *53-54 (EDNY July 14, 2014) (internal citations omitted).[5] When a court is convinced a jury's award is entirely out of proportion to the plaintiff's injury, and was motivated by sympathy rather than by evidence of harm, remittitur is the appropriate remedy. *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F Supp 2d 575, 601 (S.D.N.Y. 2010).

As detailed on pages 28 to 32 of Appellants' principal Brief, garden variety emotional distress claims largely consist of cases that rely on a plaintiff's own testimony and the testimony of other lay witnesses. In such cases, jury awards tend to be in the range of $25,000-$75,000, with outliers of $125,000 and $150,000 recognized within the Second Circuit. *Caravantes v. 53rd St. Partners, LLC*, 2012 U.S. Dist. LEXIS 120182, at *71 (S.D.N.Y. Aug. 23, 2012). Even if the degree of Pizarro's emotional distress could be categorized as "significant" (which Appellants maintain it cannot), awards for "significant" emotional distress generally fall within

---

[5] *See also McIntosh*, 887 F. Supp. at 666 ("A plaintiff's recovery of damages for mental anguish under the [NYSHRL] is limited to compensation for actual and proven injury and while proof of mental anguish or emotional distress does not have to include medical testimony and it may consist of the plaintiff's testimony, alone, as corroborated by reference to the circumstances of the alleged misconduct, the plaintiff did not present proof to the jury that could justify the jury's award.").

the range of $50,000 to $200,000. *Emamian v. Rockefeller Univ.*, No. 7 Civ. 3919 (DAB), 2018 U.S. Dist. LEXIS 97674, *16 (S.D.N.Y. June 8, 2018), *aff'd,* 823 Fed. Appx. 40 (2d Cir., 2020). Accordingly, the cases cited in Appellants' principal Brief form the guideposts for the Court's determination of the amount of compensatory damages sustainable in this case as a matter of law.

Awarding a plaintiff $1.725 million for garden variety emotional distress (even at the high range of the garden variety spectrum) would upend years of case law defining the monetary limits of such awards and defeat the parity and predictability contemplated by CPLR §5501(c). Even when compared to compensatory damage awards issued in cases involving plaintiffs who suffered "egregious" emotional distress proven through unassailable evidence like corroborating medical records and expert testimony, the $1.725 million award Pizarro received is off the charts. Accordingly, the Court should reduce Pizarro's compensatory damages to an amount significantly less than $1.725 million which can be supported by Pizarro's uncorroborated testimony.

## II.    THE JURY'S PUNITIVE DAMAGES AWARD IS EXCESSIVE.

### A.    Appellants Are Not Precluded From Arguing The Punitive Damages Awarded Are Excessive.

Pizarro incorrectly asserts Appellants failed to preserve their contention that Judge Hellerstein erred in refusing to remit the jury's $1 million punitive damage

award.  Because this issue presents a pure question of law, the Court may address the issue regardless of any waiver.  *Hicks v. Tug Patriot*, 783 F3d 939, 943 (2d Cir. 2015).  Any alleged waiver of punitive damages is overcome by the manifest injustice of allowing an excessive punitive damage award to be sustained.  *Fabri v. United Tech. Intl., Inc.*, 387 F3d 109, 119 (2d Cir. 2004) ("Notwithstanding the general rule, we may reach the waived issue if to ignore it would result in manifest injustice.  We also may correct a purely legal error despite the lack of a timely request in the district court.") (internal citations omitted).  Accordingly, Appellants are not precluded from arguing the jury's punitive damage award is excessive.

## B. <u>The Punitive Damages Awarded Are Excessive And Must Be Reduced.</u>

Pizarro argues the punitive damages is not excessive because it is comparable to awards issued in purportedly similar cases.  This supposition disregards Appellants' argument that the punitive damages violate due process by exceeding the limits of the statutory fines available for violating the New York City Human Rights Law ("NYCHRL") and the damage cap under Title VII of the Civil Rights Act of 1964 ("Title VII").

Pizarro again gathered any cases where punitive damages were $1 million or higher and labelled those as comparable, even though the facts and evidence of wrongdoing are markedly more severe than the evidence here.  *See Hill v. Airborne*

*Frgt. Corp.*, 212 F Supp 2d 59, 64 (E.D.N.Y. 2002)(the punitive damages awarded reduced to $1 million to be divided among four plaintiffs).

In *McIntyre v. Manhattan Ford, Lincoln-Mercury*, 256 A.D.2d 269 (1st Dep't 1998), plaintiff was subjected to intentional infliction of emotional distress was awarded punitive damages. The Court determined the appropriateness of the punitive damage award by deeming the penalty to be sufficient to punish the defendant and deter future misconduct given the defendant's wealth since the defendant was wholly owned by Ford Motor Company and had significant resources.

In reviewing the constitutionality of Pizarro's punitive damage award, the Court must consider the guideposts identified in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996), which includes *the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases*.

It is undisputed that Euros employed approximately 30 employees before it closed in November 2019. (A. 389). Pursuant to 42 U.S.C. § 1981a, Euros' liability for compensatory and punitive damages under Title VII was capped at $50,000. 42 U.S.C. § 1981a. Accordingly, the vast majority of the jury's $1 million punitive damage award presumably was issued against: (1) Euros under the NYSHRL and/or the NYCHRL, and (2) Quezada, Sr. under the NYCHRL.

The NYCHRL permits the imposition of civil fines of up to $250,000 for an

"unlawful discriminatory practice [that] was the result of the respondent's willful, wanton[,] or malicious act," and up to $125,000 where there is no evidence of willful, wanton, or malicious behavior. *See* N.Y.C. Admin. Code § 8-126(a). Given the dramatic differences between the $1 million punitive damages, the $250,000 civil fine available for violations of the NYCHRL, and the $50,000 cap on compensatory and punitive damages under Title VII, the punitive damages are excessive and unconstitutional under the third *Gore* guidepost. Pizarro's failure to refute this point or argue otherwise represents a concession of the constitutional infirmity of the punitive damages.

### C. The Court Should Consider Appellants' Financial Conditions In Remitting Pizarro's Punitive Damage Award.

Pizarro's attempts to attack the relevance and validity of Appellants' financial vulnerability are unsound and are undermined by the cases cited in her Opposition Brief. *See McIntyre*, supra; *Hill*, 212 F Supp 2d at 64 ("[T]he purpose of punitive awards [--] to punish the wrongdoer and to deter others. The wealth of the defendant may be a factor in determining the magnitude of an award that will adequately deter the defendant from future wrongdoing.") (internal citations omitted).

Pizarro does not dispute that Euros is a defunct company. It is undisputed that Euros was shut down permanently on November 23, 2019. (A. 393, 399). Pizarro's dismissal of Euros' financial condition while knowing the company is inoperable

undermines Pizarro's conclusory allegations[6] that "Appellants wanted to take the money and run, rather than pay their obligations to Pizarro." (Opp. 48).

Pizarro fails to acknowledge that requiring Appellants to pay the punitive damages of $1 million and the compensatory damages of $1,725,000 would "result in the financial ruin of [Appellants]" or "constitute a disproportionately large percentage of [Appellants'] net worth." *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir. 1992). Pizarro's opposition to Appellants' request to remit the punitive damage award is based purely on conclusory allegations and speculation premised on Appellants' net worth purportedly hidden in the Dominican Republic. These accusations are not based on record evidence and should be disregarded.

The punitive damages are so exaggerated there is little doubt the jury acted from passion, confusion and/or prejudice in issuing the award, rather than relying on the evidence or instructions presented at trial. Accordingly, the Court should rely on the cases cited on pages 37 to 39 of Appellants' principal Brief in remitting the punitive damage award to an amount less than $250,000 to comport with the range of civil fines available to deter violations of the NYCHRL.

---

[6] Quezada, Sr.'s bankruptcy counsel sought to withdraw from the bankruptcy proceeding due to an attorney-client disagreement, rather than the issues alleged in the Opposition.

III.     **APPELLANTS ARE ENTITLED TO A NEW TRIAL.**

    A.     **The District Court Committed Prejudicial Error In Its Jury Instructions.**

A claim of instructional error is reviewed *de novo,* and if "the error was prejudicial in light of the charge as a whole," the appellate court "will reverse." *United States v. Banki*, 685 F.3d 99, 105 (2d Cir. 2011). An instruction "is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Roy*, 783 F.3d 418, 420 (2d Cir. 2015).

Pizarro incorrectly contends there is nothing for this Court to review with respect to Judge Hellerstein's jury charges on compensatory damages because no error was preserved. However, this is not the standard for appellate review. Appellants preserved their right to petition the Court to seek remittitur or a new trial based on Judge Hellerstein's incomplete jury instructions[7] on compensatory damages.

A miscarriage of justice occurred because Judge Hellerstein failed to explain the exclusion for litigation-related emotional distress required by law to the jury. This omission was consequential, as Pizarro testified that some of the anguish she experienced was caused by the stress of participating in the parties' litigation. (A. 332, 334). Pizarro attempts to deflect by arguing Appellants did not request Judge

---

[7] Pizarro argues against the inclusion of the affirmative defense regarding the statute of limitations, but Appellants made no argument on appeal regarding this issue.

Hellerstein to address the issue of litigation-related distress in his jury charges. However, Judge Hellerstein – not Appellants—was the trier and final arbiter of the law at the Trial Court level. Accordingly, Judge Hellerstein was responsible for ensuring the accuracy and completeness of his charge on compensatory damages.

Regardless of Pizarro's conclusory arguments and dismissiveness of Judge Hellerstein's error, Judge Hellerstein's failure to explain the exclusion for litigation-related emotional distress from compensatory damages required by law was prejudicial and failed to inform the jury on the scope of the applicable law. Judge Hellerstein's obligation to address this exclusion was triggered by Pizarro's testimony that some of the anguish she experienced was caused by the stress of participating in the parties' litigation. (A. 332, 334). Pizarro cannot argue that regardless of this testimony, she would have been awarded the same damages when she testified at length about the disturbances she felt as she prepared for and participated in the trial. (A. 332, 334).

Judge Hellerstein's abuse of discretion represented reversible error. The Court should correct this oversight by granting Appellants a new trial on the issue of compensatory damages or remitting the jury's compensatory award, as detailed above.

**B.**     <u>The District Court Committed Prejudicial Error In Excluding Appellants' Email Evidence.</u>

Judge Hellerstein unfairly excluded from evidence copies of emails Pizarro exchanged with the only witness to Quezada, Sr.'s alleged attempted rape -- Jose Eladio Castro Rodriguez. (A271-272, 340-351). These emails, which were sent and received through Pizarro's former email address *and found on Pizarro's work computer*, demonstrated that Pizarro and Castro maintained a romantic relationship dating as far back as 2012. (A. 128, 346-350).

If Judge Hellerstein had entered these emails into evidence, Appellants would have used the emails to demonstrate (1) Castro's bias in favor of Pizarro, and (2) the contrived nature of both Castro's and Pizarro's descriptions of Quezada, Sr.'s alleged attempted rape. The emails would have given the jury a significantly different impression of both Pizarro and Castro's credibility. By prohibiting the jury from evaluating the emails in assessing their credibility, Judge Hellerstein committed error by preventing Appellants from impeaching both Pizarro and her star witness. Judge Hellerstein improperly set the stage for the jury's runaway verdicts on damages.

Judge Hellerstein accomplished this result by holding Appellants to an unreasonably restrictive standard for authenticating the emails. Contrary to Judge Hellerstein's rulings, the information Appellants offered to authenticate these emails

was adequate because Pizarro confirmed the emails included her former email address *and the emails were found on her work computer*. (A. 128). By ignoring the source of the emails based on Pizarro's self-serving failure to recollect them and unsupported contention that her computer had been hacked at some undesignated point in time (A. 350), Judge Hellerstein ignored this Court's admonition that Rule 901 of the Federal Rules of Evidence "does not definitively establish the nature or quantum of proof that is required" preliminarily to authenticate an item of evidence." *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014) (internal citations omitted). As this Court repeatedly held, the "bar for authentication of evidence is not particularly high" and the "proof of authentication may be direct or circumstantial." *Id.*

Judge Hellerstein's exclusion of Defendants' Proposed Exhibit A from evidence and neutering of Appellants' ability to cross-examine Pizarro and Castro prevented Appellants from (1) demonstrating Castro's bias, and (2) attacking Pizarro's credibility. Because these emails were pivotal to the defense, Judge Hellerstein's exclusion of the emails from evidence swayed the jury. The exclusion of these emails from evidence cannot be deemed harmless error, especially given Judge Hellerstein's conclusion that he was not required to remit the large compensatory damage award Pizarro received based in part on her credibility being "untouched" on cross-examination. (S.A. 6).

## IV. THE DISTRICT COURT'S ATTORNEYS' FEE AWARD IS EXCESSIVE AND SHOULD BE REDUCED OR REMANDED FOR FURTHER CONSIDERATION AND REDUCTION.

The attorneys' fees awarded to Pizarro's counsel cannot be sustained at $247,108.13 for a straightforward, single plaintiff employment discrimination suit that resulted in a four-day trial. Judge Hellerstein provided no analysis of the reasonableness of Pizarro's counsels' fee petition. This is especially problematic where only four of the 36 claims asserted in Pizarro's Complaint proceeded to trial.

This Court should reduce or remand the fee award due to the questionable billing practices evidenced in Pizarro's Supplemental Appendix, including billing entries that are block-billed, vague, excessive, duplicative, inconsistent and indicative of clerical work billed by attorneys or paralegals. Appellants requests the Court to reduce Pizzaro's fee award or to remand the award to the District Court given the applicable standards set forth here and pages 51 to 54 of Appellants' principal Brief.

In the Second Circuit, the reasonableness of attorneys' fees is assessed "using a variation on the 'lodestar' method that generates a 'presumptively reasonable rate.'" *Barrella v. Vill. of Freeport*, 43 F. Supp. 3d 136, 189 (E.D.N.Y. 2014) (internal citations omitted). "The "lodestar" is "'the product of a reasonable hourly rate and the reasonable number of hours required by the case.'" *Id*. (internal citations omitted).

Pizarro's counsel sought fees for $241,997.50 based on 316.9 hours expended by Brustein at the hourly rate of $550 and 159.3 hours expended by Marino at the hourly rate of $425. (A. 572-577). This included time spent pursuing the 36 claims Pizarro asserted in her Complaint, which were reduced to four claims by the time of trial. (A. 574-577).

The billing records included in Pizarro's Supplemental Appendix warrant an exacting review by the Court. Numerous questionable billing practices reflected in the Supplemental Appendix raise doubts about the "veracity and accuracy" of the purported contemporaneous billing records maintained by Pizarro's attorneys. *See Scott v. City of New York*, No. 02 Civ. 9530 (SAS), 2009 U.S. Dist. LEXIS 78078, at *26 (S.D.N.Y. Aug. 25, 2009), *vacated in part*, 2010 U.S. App. LEXIS 24538 (2d Cir. Dec. 1, 2010). The following billing practices warrant scrutiny: (1) inconsistent billing entries among attorneys; (2) block-billed entries; (3) vague billing entries; (4) excessive billing; (5) duplicated efforts; and (6) clerical work billed by attorneys or paralegals.[8]

---

[8] The examples provided herein are merely illustrative and should not restrict the Court from conducting a further, searching review of the billing records contained in the Supplemental Appendix.

A. **Vague Entries, Excessive Billing, Duplicative Entries and Clerical Work**

The use of vague time entries by attorneys hinders the Court's ability to determine the reasonableness of the billed time, and merits an across the board percentage reduction. *Barbu v. Life Ins. Co. of N. Am.*, No. 12-CV-1629 (JFB) (SIL), 2015 U.S. Dist. LEXIS 21874, at *11-*12 (E.D.N.Y. Feb. 24, 2015). For example, on October 20, 2023, Brustein billed 11 hours for drafting his summation. (Supp. A. 17). On October 21, 2023, Brustein billed another 8.40 hours for drafting the summation and an additional 8 hours on October 22, 2023 for revising and practicing the summation. (Supp. A. 17). Brustein provides no indication how long the many tasks referenced in these block-billed entries took to perform. No court can determine the reasonableness of these entries or other similarly vague entries.

"Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Barbu*, 2015 U.S. Dist. LEXIS 21874, at *10 (internal citations omitted).

The 316.9 hours Brustein billed in this matter are excessive, and include duplicated efforts expended by Marino in the 159.3 hours he billed. An example of counsels' "excessive, redundant and otherwise unnecessary" billing is the

approximately 9.9 hours spent preparing Appellant's June 2021 motion to compel. (A. 574; S.A. 12). Brustein and Marino billed excessive hours for the same work.

Pizarro's counsel included billing entries that are non-compensable because they comprised clerical or administrative work. *See, e.g.*, *Doe v. Unum Life Ins. Co. of Am.*, 2016 U.S. Dist. LEXIS 10706, *17 (S.D.N.Y. Jan. 28, 2016) ("Plaintiffs cannot recover for time spent by attorneys completing administrative tasks."). For example, Marino billed 3 hours on December 14, 2023 for drafting tables. (A. 577).

The highlighted abuses suggest this problem is more widespread and a significant reduction is warranted. Other examples of improper billing will be evident to the Court upon its review of counsels' records. The Court should apply a reduction to the fee application "to correct for excessive billing, over litigation, and counsel's utter failure to exercise billing judgment. The fact that the attorney's fees are provided for by statute is not a license for either undisciplined prosecution of a case or unfettered billing practices." *Hines v. 1025 Fifth Ave. Inc.*, No. 14-cv-3661 (SAS), 2015 U.S. Dist. LEXIS 84946, *26 (S.D.N.Y. June 30, 2015).

## B. Pizarro's Counsel Cannot Recover Attorneys' Fees For Work Performed On Unsuccessful Claims.

The "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a case "'is the degree of success obtained by the plaintiff.'" *Barfield v. N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132, 152

(2d Cir. 2008) (internal citations omitted). If a plaintiff has achieved only partial success, the product of hours reasonably expended may be an excessive, even where plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. *Konits v. Karahalis*, 409 Fed. Appx. 418, 421 (2d Cir. 2011).

The degree of success is measured by evaluating the relief Pizarro obtained "as compared to what the plaintiff sought to achieve as evidenced in [his] complaint[.]" *Barfield*, 537 F.3d at 152. The Second Circuit endorsed a percentage reduction of attorneys' fees in instances of limited success. *See Konits*, 409 Fed. Appx. at 421 (internal citations omitted). "Fees should not be awarded for unrelated claims based on 'different facts and legal theories.'" *Castillo v. Time Warner Cable of N.Y. City*, No. 09 Civ. 7644 (PAC), 2013 U.S. Dist. LEXIS 58815, at *14-16 (S.D.N.Y. 2013) (internal citations omitted). Specific entries relating to unsuccessful claims, such as entries reflecting time spent on research concerning Pizarro's Stored Communications Act claims, must be excluded. (A. 575).

Pizarro ignores Judge Hellerstein's failure to conduct this analysis. Many of the claims in the Complaint were unrelated to the claims at trial. The billing records, however, fail to specifically differentiate the hours spent on each of Pizarro's unsuccessful claims. Appellants should not be penalized by Pizarro's counsels' lack of specificity. *See generally* A. 574-578; Supp. A. 12-19; *Castillo*, 2013 U.S. Dist. LEXIS 58815, at *15-*16 ("A percentage-based reduction is appropriate . . . when

the attorneys' billing entries do not distinguish between the hours spent on compensable and non-compensable work.").

Given the claims Pizarro alleged, and her limited success (despite the exorbitant damages awarded based on the uncorroborated evidence), the fees should be reduced on appeal or remanded.

## CONCLUSION

Based on the foregoing and the reasons canvassed in Appellants' principal Brief, Appellants request the Court to: (1) vacate the parties' February 27, 2024 judgment; (2) grant Appellants a new trial on Pizarro's claims for compensatory and punitive damages or, in the alternative, remit the jury's compensatory and punitive damages; and (3) reduce the attorneys' fees awarded, or in the alternative, remand the attorneys' fee petition.

Respectfully submitted,

JACKSON LEWIS P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601
914-872-8060

By: _____

Scott T. Baken
Poonam Sethi
*ATTORNEYS FOR*
*DEFENDANTS-APPELLANTS*

Dated:     May 14, 2025
                White Plains, New York

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Scott T. Baken, attorney of record for Defendants-Appellants, hereby certifies that the preceding Reply Brief complies with the type volume limitation set forth in Local Rule 32.1(a)(4)(A). This Reply Brief is in 14-point Times New Roman font. The total number of words in the Reply Brief, based upon the word count of the word-processing system used to prepare the Reply Brief, is 6,587.

_____

Scott T. Baken